United States District Court
District of Massachusetts
Western Division

Springfield, Massachusetts                    Civil Action No.05-30160-KPN

Scott Stern,                          )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )
                                      )
                                      )
Haddad Motor Group, Inc., et. al.     )
                                      )
        Defendants                    )
                                      )
                                      )
_____     )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION

Now comes plaintiff and submits to the Honorable Judge Kenneth P.
Neiman, of the United States District Court, a brief Memorandum of Law
in Support of Notice of Objection to the defendant Haddad Motor Group,
Inc. deposing plaintiff's doctor, Dr. Michael Perlman, and hereby
objects to defendant Haddad Motor Group, Inc.'s subpoena request of
records, documents and notes of Dr. Michael Perlman.

As and for good cause shown, plaintiff here in submits the
following reasons and arguments, including, but not limited to, the
United States Constitution, the Massachusetts Declaration of Rights,
statutory laws, and relevant judicial decisions for this Honorable

Court's judicious review of this personal and private relationship between patient and doctor of the plaintiff and Dr. Michael Perlman.

## PLAINTIFF INVOKES A FEDERAL CONSTITUTIONAL RIGHT TO PRIVACY

Plaintiff, your moving party, submits that the deposition by the demand and request, by defendants Haddad Motor Group, Inc. deposing Dr. Michael Perlman violates plaintiff's right to privacy by the United States Constitutions.

The United States Constitution declares in Article IV:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and not warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article XIV of the United States Constitution further declares:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Defendant Haddad Motor Group, Inc., by and through their counsel, averred to the Massachusetts Commission Against Discrimination that the

doctor's name and address of Dr. Michael Perlman were "illegible" and "not provided to the defendants" at a meeting on or about November 27 of 2002. Defendant John Barker averred to Deputy General Counsel James Levinsky of the Massachusetts Commission Against Discrimination that the doctor's note James Levinsky was holding directly before the respondents, never existed. Mr. Levinsky questioned the defendants directly, by asking the question, "Is this the note?" and James Salvie, respondent, responded "I am not sure" while the defendants counsel John Barker, stated, "There was no note." Thus, the testimony of the defendant, John Barker, does thereby impeach the credibility of the defendants, to wit, see answer by the Respondents submitted to the Massachusetts Commission Against Discrimination which avers that the note never existed, the Doctor's name is illegible, and identifies the same note submitted by someone that "claimed to be a doctor" and defendants Coggins, Salvie and Cardillo attest to in their affidavits, of which, the defendants attest to the existence of this same statement in a note with the words "work with Scott", but attempt to allude that Dr. Michael Perlman never existed to write such a note, and that your moving party, plaintiff, never provided documentation to the defendants regarding his disability. It is incredulous, to say the least, that they, individually and collectively identify the three words "work with Scott" but attempt to distance themselves, by false averment, that the Doctor, his credentials; his address; the patient's diagnosis, all inclusive of the same note, some how, remarkably, did not exist, and, with that stated, that the doctor, Dr. Michael Perlman, was a name not

Defendants are attempting to elicit the records of Dr. Michael Perlman in an effort to violate plaintiff's right of privacy maintained under the United States Constitution and its respective rules and laws. By deposing Dr. Michael Perlman, the defendants are depriving plaintiff of his "life, liberty and property" rights guaranteed by the United States Constitution. Plaintiff avers that everything, including, but not limited to, the documents, notes and records in the possession of Dr. Michael Perlman, are, essentially, plaintiff's property, and are under the care and direction of Dr. Michael Perlman, and, for all other purposes, the release of such medical records mandate the release by the patient, in this case, and for this instant matter, the plaintiff, your moving party. Your moving party objects to such a release, partially, and in its entirety, because it violates plaintiff's right to privacy.

The Supreme Court of the United States, Justice Stevens, held that: (1) federal law recognizes privilege protecting confidential communications between psychotherapist and her patient, abrogating *Burtrum,* 17 F.3d 1299; *In re Grand Jury Proceedings,* 867 F.2d 562 ; *Corona,* 849 F.2d 562; *Meagher,* 531 F.2d 752, and (2) statements that defendant police officer made to licensed social worker in course of psychotherapy, and notes taken during their counseling sessions, were protected from compelled disclosure. (Jaffee v. Redmond 518 U.S. 1, 116 S.Ct. 1923 (U.S.Ill.,1996))

"Federal law recognizes privilege protecting confidential communications between psychotherapist and her patient; psychotherapist privilege serves public interest by facilitating provision of appropriate treatment for individuals suffering effects of mental or emotional problem, and if privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled" (abrogating *Burtrum,* 17 F.3d 1299); *In re Grand Jury Proceedings,* 867 F.2d 562 ; *Corona,* 849 F.2d 562; *Meagher,* 531 F.2d 752. Fed. Rules Evid. Rule 501, 28 U.S.C.A. (Jaffee v. Redmond 518 U.S. 1, 116 S.Ct. 1923 (U.S.Ill.,1996))

"(c) The federal privilege, which clearly applies to psychiatrists and psychologists, also extends to confidential communications made to licensed social workers in the course of psychotherapy. The reasons for recognizing the privilege for treatment by psychiatrists and psychologists apply with equal force to clinical social workers, and the vast majority of States explicitly extend a testimonial privilege to them. The balancing component implemented by the Court of Appeals and a few States is rejected, for it would eviscerate the effectiveness of the privilege by making it impossible for participants to predict whether their confidential conversations will be protected. Because this is the first case in which this Court has recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would govern all future questions. Pp. 1931-1932. 51 F.3d 1346 (CA 7 1995), affirmed. Jaffee v. Redmond  518 U.S. 1, *2, 116 S.Ct. 1923, 1925 (U.S.Ill.,1996)

Rule 501 of the Federal Rules of Evidence provides as follows:

"Except as otherwise required by the Constitution of the
United States or provided by Act of Congress or in rules
prescribed by the Supreme Court pursuant to statutory authority,
the privilege of a witness, person, government, State, or
political subdivision thereof shall be governed by the principles
of the common law as they may be interpreted by the courts of the
United States in the light of reason and experience. However, in
civil actions and proceedings, with respect to an element of a
claim or defense as to which State law supplies the rule of
decision, the privilege of a witness, person, government, State
or political subdivision thereof shall be determined in
accordance with State law." (Jaffee v. Redmond  518 U.S. 1, 6,
116 S.Ct. 1923, 1926 (U.S.Ill.,1996))

The defendants, plaintiff hereby maintains and avers to this
Honorable Court, do not maintain a right to review records and
documentation between the patient and doctor and any motion submitted
by the defendants in this regard should be rejected forthwith and
expeditiously.

### PLAINTIFF INVOKES A MASSACHUSETTS CONSTITUTIONAL RIGHT TO PRIVACY

The Massachusetts Declaration of Rights Article I (Annulled by
Article CVI) which declares:

"All people are born free and equal and have certain
natural, essential and unalienable rights; among which may be reckoned
the right of enjoying and defending their lives and liberties; that of

acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

Article IV of the Massachusetts Declaration of Rights further declares:

"The people of this Commonwealth have the sole and exclusive right of governing themselves, as a free, sovereign, and independent state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, which is not, or may not hereafter, be by them expressly delegated to the United States of America in Congress assembled."

Article VII of the Massachusetts Declaration of Rights states:

"Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family or class of men; Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it."

Massachusetts Constitution, Article X declares:

"Each individual of the society has a right to be protected by in the enjoyment of his life, liberty and property, according to standing laws."

Article XI of the Massachusetts Constitution declares:

"Every subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial, promptly, and without delay; conformably to the laws."

Article XIV declares:

"Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

Defendant Haddad Motor Group, Inc., by and through their impeachable counsel, seeks from Dr. Michael Perlman under "Schedule A" of defendants "Third Party Keeper of the Records Subpoena" the following:

"1. A copy of the complete medical records of plaintiff Scott Stern.

2. Any treatment records or reports, copies of medical documents (including, but not limited to bills, prescriptions, treatment plans) for Scott Stern, during the period from 2000 to the present.

3. Any initial treatment write-up, evaluation, or assessment for Scott Stern.

4. Any notes, correspondences, messages, or other communications from Dr. Perlman's office to Scott Stern's former employer Haddad

Motors (or to any representative, agent, or employee of Haddad Motors) concerning Scott Stern."

The Massachusetts General Court legislated this point and in statutory law Massachusetts General Laws Chapter 233 § 20B states:

"Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition. This privilege shall apply to patients engaged with a psychotherapist in marital therapy, family therapy, or consultation in contemplation of such therapy."

One of the exceptions to the doctor/patient privilege is noted in subsection c:

"c) In any proceeding, except one involving child custody, adoption or adoption consent, in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected."

One question, therefore, before this Honorable Court is whether or not it is in the interest of justice to violate the

valued and trusted relationship patient, your moving party, has developed and maintained, with his doctor, Dr. Michael Perlman over the course of years, and whether defendants have a right to violate the protected status of this relationship in order to defend their discriminatory practices and to defend their impeachable offenses by some innocuous thought or statement by your petitioner in a private, personal and trusting setting.

In Jaffee, the Supreme Court summed up the right to communicate with one's psychotherapist in this way:

"Reason tells us that psychotherapists and patients share a unique relationship, in which the ability to communicate freely without the fear of public disclosure is the key to successful treatment." *Id.,* at 1355-1356. As to experience, the court observed that all 50 States have adopted some form of the psychotherapist-patient privilege. (Jaffee v. Redmond  518 U.S. 1, *6, 116 S.Ct. 1923, **1926 (U.S.Ill.,1996))

Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting "common law principles ... in the light of reason and experience." The authors of the Rule borrowed this phrase from our opinion in *Wolfle v. United States,* 291 U.S. 7, 12, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934), which in turn referred to the oft-repeated observation that "the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions." *Funk v. United States,* 290 U.S. 371, 383, 54 S.Ct. 212, 216, 78 L.Ed. 369 (1933). See also *Hawkins v. United States,* 358 U.S. 74, 79, 79 S.Ct. 136, 139, 3 L.Ed.2d 125 (1958) (changes in

privileges may be "dictated by 'reason and experience' ").(Jaffee v. Redmond  518 U.S. 1, *8, 116 S.Ct. 1923, **1927 (U.S.Ill.,1996))

The defendants are hoping and reaching for, galaxies billions of light years away, the possibility that plaintiff's doctor's notes and testimony would benefit them and lessen their impeachable offenses before this Honorable Court.  Defendants and defense counsel falsely averred to the tribunal to achieve a litigious advantage over plaintiff in the MCAD proceedings.  The MCAD knowingly abrogated its own rules, laws and the factual support presented on behalf of plaintiff's defense of a probable cause of action against plaintiff's former employer.  The EEOC, by means of its "workshare agreement" deferred to the MCAD's findings and rubberstamped the decision, by using a term, "substantial weight finding", to indicate that the EEOC reviewed the submitted materials to the MCAD.  This however, was false and misleading to the plaintiff and plaintiff has a cause of action against the defendants for abrogating their own rules, regulations and judicial decisions. Defendants statements, by and through their counsel, aver and declare inconsistent and incredulous statements that are contrary to the rule of law and contradictory to their own submitted affidavits and testimony.  In seeking plaintiff's doctor's notes, they are attempting to focus the Court on their right to "every man's evidence" and not the fact that they averred false statements to the tribunal known as the Massachusetts Commission Against Discrimination.

The familiar expression "every man's evidence" was a well-known phrase as early as the mid-18th century. Both the Duke of Argyll and

Lord Chancellor Hardwicke invoked the maxim during the May 25, 1742, debate in the House of Lords concerning a bill to grant immunity to witnesses who would give evidence against Sir Robert Walpole, first Earl of Orford. 12 T. Hansard, Parliamentary History of England 643, 675, 693, 697 (1812). The bill was defeated soundly. *Id.*, at 711. (Jaffee v. Redmond  518 U.S. 1, *9, 116 S.Ct. 1923, 928 (U.S.Ill.,1996))

In Nelson the Supreme Court of New Hampshire further held that:

"...patient retained right, under statutory physician-patient privilege, to refuse to permit defendants to inquire privately of patient's treating physician regarding patient's medical care and treatment, and there were not circumstances under which trial court could compel patient to allow such consultation. RSA 329:26"

In addition, in Nelson, the Court held that:

"The statutory physician-patient privilege belongs to the patient, who may prevent the physician from revealing statements whose confidentiality the patient wishes to preserve. RSA 329:26"

In Nelson v. Lewis, 130 N.H. 106, 534 A.2d. 720, N.H. 1987 the Supreme Court of New Hampshire held that:

"the physician-patient privilege is "not absolute and must yield when disclosure of the information concerned is considered essential."

The Court held this aspect because patient's suit was against their own doctor for medical negligence, and not, contrasting with this instant case, by a patient that is suing his former employer for wrongful termination and discriminatory practices that is well-documented and supported by both plaintiff's evidence and defendants

own affidavits and testimony.  In this instant matter, granting the defendants unimpeded access to plaintiff's doctor's notes and documentation would, inexplicably, be contrary to plaintiff's Federal rights, the Massachusetts Declaration of Rights, and the laws of the United States and the Commonwealth of Massachusetts statutory laws and are not, contrary to anything defendants may aver to this Honorable Court, "essential" to this matter or their defense of discriminatory practices.

In addition, granting defendants access to the personal and private conversations between the patient, plaintiff, and his doctor, would abrogate the decision by the Supreme Court of the United States in Jaffee.  Plaintiff, your moving party, is a patient of the doctor with whom he still maintains a personal relationship based on trust and respect that has developed over the course of years.

In Nelson, the patient was suing the doctor, and sought information regarding the doctor's notes of his own treatment because the patient filed a lawsuit for medical negligence.  Defendants have no business, nor privilege, nor any purpose, that would serve "the public's interest", let alone their own perverted needs, in order to disclose the notes, papers and documentations of plaintiff's doctor in this instant matter.   Defendants, by admission of their own statements and affidavits, can be considered to have their credibility truly questioned and impeached.  Plaintiff herein avers that the question of their credibility can be decided by the jury that defendants Haddad Motor Group, Inc., demanded in their answer to plaintiff.

In the meanwhile, however, it is the decision of this Honorable Court to determine the necessity of allowing Dr. Michael Perlman to testify by means of a "Third Party Keeper of the Records Subpoena" or, in the alternative, to allow the defendants uninhibited access and copies of private and personal records disclosed by the plaintiff his doctor in a confidential and trusting setting; and doctor's notes relative to private and personal conversations with his patient.

In Commonwealth v. Bishop, the Supreme Judicial Court noted:

"Although the motion judge did not expressly so rule, the record reveals that Dr.[Orabona's] records are apparently privileged pursuant to G.L. c. 233, § 20B (1992 ed.). (Com. v. Bishop  416 Mass. 169, 174, 617 N.E.2d 990, 994 (Mass.,1993))

Synonymous with the Bishop case, plaintiff, your moving party, has been a victim by the defendants.  Plaintiff's private personal conversations publicized in this forum would create a "chilling effect" on plaintiff's therapeutic needs to engage in and maintain private and personal conversations with a trusted, respected and renown doctor in a specialized field of practice.

In Bishop, the Court held:

"On the other hand, revelation of privileged information adversely affects the purposes underlying the need for the confidential relationship and serves as a disincentive to the maintenance of such relationships. "If it becomes known that confidences are violated, other people may be reluctant to use [confidential services] and may be unable to use them to maximum benefit. The purpose of enacting a ···

privilege is to prevent the chilling effect which routine disclosures
may have in preventing those in need from seeking that help."
(*Commonwealth v. Collett,* 387 Mass. 424, 428, 439 N.E.2d 1223 (1982).
One need not venture far to see the force of this position; victims of
rape or sexual abuse would likely shy away from forthright therapeutic
sessions with their counsellors if their words were later lent to the
perpetrator in aid of his or her defense." (Com. v. Bishop  416 Mass.
169, *176, 617 N.E.2d 990, **994 (Mass.,1993))

 Furthermore, the Court held in Bishop:

 "However, we now affirm the proposition that a defendant must
show, at a minimum, a likelihood that the records contain relevant
evidence to justify initial judicial review." (Com. v. Bishop  416
Mass. 169, *178, 617 N.E.2d 990, **995 (Mass.,1993))

 The Court also stated:

 "Accordingly, we hold that the defendant must show, at the
threshold, that records privileged by statute are likely to contain
relevant evidence. If the judge finds, based on the defendant's
proffer, that the records are likely to be relevant to an issue in the
case, the judge shall review the records in camera to determine whether
the communications, or any portion thereof, are indeed relevant.
During this relevancy determination stage, the defendant need not make
a showing that the records *actually* contain information that carries,
for example, the potential for establishing the unreliability of either
the criminal charge or a witness on whose testimony the charge depends.
The defendant must, however, advance, in good faith, at least some

factual basis which indicates how the privileged records are likely to be relevant to an issue in the 997 case and "that the quest for its contents is not merely a desperate grasping at a straw." *People v. Gissendanner,* 48 N.Y.2d 543, 550, 423 N.Y.S.2d 893, 399 N.E.2d 924 (1979); *People v. Pena,* 127 Misc.2d 1057, 1058-1060, 487 N.Y.S.2d 935 (N.Y.Sup.Ct.1985) (Com. v. Bishop  416 Mass. 169, *179-180, 617 N.E.2d 990,**996 - 997 (Mass.,1993))

In *Commonwealth v. Stockhammer,* 409 Mass. 867, 570 N.E.2d 992 (1991), we considered whether in camera review of privileged records, under the *Two Juveniles* model, adequately protected the defendant's right to a fair trial under art. 12 of the Massachusetts Declaration of Rights. In rejecting the in camera prong of the *Two Juveniles* model, we held that "[t]he danger lurking in the practice of ⋯ in camera review [of privileged documents] by the trial judge is a confusion between the roles of trial judge and defense counsel. The judge is not necessarily in the best position to know what is *necessary* to the defense" (emphasis supplied). *Id.,* 409 Mass. at 882, 570 N.E.2d 992, quoting *Commonwealth v. Clancy,* 402 Mass. 664, 670, 524 N.E.2d 395 (1988).

"To gain access to the privileged records defendant must specifically allege what useful information may be contained in the target records.  However, defendant has no way of making these specific allegations until he has seen the contents of the records." *People v. Foggy, supra,* 121 Ill.2d at 359, 118 Ill. Dec. 18, 521 N.E.2d 86 (Simon, J., dissenting).

<u>CONCLUSION</u>

For these reasons, plaintiff, hereby submits this Memorandum of Law in Support of Notice of Objection to the release of plaintiff's doctor's notes, documentation and testimony and further objects to the subpoena of the defendants to admit testimony of a private and personal nature from plaintiff's doctor, contrary to the Federal Rules of Evidence, the United States Supreme Court, the Massachusetts Declaration of Rights and the laws of the Commonwealth of Massachusetts.

Most respectfully submitted this 3 day of May, 2006.

Scott Stern
Sui Juris
All Rights Reserved without Prejudice
Pro Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

# CERTIFICATE OF SERVICE

I, Scott Stern, Pro-Se Plaintiff, in this action of Scott Stern v. Haddad Motor Group, Inc., et. al., in the United States District Court, Case Number 05-30160-KPN, certify that I have caused a copy of the foregoing document,

COPY OF MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION

COPY OF THIS CERTIFICATE OF SERVICE

to be delivered, postage prepaid, to the defendants, at their respective addresses this 2 day of May, 2006.

Michenzie & Sewin, LLC
Ann Brown, Resident Agent, President or Corporate officer
745 Boylston Street
Boston, Massachusetts 02116-2636

John C. Barker
Michenzie & Sewin, LLC
745 Boylston Street
Boston, Massachusetts 02116-2636

Massachusetts Commission Against Discrimination
Cynthia Tucker
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

Massachusetts Commission Against Discrimination
James Levinsky,
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

Massachusetts Commission Against Discrimination
Migdalia Rivera
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

Massachusetts Commission Against Discrimination
Crystal Borges
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

(By leave of Erin Norris to serve one copy for both defendants)
U.S. Equal Employment Opportunity Commission
Erin Norris
Robert Sanders and Joseph Alvarado, Official Capacities
1801 L. St. N.W.
Washington, D.C. 20507

# CERTIFICATE OF SERVICE page 2

Equal Employment Opportunity Commission
Robert Sanders,
Defendant, Personal Capacity
Area Office Director
John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, Massachusetts     02203

Equal Employment Opportunity Commission
Joseph Alvarado,
Defendant, Personal Capacity
State and Local Manager
33 Whitehall Street, 5th floor
New York, New York   10004-2167

_____          _____
Scott Stern                        Date of Mailing/Delivery
All Rights Reserved without Prejudice
Sui Juris
400 West Main Street
North Adams, Massachusetts 01247

Plaintiff's Memorandum of Law in Support of Notice of Objection SvH     19