UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS    CIVIL ACTION NO. 3/05-CV-30160-KPN

| | |
|---|---|
| SCOTT STERN,<br>   Plaintiff<br><br>v.<br><br>HADDAD DEALERSHIPS OF THE BERKSHIRES, INC.; JAMES SALVIE, GENERAL SALES MANAGER; TIMOTHY CARDILLO, SALES MANAGER; MICHAEL COGGINS, GENERAL MANAGER, IN THEIR PERSONAL AND OFFICIAL CAPACITIES OF HADDAD DEALERSHIPS OF THE BERKSHIRES,<br><br>And<br><br>CYNTHIA TUCKER, INVESTIGATING COMMISSIONER; JAMES LEVINSKY, DEPUTY GENERAL COUNSEL; MIGDALIA RIVERA, COMPLIANCE OFFICER II; CRYSTAL BORGES, INVESTIGATOR, IN THEIR PERSONAL AND OFFICIAL CAPACITIES OF THE MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION,<br><br>And<br>ROBERT SANDERS, BOSTON AREA OFFICE DIRECTOR, IN HIS PERSONAL AND OFFICIAL CAPACITY AS DIRECTOR OF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>   Defendants | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**THE HADDAD DEFENDANTS'**<br>**OPPOSITION TO PLAINTIFF'S**<br>**MOTION TO AMEND** |

# THE HADDAD DEFENDANTS' OPPOSITION TO
# PLAINTIFF'S MOTION TO AMEND

Now come Defendants Haddad Dealerships of the Berkshires, Inc.,[1] James Salvie, Michael Coggins, and Timothy Cardillo (collectively, the "Haddad Defendants"), through their counsel of record, and hereby oppose the Motion to Amend by Plaintiff Scott Stern ("plaintiff" or "Stern") that seeks to add defense counsel John Barker and his law firm Michienzie & Sawin as named defendants in this case. Because plaintiffs' Motion to Amend to add these parties is frivolous, the Haddad Defendants are also seeking sanctions, in a separate Motion for Sanctions served on plaintiff under F.R.C.P. 11(c)(1)(A) and soon to be filed.

**I.     Introduction and Summary of Argument**

Plaintiff Stern is attempting to add a claim against defense counsel John Barker and his firm Michienzie & Sawin, based on an alleged statement by Attorney Barker during the MCAD "probable cause" hearing in Stern's case. The statement that plaintiff claims Attorney Barker made during that hearing was "There was no note," referring to a doctor's note that Stern presented to the Haddad Defendants before his termination from Haddad, for excessive tardiness and other problems. First, Attorney Barker made no such statement, as discussed below. Affidavit of John C. Barker ("Barker Affidavit") ¶7. Second, any such statement denying the existence of the note that Stern showed to the Haddad Defendants at that time, would have been inconsistent with Haddad's pleadings and affidavits in the MCAD proceeding. Id. ¶5. It simply makes no sense that Attorney Barker would make any statement denying the existence of this "work with Scott" note.

---

[1] The correct name for this party is Haddad Motor Group, Inc.

Third, even if Attorney Barker *had* made such a statement, it was absolutely privileged. Massachusetts and federal courts have recognized an absolute litigation privilege for statements made during litigation proceedings (such as an MCAD hearing) even if false and made with malice. *See, e.g.*, Sietins v. Joseph, 238 F.Supp.2d 366, 378-79 (D. Mass. 2003); Sriberg v. Raymond, 370 Mass. 105, 108, 345 N.E.2d 882 (1976).

The Haddad Defendants submit that what the plaintiff is really doing here is trying to disqualify defense counsel and thereby deprive the Haddad Defendants of counsel of their choice (the lawyer and firm who successfully defended them in the MCAD proceedings and achieved a finding of "lack of probable cause"). Naming defense counsel as defendants would disqualify defense counsel from representing its co-defendants. Even for a pro se plaintiff, this proposed amendment (the claim against Attorney Barker and his firm) was made in transparently bad faith. As shown below, plaintiff is manipulating statements from mandatory attorney conferences and making obviously frivolous claims, and should be sanctioned. With a long-established privilege such as the absolute litigation privilege, even a pro se litigant must be charged with constructive knowledge of existing law.

## II. Factual and Procedural Background, With Allegations Pertinent to Plaintiff's Motion to Amend to Add Attorney Barker and His Firm as Defendants Herein

### A. Stern's Allegations

Stern's MCAD charge of 5/2/03 against the Haddad Defendants [at Exhibit C,[2] ¶4] alleges that on 11/26/02,[3] Stern "presented my [Haddad] managers with a note from my doctor that stated 'my employer should work with me....'" Stern's Amended Complaint makes the

---

[2] The documentary exhibits are attached as exhibits to the Affidavit of John C. Barker, filed herewith, because of page limit requirements of the electronic filing procedures.

[3] There is some inconsistency concerning this date. Stern later changes the date to 11/27/02, in ¶34 of his Amended Complaint, and in ¶7 of his 5/15/06 Affidavit [at Exhibit D].

00087415.DOC

3

same claim in ¶28. In Stern's Affidavit of 5/15/06 [at Exhibit D, ¶¶7-8], he confirms that he presented the "work with Scott" note to the Haddad Defendants at an 11/27/02 meeting.[4]

Central to plaintiff's Motion to Amend is Stern's accusation of perjury against Attorney Barker. *See* p.2 of Stern's Memorandum in support of his Motion to Default the MCAD Defendants[5]; Stern's 5/15/06 Affidavit ¶6 [at Exhibit D]. The alleged perjury by Attorney Barker was "before" the MCAD at a hearing. Stern's Amended Complaint ¶153; Stern's Memorandum in support of his Motion to Default the MCAD Defendants, p.3); *see* ¶6 of Stern Affidavit (the alleged false statement was at the MCAD hearing).

Stern also accuses the Haddad Defendants of perjury, based on testimony at this same hearing and based on their responses to Stern's MCAD charge [these responses are at Exhibits A and B]. *See* Stern's Memorandum in support of his Motion to Default the MCAD Defendants, p.3; Stern's Amended Complaint ¶55.

In his 5/15/06 Affidavit, Stern indicates that during a recent attorney conference over the phone concerning scheduling in this case, Attorney Barker stated "I was just doing my job" in response to Stern's question "did you lie at the MCAD hearing?" (Exhibit D, ¶¶15 and 16). As discussed below, in the Haddad's Defendants' separate Motion for Sanctions, and in the Barker Affidavit filed herewith (¶¶9-11), this allegation is blatantly false and could only be the result of

---

[4] This Affidavit was filed alone, not attached to any motion or other pleading, in the instant case, on 5/17/06, at Docket No. 40. A copy of this Affidavit is attached at Exhibit D. At Exhibit E, is a copy of the companion Affidavit of Gail Rubino, a "friend" of plaintiff Stern (¶2). The Rubino Affidavit mirrors some of the allegations by Stern in his Affidavit concerning the telephone conference re litigation scheduling on 5/9/06.

[5] Plaintiff's Memorandum of Law in Support of Motion for Entry of Default Final Judgment, against the MCAD Defendants, was filed on 6/5/06. More specifically, Stern's Memorandum, states (pp.2-3) in relevant part as follows: "the defendants, Haddad Motor Group, Inc., by their Counsel, John Barker, and the Managers, David Michael Coggins, James Salvie, and Timothy Cardillo, each perjured their testimony in order to have a litigious advantage during the pendency of the MCAD hearings. The defendants,… through their chosen counsel, falsified information,… corroborated each other's testimony, regarding a note that stated "work with Scott" which was submitted to the defendants…. Plaintiff seeks to amend the complaint to include the defendant John Barker and the law firm of Michienzie & Sawin for perjuring testimony before the Massachusetts Commission Against Discrimination."

00087415.DOC

intentional misrepresentation, as opposed to misunderstanding. Attorney Barker stated that he was "just doing [his] job" in the context of sympathetic reinsurances to Stern that he had "nothing personal" against Stern in defending the Haddad Defendants against Stern's claims. Barker Affidavit ¶¶10-11. In fact, this statement had nothing to do with Stern's demands that Attorney Barker respond to Stern's accusations concerning alleged lying to the MCAD. Attorney Barker had explained to Stern that the purpose of the telephone conference was to agree on a mutually convenient litigation schedule for this case, and that he would not respond to Stern's accusations concerning his alleged "lying at the MCAD" in those telephone conferences. Id. ¶¶9-11. There could have been no misunderstanding here. The statements were not even in the same phone conversation. Id.

    **B.**    **Allegations by the Haddad Defendants Concerning the Doctor's Note**

The Haddad Defendants have consistently explained in pleadings and affidavits throughout the MCAD proceedings and this case, that during the meeting with Stern in November 2002, Stern briefly presented to them a crumpled note that they remember said "work with Scott." Barker Affidavit ¶5. Stern subsequently claimed that this was a doctor's note, but at the time, Stern would not permit Haddad management to keep the note or keep a copy of it, nor would he provide for them the name of the treating doctor and contact information, nor did he respond to their request that he provide written documentation of his bi-polar diagnosis/condition, nor did he provide them with the documentation they requested concerning his requested accommodation that he be permitted to arrive late to work on a daily basis. *See* Exhibit A, the 8/13/03 response from defendant Timothy Cardillo to Stern's MCAD charge; *see* Exhibit B, the 8/14/03 response by defendant James Salvie to Stern's MCAD charge; *see* ¶51 of Stern's Amended Complaint; Barker Affidavit ¶5. As described in the initial Haddad responses

to Stern's MCAD charge [Exhibits A and B], Stern presented the "work with Scott" note, but Haddad could not tell at the time that this was from a doctor, and was not permitted to follow up with the doctor concerning Stern's condition and needs. Id. Haddad requested that Stern provide a doctor's note or some documentation, both of his disability, and of his need to be accommodated for his disability by being permitted to arrived late to work. Id. Even plaintiff concedes that "the note did not directly state that the plaintiff needed to be accommodated for his illness." Amended Complaint ¶36. This is consistent with Respondent Haddad's 9/13/03 statement to the MCAD [at Exhibit G to Stern's Amended Complaint]. Although not at issue herein, it should be noted that Haddad *gave* Stern the accommodation that he requested anyway. Stern was permitted to arrive late to work each day. *See* Exhibits A and B hereto.

### C. The Alleged Statement by Attorney Barker Makes No Sense in this Context.

As stated, Attorney Barker did not state at any MCAD hearing that "there was no note" presented by Stern to the Haddad Defendants. Barker Affidavit ¶7. This would make no sense, as it would have contradicted the pleadings submitted by Respondent Haddad to the MCAD and would have contradicted the Affidavits (initial responses) also submitted to the MCAD in response to Stern's charge [Exhibits A and B].

It is possible that Attorney Barker said that plaintiff did not provide any copy of the "work with Scott" note until the MCAD hearing, because this was the first time Attorney Barker had ever seen this note. It is also possible that Attorney Barker stated that Stern provided no copy of the note to Haddad during the November 2002 meeting, as Haddad requested, or that plaintiff provided no proof that the note was from a doctor, or that Stern was in fact bi-polar, or that (if he was bi-polar) this condition required Stern to be late to work every day. But this is not what Stern accuses Attorney Barker (and vicariously his firm) of: Stern states that Attorney

Barker said at the MCAD hearing that there was no such note at all. Stern's Memorandum in support of his Motion to Default the MCAD Defendants, pp. 2-3; Stern's 5/15/06 Affidavit [Exhibit D] ¶6. Stern apparently claims that right after he showed the "work with Scott" note to the MCAD and Attorney Barker, Attorney Barker then denied its existence. This accusation makes no sense and is blatantly false.

Further, Attorney Barker was not a percipient witness to the November 2002 meeting, or to how Stern presented the "work with Scott" note. Attorney Barker and his firm were not involved with the matter until August of 2003, after Stern filed his MCAD charge (on 5/2/03). Barker Affidavit ¶¶3-4. Thus, anything that Attorney Barker told the MCAD hearing officer at an MCAD hearing, was passed on from his clients and was not his own "testimony" as Stern characterizes it. Attorney Barker related to the MCAD, facts about the doctor's note that were consistent with the Haddad Defendants' own accounts about this note. See id. ¶5.

### III. Even Assuming (Arguendo) That Attorney Barker Made the Statement That Stern Alleges, This Statement Was Absolutely Privileged.

#### A. The Absolute Litigation Privilege

Any such statement made by Attorney Barker during the subject MCAD hearing would have been absolutely privileged. Otherwise, any lawyer or witness could be sued by an opposing party who had a different story concerning underlying facts. The litigation privilege is absolute and applies even if the alleged offensive statements were uttered maliciously or in bad faith. Mulgrew v. Taunton, 410 Mass. 631, 634, 574 N.E.2d 389 (1991); Hartford v. Hartford, 60 Mass.App.Ct. 446, 803 N.E.2d 334 (2004). The only requirement for the privilege is that the alleged false statements pertain or relate to the proceedings, which requirement was obviously met as to the alleged statement about the doctor's note. See Sietins, F.Supp.2d at 378-79;

Sriberg, 370 Mass. at 108; Hartford, 60 Mass.App.Ct. 446. The SJC has recognized a special absolute privilege for attorneys, adopting Restatement of Torts §585, in Sriberg, 370 Mass. at 108-09, holding that the absolute litigation privilege applies "where such statements are made by an attorney engaged in his function as an attorney whether or in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." This attorney privilege promotes "the public policy permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients...." Id.

The absolute litigation privilege protects the person making such a statement from "any civil liability based thereon," not just from defamation liability. Doe v. Nutter McClennen & Fish, 41 Mass.App.Ct. 137, 140-41, 668 N.E.2d 1329, rev. denied, 423 Mass. 1111, 672 N.E.2d 539 (1996), citing Correllas v. Viveiros, 410 Mass. 314, 324, 572 N.E.2d 7 (1991).[6]

**B.    The Absolute Litigation Privilege Applies Here.**

Stern's 5/15/06 Affidavit [at Exhibit D] states in ¶6, that Attorney Barker made the alleged offending statement ("There was no note") at the MCAD hearing. *Accord,* Stern's Amended Complaint ¶153. The alleged statements discussed above, such as Attorney Barker's statement "I was just doing my job," were made during a litigation conference after the instant federal action was filed. Stern Affidavit ¶¶15 and 16. This is confirmed by Stern's Memorandum in support of his Motion to Default the MCAD Defendants, p.3, which indicates that the purported perjured testimony was to the MCAD at this hearing. Therefore, the above-discussed absolute litigation privilege would relieve Attorney Barker and his firm from any civil

---

[6] Note here, as argued in the Haddad Defendants' Partial Opposition to the Motion to Dismiss by the MCAD Defendants, that the litigation privilege should extend to the MCAD investigators and hearing officers as well. *See, e.g.,* Briscoe v. LaHue, 460 U.S. 325, 334-35, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (common-law absolute privilege for witnesses, judges, and prosecutors.)

liability, even if Attorney Barker had denied the existence of any doctor's note and even if such denial had been malicious and in bad faith.

    C.    **Because of the Absolute Litigation Privilege, Stern's Motion to Amend Is Frivolous, and any Such Amendment Would Be Futile.**

As discussed, even if Attorney Barker said exactly what Stern claims he said at the MCAD hearing, neither Attorney Barker nor his firm could be liable, because of the absolute litigation privilege. Leave to amend should be denied where such amendment "would be futile" because it cannot succeed on the merits. *E.g.*, Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); Hoppy's Oil Service, Inc. v. Ins. Co. of North America, 783 F.Supp. 1505, 1511 (D. Mass. 1992).

    D.    **Further, Certain Sub-Claims by Stern in Count Seventeen, Do Not Afford a Private Right of Action.**

The above-discussed litigation privilege removes any civil liability from Attorney Barker and his firm. Additionally, Stern has made certain claims that are not privately enforceable.

For example, Stern includes as part of his grounds for suit against Attorney Barker and his firm, alleged violations of Massachusetts Rules of Professional Conduct. These ethical and/or disciplinary rules governing lawyers "provides standards of professional conduct of attorneys and do not in and of themselves create independent causes of action." Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 141, 668 N.E.2d 1329, *rev. denied*, 423 Mass. 1111, 672 N.E.2d 539 (1996), *citing* Fishman v. Brooks, 396 Mass. 643, 649, 487 N.E.2d 1377 (1986); Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass.App.Ct. 359, 368-69, 416 N.E.2d 528 (1981).

The perjury statute that Stern cites in his Amended Complaint ¶153 (M.G.L. ch. 268 §1) is a *criminal* statute that a private plaintiff such as Stern does not have standing to enforce.

Further, because of the absolute litigation privilege, there is no *civil* liability for violation of this statute. See Hahn v. Sargent, 388 F.Supp. 445, 452 (D.Mass.), *aff'd*, 523 F.2d 461 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

### IV.  Nor Did Plaintiff Comply With the Requirement That He Confer With Opposing Counsel on the Substance of His Motion.

Plaintiff did tell Attorney Barker that he intended to sue Attorney Barker and his firm. However, Stern did not discuss the merits or substance of such a motion with Attorney Barker or any other defense counsel. Barker Affidavit ¶14. As pro se counsel, plaintiff was required to confer with opposing counsel on the merits of any motion before filing it, under Local Rule 7.1(A)(2).

Moreover, this Court requested that the parties hold off on any additional motions until after the pending Motions to Dismiss were decided, in this Court's oral rulings at the hearing on 5/17/06. Stern originally filed his Motion to Amend and Amended Complaint, proposing to add Attorney Barker and his firm as defendants, in April, and this Court denied the Motion by order of 4/25/06 because plaintiff failed to comply with Local Rule 15.1. Stern subsequently filed the instant Motion to Amend and Amended Complaint on 6/8/06 [Docket No. 46].

### V.  Plaintiff Should Not Be Allowed to Cause the Disqualification of Defense Counsel in This "Backdoor" Way.

The Haddad Defendants submit that, beyond intimidation, plaintiff's real agenda is to deprive defendants of their counsel. Joining Attorney Barker and his firm as defendants would manufacture a conflict of interest between these parties and their clients (the Haddad Defendants), require disqualification,[7] possibly permit discovery of privileged material, and

---

[7] If Attorney Barker is disqualified, so will his firm be. See, e.g., Byington v. City of Boston, 37 Mass.App.Ct. 907, 908, 640 N.E.2d 115 (1994). Of course there is no guarantee that plaintiff Stern would not attack successor

00087415.DOC

10

unnecessarily add to defense costs and efforts, all in an attempt to demoralize defendants and prevail on grounds other than the merits.

Attorney Barker handled the MCAD proceeding in this matter, and has handled the federal litigation so far. His knowledge of the law in this area and the factual background of this case will assist the Haddad Defendants, and, replacing him and his firm would cause the Haddad Defendants unnecessary expense and time. Plaintiff is using the prospect of disqualification as a litigation tactic, a ploy that courts have decried. *See, e.g.,* Byrnes v. Jamitkowski, 29 Mass.App.Ct. 107, 109, 557 N.E.2d 79 (1990); *see also* Rizzo v. Sears, Roebuck & Co., 127 F.R.D. 423, 424-25 (D. Mass. 1989), *citing* Serody v. Serody, 19 Mass.App.Ct. 411, 414, 474 N.E.2d 1171 (1985).

Further, adding defense counsel as parties to this litigation would likely result in revelation of privileged material. If this court were to disregard the absolute litigation privilege and credit Stern's factual allegations, defense counsel could be forced into a posture adversarial to their former clients; such a situation could necessitate waiver of the attorney-client privilege and/or work product protections as to certain information and documents from the MCAD proceedings below.

## VI. Conclusion

For the foregoing reasons, the Haddad Defendants and their counsel respectfully request that this Honorable Court deny plaintiff's Motion to Amend, seeking to add defense counsel Barker and his firm as named defendants. Attorney Barker did not state at the MCAD hearing that no doctor's note existed from Stern, but even if he had, any such argument before the MCAD (adjudicating whether "probable cause" existed) was absolutely privileged. Plaintiff

---

counsel, if Attorney Barker and his firm were disqualified from this case, with similar ad hominem insults and, possibly, a similar tort claim.

Stern should not be allowed to disqualify defense counsel and jeopardize applicable privileges, in this "backdoor" fashion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the Haddad Defendants request a hearing on the plaintiff's Motion to Amend, should this Court deem oral argument helpful or necessary.

THE HADDAD DEFENDANTS,
By Their Attorneys
MICHIENZIE & SAWIN LLC

Dated: 6/22/06

BY: /s/ John Barker
Richard A. Sawin, Jr. – BBO NO: 546786
John C. Barker – BBO NO: 637406
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: (617) 227-5660

## **CERTIFICATE OF SERVICE**

I, John C. Barker, attorney for defendant, hereby certify that I have on this 22nd day of June 2006, served a copy of the foregoing Opposition, by electronic filing or by mailing a copy of same, postage prepaid, to the following:

Mr. Scott Stern
400 West Main Street
North Adams, MA 01427

Jerrold Levinsky, Esq.
Massachusetts Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

Erin Norris, Esq.
Equal Employment Opportunity Commission
Office of Legal Counsel
1801 L Street Northwest
Washington, DC 20507

_____
John C. Barker