UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS          CIVIL ACTION NO. 3/05-CV-30160-KPN

| | |
|---|---|
| SCOTT STERN, <br>     Plaintiff <br><br>     v. <br><br> HADDAD DEALERSHIPS OF THE <br> BERKSHIRES, INC.; JAMES SALVIE, <br> GENERAL SALES MANAGER; <br> TIMOTHY CARDILLO, SALES <br> MANAGER; MICHAEL COGGINS, <br> GENERAL MANAGER, IN THEIR <br> PERSONAL AND OFFICIAL <br> CAPACITIES OF HADDAD <br> DEALERSHIPS OF THE BERKSHIRES, <br><br> And <br><br> CYNTHIA TUCKER, INVESTIGATING <br> COMMISSIONER; JAMES LEVINSKY; <br> DEPUTY GENERAL COUNSEL; <br> MIGDALIA RIVERA, COMPLIANCE <br> OFFICER II; CRYSTAL BORGES, <br> INVESTIGATOR, IN THEIR PERSONAL <br> AND OFFICIAL CAPACITIES OF THE <br> MASSACHUSETTS COMMISSION <br> AGAINST DISCRIMINATION, <br><br> And <br> ROBERT SANDERS, BOSTON AREA <br> OFFICE DIRECTOR, IN HIS PERSONAL <br> AND OFFICIAL CAPACITY AS <br> DIRECTOR OF EQUAL EMPLOYMENT <br> OPPORTUNITY COMMISSION, <br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **AFFIDAVIT OF JOHN C. BARKER**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF JOHN C. BARKER

I, John C. Barker, hereby declare under oath as follows:

1.     I am currently a partner at the law firm of Michienzie & Sawin LLC, 745 Boylston Street, Boston, MA 02116, which law firm represents named defendants Haddad Dealerships of the Berkshires, Inc., James Salvie, Michael Coggins, and Timothy Cardillo (collectively, the "Haddad Defendants"), against actions by plaintiff Scott Stern ("plaintiff" or "Stern").  The correct name of the defendant named as Haddad Dealerships of the Berkshires, Inc. is Haddad Motor Group, Inc.

2.     Except where stated otherwise, I have personal knowledge of the facts set forth herein, and if called and sworn to testify, could competently testify thereto.

3.     I and my law firm were assigned the defense of the Haddad Defendants, against Stern's MCAD charge, in July or August of 2003.  Stern filed his MCAD charge on or about 5/2/03.

4.     Before I or my firm were involved with this case, the Haddad Defendants responded to Stern's MCAD charge with two separate letter-affidavits, one by Timothy Cardillo dated 8/13/03, and the other by Michael Coggins dated 8/14/03.  A true and accurate copy of the 8/13/03 Affidavit by Timothy Cardillo is at Exhibit A hereto.  A true and accurate copy of the 8/14/03 Affidavit by Michael Coggins is attached hereto at Exhibit B.  The Cardillo Affidavit is also Exhibit A to Stern's Amended Complaint, and the Coggins Affidavit is also Exhibit B to Stern's Amended Complaint.

5.     Consistent with these two Affidavits (from Cardillo and Coggins), it has been my understanding from the beginning of my involvement with this case, that a meeting occurred between Stern and Haddad Managers in November 2002, concerning

{00087576.DOC}

2

Stern's tardiness and other performance issues, while Stern still worked at Haddad

Motors.  At that November 2002 meeting, Stern first informed Haddad that he claimed a

disability -- a bi-polar condition -- and requested that he be allowed to arrive late to work

every day because of this alleged disability.  Haddad requested that he show some

documentation, both of the disability, and of his need to arrive late to work every day,

and of the connection between the two.  At that meeting, Stern briefly presented a

crumpled piece of paper that he claimed was a note from a doctor and that contained the

phrase "work with Scott."  No one from Haddad (or myself or other Haddad counsel) has

ever denied that Stern presented this note to Haddad Management at the November 2002

meeting.  However, it is also my understanding that Stern refused to leave the note with

Haddad Management and refused to permit them to make a photocopy of the note.

Haddad Management asked Stern to provide written documentation, both of his

disability, and of the need for the accommodation that he requested.  Stern never

provided this written documentation.  Further, it is my understanding that Stern displayed

the note to them so quickly that they were unable to obtain any information from it as to

the identity or contact information concerning the doctor who purportedly had authored

the note.  Haddad Management who saw this "work with Scott" note at this meeting did

not know whether Stern had written it himself, or whether it was actually from a doctor.

The factual statements concerning the November 2002 meeting contained in this

paragraph are made on information and belief:  I do not have personal knowledge of

these facts, because I was not present (and knew nothing of either Stern or Haddad

Motors) at the time.

6.      On or about 5/19/04, I represented the Haddad Defendants at an MCAD hearing, adjudicating "probable cause" as to Stern's MCAD charge.  Accompanying me to that hearing, was defendant James Salvie.

7.      I never stated at any MCAD hearing, including the 5/19/04 conference, that no doctor's note from Stern had existed.  I did not say that there was no note.  On the contrary, it was my understanding (as set forth in detail above) that Stern had flashed a crumpled note during the November 2002 meeting to Haddad Management that said, in part, "work with Scott."

8.      At the 5/19/04 MCAD hearing, Stern for the first time produced to the Haddad Defendants and their counsel (me) a note that contained the phrase "work with Scott," from a doctor Michael Pearlman (whose address I later ascertained was 57 Gothic Street, North Hampton, MA 01060).  I had never seen this note before, nor heard of Dr. Pearlman before that hearing.

9.      After the instant federal action was filed by Stern in January 2006 and served on the Haddad Defendants in March 2006, we received notice of a Scheduling Conference from this Court, pursuant to U.S. District Court Local Rule 16.1(A). Pursuant to Local Rule 16.1(B) and 16.3(B), I as defense counsel was obligated to confer with plaintiff Stern, who is acting pro se in this case.  Stern and I and the only other counsel who had, at that time, appeared in the case (Erin Norris for the EEOC Defendants) were obligated to submit a Joint Scheduling Statement, pursuant to Local Rule 16.1(D).  In order to fulfill this obligation, Attorney Norris and I called plaintiff Stern in order to agree over the phone on a joint litigation schedule, on 5/9/06.  On that day (and not on 5/10/06 as stated in Stern's 5/17/06 Affidavit), I, plaintiff, and Attorney

Norris had several phone conferences, discussing different drafts of a Joint Scheduling Statement.

10.    During the first of our phone conferences on 5/9/06, between me and Stern and Attorney Norris, Stern angrily accused me of lying at the MCAD hearing, and demanded that we discuss my "lying" immediately.  I denied having lied at the MCAD hearing, but declined to discuss the topic further during the scheduling conferences, as the purpose of the call was to discuss mutually agreeable schedule as expeditiously as possible.  Even without discussing the alleged "lying," I still spent almost two hours talking back and forth with Stern and Attorney Norris.

11.    During the last telephone conference on 5/9/06 with plaintiff, I tried to alleviate some of the tension by telling plaintiff that I had nothing "personal" against him, that I had a job to do like any truck driver or grocery clerk, that this was one of the cases I had been assigned at my law firm, and that I was just doing my job in defending the Haddad Defendants.  I did not respond to any statement from Stern such as "Did you lie at the MCAD hearing?" with the statement "I was just doing my job."  Stern's accusations of lying and my denial thereof and subsequent insistence on not discussing it during these telephone conferences (see previous paragraph), occurred towards the beginning of the phone conferences.  The statement by me to Stern containing the phrase that I was "just doing my job," occurred more than an hour later, during a different phone conference.  They were not juxtaposed, and I definitely did not respond to an accusation of lying by saying "I was just doing my job."  Juxtaposing these two quotes is false and misleading, and could only have been done deliberately:  There could have been no

misunderstanding during our 5/9/06 telephone conferences concerning the proposed litigation schedule.

12.     At Exhibit C hereto, is a true and accurate copy of Stern's 5/2/03 Charge filed with the MCAD.  This Charge was also included at Exhibit H to Stern's Amended Complaint.  Note that in Stern's MCAD Charge, he misnamed his former employer, Haddad, as Haddad Toyota Pontiac Buick.  The correct name for his former employer is Haddad Motor Group, Inc.

13.     At Exhibit D hereto, is a true and accurate copy of Stern's 5/15/06 Affidavit, which was filed alone in this case, not attached to any motion or other pleading, on 5/17/06, at Docket No. 40.  A true and accurate copy of the 5/15/06 Affidavit of Gail Rubino, a "friend" of plaintiff Stern, is attached hereto at Exhibit E. This Affidavit was filed alone, not attached to any motion or other pleading, in the instant case on 5/17/06, I believe also at Docket No. 40.

14.     At some point in April or May, during this case, plaintiff Stern told me he planned to sue me and my firm.  However, we did not discuss the substance of his intended claims against me and my firm at that time or at any time prior to his filing of his Motion to Amend, to add me and my firm as defendants.  If we had had the (more) substantive discussions that seem to be contemplated by Local Rule 7.1(A)(2), I would have told plaintiff about the absolute litigation privilege, a legal principle of which he is apparently ignorant.

15.     At the time of drafting this Affidavit, I have spent approximately 22 hours researching, drafting, planning, and/or discussing the Haddad Defendants' Opposition papers opposing Stern's Motion to Amend, seeking to add me and my firm as defendants

herein.  I will spend more hours preparing for, and attending oral argument concerning this motion and the Haddad Defendants' opposition thereto.  My hourly billing rate on this case is $160.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 22ND DAY OF JUNE 2006.

_John Barker_
_____
John C. Barker

## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for defendant, hereby certify that I have on this 22nd

day of June 2006, served a copy of the foregoing Affidavit, by mailing a copy of same,

postage prepaid, to the following:

Mr. Scott Stern
400 West Main Street
North Adams, MA 01427

Jerrold Levinsky, Esq.
Massachusetts Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

Erin Norris, Esq.
Equal Employment Opportunity Commission
Office of Legal Counsel
1801 L Street Northwest
Washington, DC 20507

_____
John C. Barker

{00087576.DOC}

8

A

Exhibit A

To whom it may concern.

This letter is in response to allegations of discrimination against a former employee of Haddad Motors Scott Stern. I have been employed at Haddad Motors since October 1, 2002 as a sales manager. During this time I had the opportunity to work directly with Scott. Scott had several issues that brought his employment to an end with Haddad Motors. The number one reason was his inability to be on time. Scott was consoled many times about his tardiness. I have attended many meetings addressing his tardiness. Scott was given time off on several occasions after being counseled and then continued to be late. Jim Salvie the general sales manger gave Scott more than enough chances to address the issue. Only after Scott was about to be terminated did he bring up the fact that he had a disease which he called Bi- Polar. The manner in which he brought it up was taken as a direct threat of a law suit if we didn't back off the issue of his tardiness. We requested Scott have his Doctor write a signed letter so as to communicate to us that his tardiness was associated with his disease. Scott never produced a signed documentation or any real proof of his disease. Scott did take out of his wallet a crumpled piece of note paper that said please work with Scott. Jim Salvie gave Scott a final chance of a 15 minute grace period. The deal was if Scott was late again by more than his 15 minute grace period he would be terminated. Scott was late and he was terminated. No other employee has ever been given a grace period especially after Scott Stern was asked to provide documentation about his Bi-Polar and never did. Scott never advised Haddad of his disease prior to his employment. Scott had other issues concerning comments and inappropriate behavior with staff and customers.

Sincerely

Timothy Cardillo
Sales Manager
Haddad Motors
tcardillo@haddaddealerships.com

Subscribed to and sworn before me
this 13 day of AUG 03

Constance J. Welland, Notary Public
My commission expires July 28, 2007

Exhibit B

To whom it may concern.

This letter is in response to the complaint from Scott Stern. I am a direct supervisor of Mr. Stern. It is a practice at Haddads that if a salesperson is continually late with no good reason and we can't seem to get his attention and want to retain the person because they are an asset, we will send them home for a period of time to see if we can get their attention. Mr. Stern is not the only one this has occurred with.

If a salesperson is not here to take care of their customer at the time of delivery, we do split the deal. It is our opinion that the customer must be treated in a certain way and we do try to be very consistant on the delivery. Mr. Stern is not the only salesperson who has had to split a deal for not being available at the time of delivery.

We had a meeting with Mr. Stern due his frequently arriving late for work. It was at this meeting Mr. Stern informed us that he had a bi-polar disability that was causing him to frequently be late. Not knowing a lot about this disability, we did ask Mr. Stern to bring a doctors note stating that one of the effects of this disability was being late for work on a consistant basis. A note was presented that said "work with Scott". I couldn't get anything that states that due to his disability he would frequently be 15 minutes late. In spite of this and the disruption it would cause with all the other employees that were required to be here on time, we did give Scott a new schedule that allowed him to be 15 minutes late.

Everything did finally come to a head when Mr. Stern could not arrive within the 15 minute window everybody had agreed on. In spite of the frequent disruptions, we liked Mr. Stern but counld not justify his behavior any longer.

Jim Salvie
General Sales Manager
Haddad Motors

RECEIVED

AUG        

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

Subscribed to and sworn before me
this ___ day of Aug 03
Constance J. Welland, Notary Public
My commission expires July 26, 2007

DISCRIMINATION COMPLAINT
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEO C

FEPA:  03-23-01468
EEOC NO.:  16CA301828

FILING DATE: 5/2/03
VIOLATION DATE: February 3, 2003

RECEIVED

MAY 02 2003

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

NAME OF AGGRIEVED PERSON OR ORGANIZATION:
Scott Stern
400 West Main Street
North Adams, MA 01247

TELEPHONE NUMBERS:
HOME: (413) 664-7805
BUSINESS:

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY OR
STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:
Haddad Toyota Pontiac Buick.
130 Pittsfield-Lenox Road
Pittsfield, MA 01202

TELEPHONE NUMBER:
(413) 445-4535
NO. OF EMPLOYEES: 25+

CAUSE OF DISCRIMINATION BASED ON: Handicap
Shortly after being hired in April 2002, continuing on a ongoing basis until February 3, 2003,
Haddad Dealership discriminated against me by subjecting me to unequal terms and conditions,
denying me of a reasonable accommodation and wrongfully terminating me on the basis of my
handicap (Bi-Polar Disorder) in violation of M.G.L. c.151B §4, ¶(16), and Americans with
Disabilities Act (ADA).

THE PARTICULARS ARE:
1. Haddad Dealership hired me on or about the last week of April 2002 as a sales/ leasing
   representative. I have received high scores in customer service and my work
   performance has always been satisfactory.
2. During the time I worked at Haddad I was also subjected to very unfair and unequal
   treatment. When I would call and let them know I was running late or showed up late,
   David Michael Coggins and /or James Salvie would tell me to return home or not show
   up at all and I would be suspended for the weekend. Other co-workers would show up
   late or forget to clock in at all and not be penalized or reprimanded for it. There were
   also several occasions were my commission on the sell of a vehicle or even my customers
   were given to other salesmen by James Salvie. I believe he purposely did this to effect
   my sales and work flow production and create another possible excuse to terminate me.
   This also affected me financially as it detrimentally affected my wages.
3. David Micheal Coggins would also refer to me as "crazy" in Saturday sale meetings and
   occasionally around other employees.
4. Because of my disability (Bi-Polar Disorder) I frequently had difficulties arriving to work
   on time. On or about November 26, 2002 a meeting was held to discuss my tardiness.
   Present at the meeting were David Michael Coggins (General Manager), James Salvie
   (General Sales Manager), Tim Cardillo (Sales Manager), Joseph Scibelli (Used Car
   Manager), and myself. I notified them of my condition, and it was at this time I was
   asked to disclose exactly what my condition was to all the managers present. Although I
   felt pressured, and was hesitant to tell them, I did so. At this time I presented my
   managers with a note from my doctor that stated that 'my employer should work with me
   being the fact that I was showing signs of improvement.'
5. I informed David Michael Coggins that under the American with Disabilities Act I was
   entitled to receive reasonable accommodations from my employer. All I requested was a

few minutes of flextime incase I ran late at the start of my shift. David Michael Coggins refused to make any accommodations what so ever.

6. On or about the last week of February 2003, James Salvie and Tim Cardillo had a meeting with me in which James Salvie acknowledged and stated that although it was against his better judgment, he would allow me to up to fifteen minutes to be late to work.

7. A week later, on February 3, 2003, I arrived at work 6 minutes late. I was getting a car ready to deliver to a customer. This particular customer was unwilling to pay the $160 fee Haddad charges as a documentation fee. James Salvie is always upset when a customer refuses to pay this fee, and I believe he became infuriated with this, and after learning I was 6 minutes late, he used that excuse to terminate me.

8. I believe Haddad dealership subject me to unequal terms and conditions, denied me reasonable accommodation and wrongfully terminated my employment based on my disability (Bi-Polar Disorder).

I ALSO WANT THIS CHARGE FILED WITH EEOC:  XX
I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.

I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Scott Stern

SWORN TO AND SUBSCRIBED BEFORE ME THIS DAY OF May 1, 2003.

NOTARY PUBLIC:

My Commission Expires: 10/2/09

RECEIVED

MAY 02 2003

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

Case 3:05-cv-30160-KPN    Document 40    Filed 05/17/2006    Page 1 of 5

D

## AFFIDAVIT OF SCOTT STERN

1. I am Scott Stern of 400 West Main Street in North Adams, Massachusetts.
2. I am the plaintiff in the action of Stern v. Haddad Motor Group, Inc. et al Case Number 05-30160-KPN.
3. The questions and statements referenced in paragraph "4" through "6" were spoken before my person, personally and directly before me, and was averred as evidence before the tribunal known as the Massachusetts Commission Against Discrimination, upon a question presented to the defendants by James Levinsky, Chief Deputy Counsel of the Massachusetts Commission Against Discrimination regarding a certain and specific doctor's note.
4. The question asked, by James Levinsky, that received the response in paragraph "5" and paragraph "6" was the question by James Levinsky:
   "Is this the note?"
5. At the Massachusetts Commission Against Discrimination hearing the defendant James Salvie stated, regarding the question aforementioned in paragraph "4" the following statement:
   "I am not sure."
6. At the initial Massachusetts Commission Against Discrimination, hearing between the plaintiff and the defendants Haddad Motor Group, Inc., I personally heard spoken before me the words from John C. Barker, the statement:
   "There was no note"
   to the question asked by James Levinsky in paragraph "4."
7. The note referred to in paragraphs "3" through "6" is a note, written by Dr. Michael Perlman, and was presented to the defendants at a meeting on or around November 27, 2002.
8. The note referred to aforementioned in paragraphs "3" through "6" is the same note that the defendants paraphrase the term "work with Scott" in their affidavits submitted to the Massachusetts Commission Against Discrimination.
9. On or about November 27, 2002, at the meeting between the plaintiff and the defendants, defendant James Salvie received this same note to his person and personally asked plaintiff, if:
   "I can make a copy of it."
10. On or about November 27, 2002, plaintiff responded to the question by the defendant James Salvie in paragraph "9" the answer:
    "Yes."
11. I, Scott Stern, directly handed this note to the defendant James Salvie, upon which defendant James Salvie proceeded to leave my presence with said note as referenced in paragraphs "8" through "10"
12. I, Scott Stern, personally handed this note to defendant James Salvie.
13. I, Scott Stern, previously have personally read the defendants formal affidavit, submitted by Counsel John Barker, and sworn to by defendant David Michael Coggins, at it states, clearly and unequivocally that plaintiff removed from his person a "note" from an "alleged doctor."

Affidavit of Scott Stern Re "Note"                                           1

Case 3:05-cv-30160-PPI    Document 40    Filed 05/17/2006    Page 2 of 5

14. I, Scott Stern, personally read the defendants Timothy Cardillo's affidavits which state that a "doctor's note" was removed from plaintiff's (Scott Stern's) pocket and presented to the defendants.

15. I, Scott Stern, personally asked this question to the proposed defendant John C. Barker during the conversation between the parties on May 10, 2006:
"Did you lie at the MCAD hearing?"
during the conversation on or about May 10, 2006 between the parties, defendant Haddad Motor Group, Inc., and United States Equal Employment Opportunity Commission, before the Massachusetts Commission Against Discrimination.

16. I, Scott Stern, personally heard spoken before me, by the proposed defendant John C. Barker, on May 10, 2006 state:
"I was just doing my job."
to the question plaintiff asked him in paragraph "15."

17. I, Scott Stern, personally asked the question again aforementioned in paragraph "15" to the proposed defendant John C. Barker, again during this conversation aforementioned in paragraph "15."

18. I, Scott Stern, personally heard before me, by the proposed defendant John C. Barker, the statement:
"You can ask me about lying on May 17, 2006."

19. I, Scott Stern, believe that Counsel, proposed defendant, John C. Barker, upon being presented a question of material fact aforementioned in paragraph "4", by the tribunal, as corroborated by Mr. Barker's statement in paragraph "16" was hired to provide materially false affidavits and documentation to the tribunal known as the Massachusetts Commission Against Discrimination for the defendants Haddad Motor Group, Inc.

20. I, Scott Stern, believe that the Counsel, proposed defendant, John C. Barker, has filed materially false affidavits and statements to the tribunal known as the MCAD in order to achieve a litigious advantage over this plaintiff in the Massachusetts Commission Against Discrimination hearings.


I have stated all the above based upon my own knowledge, information and belief; and so far as my information and belief, I believe this information to be true.

Sworn to this 15 day of May, 2006  under the pains and penalties of perjury.

Scott Stern
400 West Main Street
North Adams, Massachusetts 01247

ACKKNOWLEDGEMENT CERTIFICATE

On this _15_ day of _May_____, 2006, before me, the undersigned

Notary Public, personally appeared _Scott Stern_ proved to me through

satisfactory evidence of identification, which were Massachusetts Operators License,

to be the person whose name is signed on the preceding or attached document and

acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Signature of Notary Public

My Commission Expires _Sept 17 2010_____

Beth Ellen Dolle
Notary Public
My Commission Expires September 17, 2010
Commonwealth of Massachusetts

Affidavit of Scott Stern Re "Note"

3

## CERTIFICATE OF SERVICE

I, Scott Stern, Pro-Se Plaintiff, in this action of Scott Stern v. Haddad Motor Group, Inc., et. al., in the United States District Court, Case Number 05-30160-KPN, certify that I have caused a copy of the foregoing document,

COPY OF "AFFIDAVIT OF SCOTT STERN"

COPY OF "AFFIDAVIT OF GAIL RUBINO"

COPY OF THIS CERTIFICATE OF SERVICE

to be delivered, postage prepaid, United States Postal Service, to the defendants, at their respective addresses this 15 day of May, 2006.

Michenzie & Sewin, LLC
Richard Sawin, Resident Agent and Manager
745 Boylston Street
Boston, Massachusetts 02116-2636

Michenzie & Sewin, LLC
John C. Barker
745 Boylston Street
Boston, Massachusetts 02116-2636

Massachusetts Commission Against Discrimination
Cynthia Tucker
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Massachusetts Commission Against Discrimination
James Levinsky,
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Massachusetts Commission Against Discrimination
Migdalia Rivera
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Massachusetts Commission Against Discrimination
Crystal Borges
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Case 3:05-cv-30160-KPI     Document 40     Filed 05/17/2006     Page 8 of 10

## CERTIFICATE OF SERVICE page 2

(By leave of Erin Norris to serve one copy for both defendants)
U.S. Equal Employment Opportunity Commission
Erin Norris
Robert Sanders and Joseph Alvarado
1801 L. St. N.W.
Washington, D.C. 20507


Equal Employment Opportunity Commission
Robert Sanders
John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, Massachusetts 02203

Equal Employment Opportunity Commission
Joseph Alvarado,
State and Local Manager
33 Whitehall Street, 5th floor
New York, New York 10004-2167

to be delivered, postage prepaid, by United States Postal Service, this 15 day of May,
2006 to:

United States District Court
1550 Main Street
Springfield, Massachusetts 01103
Attn: Clerk of Courts

_____
Scott Stern
All Rights Reserved without Prejudice
Sui Juris
400 West Main Street
North Adams, Massachusetts 01247

May 15, 2006
_____
Date of Mailing/Delivery

## AFFIDAVIT OF GAIL RUBINO

1. I, Gail Rubino, am a resident of Williamstown, Massachusetts.
2. I, Gail Rubino, am a friend of the plaintiff, Scott Stern.
3. I, Gail Rubino, was present on May 10, 2006, at the residence of Scott Stern, between the hours of 10:30 a.m. and 1:30 a.m.
4. I, Gail Rubino, answered the telephone for Mr. Scott Stern, on or around 11:00 a.m. and there was an individual named John C. Barker on the telephone.
5. I, Gail Rubino, had been invited, by Mr. Scott Stern, to listen to the conversation between himself, and John C. Barker
6. I, Gail Rubino, heard spoken before me, that Mr. Barker had Erin Norris of the United States Equal Employment Opportunity Commission in conference, in this telephone call.
7. I, Gail Rubino, heard spoken before me, that Mr. Barker represented the defendants Haddad Motor Group, Inc.
8. I, Gail Rubino, heard spoken personally before me, a question, referenced in paragraphs "5" through "7", by Mr. Scott Stern, during this conversation these individuals aforementioned in paragraph "6" and "7."
9. I Gail Rubino, personally heard the question, asked by Mr. Scott Stern to John C. Barker:
   "Did you lie at the MCAD hearing?"
   during the conversation aforementioned in paragraphs "4" through "7."
10. I, Gail Rubino, personally heard spoken before me, by John C. Barker, the statement:
    "I was just doing my job."
    to the question plaintiff asked in paragraph "9."
11. I, Gail Rubino, personally heard Scott Stern, ask the question aforementioned in paragraph "9" to John C. Barker, again, during this conversation aforementioned in paragraph "4."
12. I, Gail Rubino, personally heard before me, spoken by John C. Barker, the statement:
    "You can ask me about lying on May 17, 2006."

       I have stated all of the above based upon my own knowledge, information, and belief, as so far as upon my information and belief, I believe this information to be true.

Sworn to under the pains and penalties of perjury this _____15th_____ day of

_____May_____, 2006.


_____
Signature

ACKNOWLEDGEMENT CERTIFICATE

On this _15_ day of _May_, 2006, before me, the undersigned

Notary Public, personally appeared _Gail Rubino_ proved to me through

satisfactory evidence of identification, which were Massachusetts Operators License,

to be the person whose name is signed on the preceding or attached document and

acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Signature of Notary Public

My Commission Expires _Sept 17 2010_

Beth Ellen Dolle
Notary Public
My Commission Expires September 17, 2010
Commonwealth of Massachusetts