United States District Court
District of Massachusetts
Western Division

Springfield, Massachusetts                    Civil Action No.05-30160-MAP

)     MOTION FOR LEAVE TO FILE
Scott Stern,                                   )     MEMORANDUM IN EXCESS OF 20 PAGES
                                               )
        Plaintiff,                             )
                                               )
        vs.                                    )
                                               )
Haddad Motor Group, Inc., et al.               )
                                               )
        Defendants                             )

Now comes plaintiff and moves this court for an order for a MOTION FOR

LEAVE TO FILE MEMORANDUM IN EXCESS OF 20 PAGES to allow the plaintiff,

Sui Juris, to submit PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO

DEFENDANT MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

MOTION TO DISMISS.

        Plaintiff, an individual with a documented disability, is praying to overcome the

possibility of dismissal of this action against the defendants Massachusetts Commission

Against Discrimination.

        Wherein, your moving party, having submitted legal case citations, analysis and

arguments to overcome the defendants motions to dismiss and proceeded to expand on

the merits of plaintiff's case in the instant matter, plaintiff wrote the memorandum in

excess of the proscribed limits.

Wherefore, your moving party, sui juris, prays, humbly, that this Honorable Court will grant the MOTION FOR LEAVE TO FILE MEMORANDUM IN EXCESS OF TWENTY PAGES.

Most respectfully submitted this 7 day of August, 2006.

Scott Stern
Sui Juris
All Rights Reserved without Prejudice
400 West Main Street
North Adams, Massachusetts 01247

## CERTIFICATE OF SERVICE

I, Scott Stern, Pro-Se Plaintiff, in this action of Scott Stern v. Haddad Motor Group, Inc., et. al., in the United States District Court, Case Number 05-30160-MAP, certify that I have caused a copy of the foregoing documents,

Copy of "PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS"
Copy of " Motion for leave to file Memorandum of Law in excess of
Copy of "CERTIFICATE OF SERVICE"            20 pages"

to be delivered, postage prepaid, United States Postal Service, to the defendants, at their respective addresses this 7 day of August, 2006.

Michenzie & Sawin, LLC
Richard Sawin, Resident Agent and Manager
745 Boylston Street
Boston, Massachusetts 02116-2636

Michenzie & Sewin, LLC
John C. Barker
745 Boylston Street
Boston, Massachusetts 02116-2636

Massachusetts Commission Against Discrimination
Cynthia Tucker
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

Massachusetts Commission Against Discrimination
Jerrold "James" Levinsky,
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

Massachusetts Commission Against Discrimination
Migdalia Rivera
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

## CERTIFICATE OF SERVICE page 2

Massachusetts Commission Against Discrimination
Crystal Borges
436 Dwight Street, Suite 220
Springfield, Massachusetts 01220

(By leave of Erin Norris to serve one copy for both defendants)
U.S. Equal Employment Opportunity Commission
Erin Norris
Robert Sanders and Joseph Alvarado, Official Capacities
1801 L. St. N.W.
Washington, D.C. 20507

Equal Employment Opportunity Commission
Robert Sanders,
John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, Massachusetts   02203

Equal Employment Opportunity Commission
Joseph Alvarado,
33 Whitehall Street, 5th floor
New York, New York  10004-2167

to be delivered, postage prepaid, by United States Postal Service, this 7 day of August,
2006 to:

United States District Court
1550 Main Street
Springfield, Massachusetts 01103
Attn: Clerk of Courts

Scott Stern
All Rights Reserved without Prejudice
Sui Juris
400 West Main Street
North Adams, Massachusetts 01247

August 7, 2006
Date of Mailing/Delivery

United States District Court
District of Massachusetts
Western Division

Springfield, Massachusetts                    Civil Action No.05-30160-MAP


Scott Stern,                          )
           Plaintiff,            )
     vs.                          )
                    )
Haddad Motor Group, Inc., et. al.     )
     Defendants                    )
                    )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S NOTICE OF OBJECTION TO MCAD'S MOTION TO DISMISS

Now comes plaintiff and submits to the Honorable Michael A. Ponsor, of the

United States District Court, a brief Memorandum of Law in Support of Plaintiff's Notice

of Objection to MCAD'S MOTION TO DISMISS. Plaintiff, Sui Juris, hereby

incorporates by reference any and all documents submitted to the United States District

Court and references said documents, including, but not limited to, briefs, Memorandums

of Law, Appendices, Appendixes, and any other document submitted to the United States

District Court, in this instant proceeding.

### PLAINTIFF HAS STANDING TO SUE MCAD

Standing is derived from Article III of the Constitution, which limits the

jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2,

cl. 1; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119

L.Ed.2d 351 (1992) (stating that "the core component of standing is an essential and

unchanging part of the case-or-controversy requirement of Article III"). The Supreme

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

Court has held that the "irreducible constitutional minimum of standing contains three elements." *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130. In *Steel Co.,* these elements were carefully illuminated:

First and foremost, there must be alleged (and ultimately proven) an "injury in fact"-a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.' " *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101-102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

Second, there must be causation-a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). And third, there must be redressability-a likelihood that the requested relief will redress the alleged injury. *Id.,* at 45-46, 96 S.Ct. 1917; *see also Warth v. Seldin,* 422 U.S. 490, 505, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *Steel Co.,* 523 U.S. at 103, 118 S.Ct. 1003.

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* Judicial Watch, Inc. v. U.S. Senate  340 F.Supp.2d 26, *31 (D.D.C.,2004).

"It has been held that "in the absence of an express legislative directive, the general rule applied by the court is that "all statutes are prospective in their operation," unless an intention otherwise is expressed or can be inferred by necessary implication. Fontaine v. Ebtec, 415 Mass. 309, 318 (1993). Those statutes "relating to remedies and not affecting substantive rights are commonly treated as operating retroactively..." Id. at 318 (citing City Council of Waltham v. Vinciullo, 364 Mass. 624, 626 (1974)

(MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND CHERYL

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

2

POORE, COMPLAINANTS v. TOWN OF HARWICH HIGH SCHOOL, VINCENT P. BRESNAHAN AND GLENN A. ROSE, RESPONDENTS. 2006 WL 1388759, *2)(Emphasis Added)

"Complainant has also alleged that Respondent engaged in unlawful disability discrimination when it wrongfully failed to provide [her] with reasonable accommodations. In order to establish a prima facie case of disability discrimination for failure to provide a reasonable accommodation, Complainant must show: (1) she is a "handicapped person;" (2) she is a "qualified handicapped person" capable of performing the essential functions of a particular job; (3) who needed a reasonable accommodation to perform her job; (4) Respondent was aware of the handicap and the need for a reasonable accommodation; (5) Respondent was also aware, or through a reasonable investigation could have become aware, of a means to reasonably accommodate the handicap; and, (6) Respondent failed to provide Complainant the reasonable accommodation. Hall v. Laidlaw Transit, Inc., 25 MDLR 207, 213-214, aff'd, 26 MDLR 216 (2004); Disability Discrimination Guidelines, at § IX(A)(3), citing, Wayne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 25 (1st Cir. 1992). If the Complainant meets [her] burden, then the burden shifts to Respondent to prove that the reasonable accommodation would pose an undue hardship on the employer's business or that Complainant's disability would pose a "reasonable probability of substantial harm" to [herself] or others. Yates v. Mass-C.E.O.P.S, 17 MDLR 1503, 1514 (1995); Ryan v. Town of Lunenberg, 11 MDLR 1215, 1242 (1989), citing, Mantolete v. Bolger, 767 F.2d 1416, 1422 (9th Cir. 1985); Disability Discrimination Guidelines, § IX(A)(3). Complainant may then rebut Respondent's evidence by showing that either the reasonable accommodation would not impose an

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

undue hardship or her disability would not impose a reasonable probability of substantial harm to herself or others. <u>Disability Discrimination Guidelines,</u> § IX(A)(3). (PRISCILLA HALL AND THE MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, COMPLAINANTS V. COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF MENTAL RETARDATION, RESPONDENT 2005 WL 2994158, *15)

## <u>MASSACHUSETTS DISCRIMINATION LAW</u>

"M.G.L. c. 151B, § 4(4) makes it unlawful "for any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [c. 151B] or because he has filed a complaint, testified, or assisted in any proceeding under [c. 151B, § 5]." Retaliation is a separate claim from discrimination, "motivated, at least in part, by a distinct intent to punish or to rid a workplace of someone who complains of unlawful practices." <u>Kelley v. Plymouth County Sheriff's Department,</u> 22 MDLR 208, 215 (2000), *quoting,* <u>Ruffino v. State Street Bank and Trust Co,</u> 908 F. Supp. 1019, 1040 (D. Mass. 1995). (HELENE COHEN AND THE MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, COMPLAINANTS v. NATIONAL RAILROAD PASSENGER CORPORATION, D/B/A AMTRAK, RESPONDENT 2006 WL 1586392, *14) (Emphasis Added)

"It is rare that Complainants come before this Commission with an absence of other issues in their lives that may cause or exacerbate distress. <u>Norman v. Andover Country Club,</u> 15 MDLR 1394 (1993). Often victims of sexual discrimination/harassment are particularly vulnerable because of the very fact that they are suffering from other

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

emotional problems or stressors in their lives. The fact that they are rendered more

sensitive as a result, and thus incur great emotional harm from discriminatory conduct

does not absolve the Respondent from responsibility for its actions in creating such harm.

Williamson v. Handy Button Machine Company, 817 F. 2d 1290, 1294, 43 EPD §s 37,

178 (7th Cir. 1987). Hanscom v. Boston Housing Authority 2001 WL 1602789, *11

In order to state an injury in fact, as required to establish standing, a complaint

must assert the invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical. U.S.C.A.

Const. Art. 3, § 2, cl. 1. Judicial Watch, Inc. v. U.S. Senate  340 F.Supp.2d

26 (D.D.C.,2004).

"Complainant must show, absent other evidence establishing retaliatory intent,

that the adverse action followed the protected activity within such time as retaliatory

intent can be inferred." Cimino v. BUT Electronics, 18 MDLR 197 (1996). PAULA

MINDEL, COMPLAINANT v. CHELSEA CLOCK COMPANY, RESPONDENT  2006

WL 1319390, *3

However, as we said in *George v. Jordan Marsh Co.*, 359 Mass. 244, 249, 268

N.E.2d 915 (1971), a case in which we recognized for the first time the tort of infliction

of emotional distress, "[t]hat is true only because the precise question has never been

presented to this court for decision. That argument is therefore no more valid than would

be an argument by the plaintiff that there is no record of any Massachusetts law denying

recovery on such facts. No litigant is automatically denied relief solely because he

presents a question on which there is no Massachusetts judicial precedent. It would

indeed be unfortunate, and perhaps disastrous, if we were required to conclude that at

some unknown point in the dim and distant past the law solidified in a manner and to an extent which makes it impossible now to answer a question which had not arisen and been answered *69 prior to that point. The courts must, and do, have the continuing power and competence to answer novel questions of law arising under ever changing conditions of the society which the law is intended to serve."

Mandatory provision for trial of unrestricted class of civil cases by magistrate and not by Article III judges would violate constitutional right of parties in federal forum to have cause determined by Article III judge. 28 U.S.C.A. §§ 631 et seq., 636(c); U.S.C.A. Const. Art. 3, § 1. Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc. 725 F.2d 537 (C.A.Or.,1984)

Damage awards for emotional harm vary significantly depending on the facts and circumstances of each case. An award for emotional harm is warranted only if there is sufficient causal connection between the respondent's illegal actions and the complaining party's injury. See Gore v. Turner. 563 F.2d 159, 164 (5th Cir. 1977). The discriminatory act or conduct must be the cause of the emotional harm. However, if a complaining party had pre-existing emotional difficulties and [his] mental health deteriorates as a result of the discriminatory conduct, the additional harm may be attributed to the respondent. (Gore at 164). A tortfeasor takes its victims as it finds them.

"I conclude that Complainant's claims of distress, regarding the assault and the gender-biased comments, must be compensated. I find that the complaining party in this matter had preexisting emotional difficulties and that her mental health did deteriorate as a result of the discrimination she suffered at the workplace." Hanscom v. Boston Housing Authority 2001 WL 1602789, *12

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

6

"In addition, Chapter 151B, §4, paragraph 4(A) makes it unlawful "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter." Retaliation is a separate and independent claim of discrimination, "motivated, at least in part, by a distinct intent to punish or rid the workplace of someone who complains about an unlawful [employment] practice." See Pontremoli v. Spaulding Rehabilitation Hospital, 51 Mass. App. Ct. 622, 625 (2001); Abramian v. President & Fellows of Harvard, supra.; Fountas v. Medford Public Schools, 22 MDLR 264 (2000), citing Ruffino v. State Street Bank and Trust Company, 908 F. Supp. 1019, 1040 (D. Mass. 1995). (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AGAINST DISCRIMINATION AND CLAUDE SYLVESTRE, COMPLAINANT THE FLATLEY COMPANY & INTERNATIONAL INN, INC., RESPONDENTS 2005 WL 2993474, *10)(Emphasis Added)

"The Commission is authorized to award damages f or emotional distress resulting from Respondent's unlawful discrimination. Bournewood Hospital v. MCAD, 371 Mass. 303, 315-6 (1976). The finding of discrimination alone permits the inference of emotional distress as a normal adjunct of the [employer's] actions. It necessarily follows that in c. 151B cases, an award of emotional distress damages can be sustained even in the absence of physical injury or psychiatric consultation. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 824 (1997) (quoting Buckley Nursing Home, Inc., v. MCAD,

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

20 Mass App Ct., 172, 182 (1985). In the instant case, there is significant physical injury,

medical treatment, and psychological treatment to support an award for emotional

distress. I conclude that an award of THIRTY FIVE THOUSAND DOLLARS

($35,000.00) is appropriate to compensate Complainant for the emotional distress [she]

suffered as a direct result of [Cunningham's] discriminatory conduct." Hanscom v.

Boston Housing Authority 2001 WL 1602789, *13.

     In order to establish constructive discharge, Complainant must prove that [her]

working conditions were so intolerable that a reasonable person would have felt

compelled to resign. See GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995)

(constructive discharge in sexual harassment context); Choukas v. Ocean Kai Restaurant,

19 MDLR 169, 171 (1997) (same); Said v. Northeast Security, 18 MDLR 255, 259

(1996) (constructive discharge in racial discrimination context). See generally MCAD

Sexual Harassment in the Workplace Guidelines, VIII - Constructive Discharge.

Constructive discharge can occur even if the employer does not act with the specific

intent of forcing an individual to resign. See Langford v. Department of Employment and

Training, 17 MDLR 1043, 1063 (1995), aff'd, 18 MDLR 36 (1996) (Full Comm'n). A

claim of constructive discharge under chapter 151B does not arise, however, when

Complainant resigns due to general dissatisfaction with the workplace or as a result of

other conduct that does not violate chapter 151B. See GTE Products, 421 Mass. at 35

(citations omitted). Adverse working conditions must be unusually "aggravated" or

amount to a "continuous pattern" in order to be deemed "intolerable." Id . (PATRICIA A.

COPPENRATH AND MASSACHUSETTS COMMISSION AGAINST

DISCRIMINATION, COMPLAINANTS v. MICHAEL S. CASEY,

RESPONDENT)(Emphasis Added).

### **PLAINTIFF'S COMPLAINT AND DOCUMENTS SUBSTANTIATED DEFENDANT'S DISCRIMINATION DIRECTLY AND INDIRECTLY; MCAD FAILED TO UPHOLD M.G.L. Ch. 151**

"Apart from direct evidence of discrimination, Complainant may establish a

prima facie case through the inferential method adopted by the Commission in Wheelock

College v. MCAD, 371 Mass. 130 (1976). See Wynn & Wynn, P.C. v. MCAD, 431

Mass. 655, 655-666 (2000); Blare v. Husky Injection Molding Sys. Boston, Inc., 419

Mass. 437, 444-445 (1995). The elements of a prima facie case of discrimination vary

depending on the type of discrimination alleged. See Knight v. Avon Products, 438 Mass.

413, 420, n. 4 (2003). In order to establish a prima facie case of age discrimination in this

case, Complainant must demonstrate that he is a member of a protected class, was

adequately performing the responsibilities of his position, and was treated differently

from janitors who were substantially younger. See id. (Complainant must show he was

denied a condition or privilege of employment granted to someone at least five years

younger or present other evidence that the disparate treatment occurred under

circumstances that would raise a reasonable inference of unlawful age discrimination);

Abramian v. President and Fellows of Harvard College, 432 Mass. 107 (2000); Murphy

v. Pub Ventures, 15 MDLR 1098, 110-11 (1993). (JOSEPH MORSE AND

MASSACHUSETTS COMMISSSION AGAINST DISCRIMINATION,

COMPLAINANTS v. MASSASOIT COMMUNITY COLLEGE, RESPONDENT  2006

WL 372576, *8)(Emphasis Added)

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

"Complainant may meet his burden of proving a prima facie case of unlawful discrimination by direct evidence or by circumstantial evidence. See Wynn & Wynn P.C. v. Massachusetts Commission Against Discrimination , 431 Mass. 655 (2000). Direct evidence is evidence that, "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace." Wynn & Wynn, 431 Mass. at 667 *citing* Johansen v. NCR Comten, Inc., 30 Mass. App. Ct. 294, 300 (1991). In a direct evidence case, the Complainant does not have to adhere to the three-stage burden shifting paradigm because Complainant does not need the benefit of an inference. In such instances, a mixed-motive analysis is employed. See Wynn& Wynn, 431 Mass. at 666. Under a mixed-motive analysis, Complainant must first offer direct evidence that an impermissible reason played a motivating part in the employment decision. Id. at 670. (JOSEPH MORSE AND MASSACHUSETTS COMMISSSION AGAINST DISCRIMINATION, COMPLAINANTS v. MASSASOIT COMMUNITY COLLEGE, RESPONDENT 2006 WL 372576, *7)(Emphasis Added)

"Direct evidence" is evidence, "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace." Wynn & Wynn, P.C. v. MCAD, 431 Mass. 655, 665 (2000), *quoting*, Johansen v. NCR Comten, Inc., 30 Mass. App. Ct. 294, 300 (1991); *see also*, Chief Justice for Administration and Management of the Trial Court (CJAM) v. MCAD, 439 Mass. 729, 732, n. 11 (2003) (typically, direct evidence consists of statements of discriminatory intent attributable to an employer). In a direct evidence case, Complainant does not have to adhere to the three-stage burden shifting paradigm because she does not need the benefit of an inference. Rather, a mixed motive analysis is applied to her allegation of discrimination.

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

10

Pursuant to this analysis, Complainant must first prove by a preponderance of the

evidence that a proscribed factor played a motivating part in the employment decision.

Wynn & Wynn, 431 Mass. at 665-667, Fountas v. Medford Public Schools, 22 MDLR

264, 269 (2000); see, CJAM, 439 Mass. at 735; *citing*, Lipchitz v. Raytheon Co., 434

Mass. 493, 506, n.19 (2001) (where discriminatory and nondiscriminatory hiring motives

are both present, decision is unlawful if discriminatory animus is a "material and

important ingredient"). (HELENE COHEN AND THE MASSACHUSETTS

COMMISSION AGAINST DISCRIMINATION, COMPLAINANTS v. NATIONAL

RAILROAD PASSENGER CORPORATION, D/B/A AMTRAK, RESPONDENT  2006

WL 1586392, *14)(Emphasis Added).

　　　"Further, we note that in his Decision on Remand the Hearing Officer

appropriately referred to Blue v. Aramark Corporation, 2004 WL 1920884, MCAD, Aug.

20, 2004 (NO. 98-BEM-1796) in support of his revised award. Although we allowed the

award for $35,000 emotional distress damages to stand in Blue, we commented that we

were "disturbed" by it, as the award was "at the low end of the spectrum of

appropriateness" in light of the facts, which included a complainant being publicly

humiliated and demeaned as the subject of racial epithets. Given the Hearing Officer's

opinion in his decision that not only was Blue "a remarkably similar race discrimination

case" to the instant one, but also that "the evidence of emotional distress in the case at bar

is at least equal to, and probably more substantial, than that presented in Blue," the

Hearing Officer's revised award is reasonable and warranted under the circumstances."

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND JARVIS

ALDRIDGE, COMPLAINANTS v. THOMAS OCONNOR CONSTRUCTORS, INC.,

RESPONDENT.  2006 WL 468309, *2

## MCAD FAILED TO ENFORCE STANDARD OF INDIRECT EVIDENCE

In the absence of any direct evidence of retaliatory motive, the Commission

follows the three-part burden-shifting framework set forth in McDonnell Douglas Corp.

v. Green, 411 U.S. 972 (1973). Abramian v. President & Fellows of Harvard College,

432 Mass 107, 116 (2000); Wynn & Wynn v. MCAD, 431 Mass 665, 665-666 (2000);

Wheelock College v. MCAD, 371 Mass 130, 136 (1976). Consequently, in order to

establish a prima facie case of unlawful retaliation, Complainant must prove that: (1)

[she] engaged in protected activity; (2) Respondent knew [she] had engaged in protected

activity; (3) Respondent subjected [her] to adverse treatment; and, (4) a causal connection

existed between the protected activity, known by the retaliators, and the adverse action.

Morris v. Boston Edison Co., 942 F. Supp. 65, 68-69 (D. Mass. 1996); Ruffino, 908 F.

Supp. at 1044; Kelley, 22 MDLR at 215; Langford v. Massachusetts Department of

Employment and Training, 17 MDLR 1043, 1059 (1995). (HELENE COHEN AND THE

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION,

COMPLAINANTS v. NATIONAL RAILROAD PASSENGER CORPORATION,

D/B/A AMTRAK, RESPONDENT  2006 WL 1586392, *16)(Emphasis Added).

## HADDAD DEFENDANT UNLAWFULLY DISCHARGED PLAINTIFF AND MCAD FAILED TO PROPERLY WEIGH ALL EVIDENCE BY AND BECAUSE OF DEFENDANT MCAD'S "WORKSHARE AGREEMENT" with DEFENDANT EEOC

"[Desi Trainor's] awareness that Complainant was being subjected to retaliation

and his failure to prevent it are sufficient grounds for imputing liability to Respondent.

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

An employee such as Trainor may be classified as a supervisor if that individual "is

authorized to direct another employee's day-to-day activities." Williams v. Karl Storz

Endovision, Inc., 24 MDLR 91 (2002), *citing* Fluet v. Harvard University, 23 MDLR

145, 163 (2001). (JULIANNA MCCORMICK AND MASSACHUSETTS

COMMISSSION AGAINST DISCRIMINATION, COMPLAINANTS v. MODERN

CONTINENTAL CONSTRUCTION CO., RESPONDENT  2005 WL 3478728, *15)

(Emphasis Added)

An "adverse employment action" includes changes in objective terms and

conditions of employment which materially disadvantage or threaten to disadvantage the

complaining individual. Nassab v. Massachusetts General Hospital, 25 MDLR 429, 445

(2003), *citing*, Bain v. City of Springfield, 424 Mass. 758, 765-766 (1997); MacCormack

v. Boston Edison, 423 Mass. 652, 663 (1996). Stated somewhat differently, Complainant

must establish that Amtrak took "something of consequence" from her such as subjecting

her to discharge or demotion, reducing her salary, divesting her of significant

responsibilities, or withholding from the employee an accoutrement of the employment

relationship. Apsey v. GKA, Inc. 26 MLR 56, 60-61 (2004), *citing*, Blackie v. Maine, 75

F.3d 716, 725 (1st Cir. 1996).

"The action taken against Complainant must go beyond "subjective feelings of

disappointment and disillusionment" based on "vague and impressionistic elements."

Bain, 424 Mass. at 766. Rather, Complainant must establish that [she] "suffered a change

in working conditions that materially disadvantaged [her]." MacCormack, 423 Mass. at

662. (HELENE COHEN AND THE MASSACHUSETTS COMMISSION AGAINST

DISCRIMINATION, COMPLAINANTS v. NATIONAL RAILROAD PASSENGER

CORPORATION, D/B/A AMTRAK, RESPONDENT 2006 WL 1586392,

*17)(Emphasis Added).

"Although "monetary impact" is not necessary for an action to be materially

adverse, the material action must at least be "equally adverse." MacCormick, 423 Mass.

at 672. (HELENE COHEN AND THE MASSACHUSETTS COMMISSION AGAINST

DISCRIMINATION, COMPLAINANTS v. NATIONAL RAILROAD PASSENGER

CORPORATION, D/B/A AMTRAK, RESPONDENT 2006 WL 1586392,

*18)(Emphasis Added)

### **MCAD FAILED TO PROPERLY REVIEW PLAINTIFF'S COMPLAINT**

"The responsibilities of the Full Commission are outlined by statute, the

Commission's Rules of Procedure (804 CMR 1.00 et. seq.), and relevant case law. It is

the duty of the Full Commission to review the record of proceedings before the Hearing

Officer. G.L. c. 151B, Section 5. The Hearing Officer's findings of fact must be

supported by substantial evidence, which is defined as ".... such evidence as a reasonable

mind might accept as adequate to support a finding..." Katz v. MCAD, 365 Mass. 357,

365 (1974); G.L. c. 30A. It is the Hearing Officer's responsibility to evaluate the

credibility of witnesses or to weigh the evidence when deciding disputed issues of fact.

The Full Commission defers to these determinations of the Hearing Officer. See e.g.,

School Committee of Chicopee v. MCAD, 361 Mass. 352 (1972); Bowen v. Colonade

Hotel, 4 MDLR 1007, 1011 (1982). The Full Commission's role is to determine whether

the decision under appeal was rendered in accordance with the law, or whether the

decision was arbitrary or capricious, an abuse of discretion or was otherwise not in

accordance with the law. See 804 CMR 1.23. (MASSACHUSETTS COMMISSION

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

AGAINST DISCRIMINATION & COLLIN ALLEN, COMPLAINANTS v.

UNIVERSITY OF MASSACHUSETTS, BOSTON, RESPONDENT 2006 WL

1529022, *1)(Emphasis Added).

"It is the Hearing Officer's responsibility to evaluate the credibility of witnesses

and/or to weigh the evidence when deciding disputed issues of fact. The Full Commission

defers to these determinations of the Hearing Officer. See, e.g., School Committee of

Chicopee v. MCAD, 361 Mass. 352 (1972); Bowen v. Colonnade Hotel, 4 MDLR 1007.

1011 (1982). The Full Commission's role is to determine whether the decision under

appeal was rendered in accordance with the law, or whether the decision was arbitrary or

capricious, or was otherwise not in accordance with the law. See 804 CMR 1.16(f)."

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND JEANNINE

PETTIFORD, COMPLAINANTS v. CITY OF NEW BEDFORD POLICE

DEPARTMENT, RESPONDENT 2006 WL 1529025, *1 (Emphasis Added).

"If Complainant establishes a prima facie case of unlawful retaliation, the burden

shifts to the Department to articulate a legitimate, non-discriminatory reason(s) for its

actions. See Weber v. Community Teamwork, Inc., 434 Mass. 761, 768-769 (2001);

Abramian, 432 Mass. at 116-118. If the Department meets its burden of production,

Complainant must then show by a preponderance of the evidence in the record that the

Department's proffered reason(s) was not the real reason for his confinement to the

Operations Division and that the Department acted with a retaliatory intent, motive or

state of mind. See Lipchitz, 434 Mass. at 504; Blare v. Husky, 419 Mass. 437, 443

(1995). Complainant may meet this burden through circumstantial evidence including

proof that "one or more of the reasons advanced by [Respondent] for making the adverse

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

decision is false." <u>Lipchitz, supra</u>. Complainant retains the ultimate burden of proving

that his confinement to the Operations Division was the result of a retaliatory animus. <u>Id.</u>;

<u>Abramian,</u> 432 Mass. at 117" (MASSACHUSETTS COMMISSION AGAINST

DISCRIMINATION AND MARTIN B. KRAFT, COMPLAINANT v. BOSTON

POLICE DEPARTMENT, RESPONDENT  2006 WL 54432, *37)(Emphasis Added)

## <u>PLAINTIFF HAS STANDING TO RECOVER DAMAGES AGAINST MCAD IF MCAD CAN SUE AND RECOVER FROM OTHER MASSACHUSETTS POLITICAL SUBDIVISIONS</u>

"Recently the Appeals Court has reversed itself on this issue. <u>Trustees of Health</u>

<u>and Hospitals of the City of Boston, Inc. v. MCAD,</u> 65 Mass. App. Ct. 329,337 (2005).

The Appeals Ct. held that the SJC has made it clear that prejudgment interest is

authorized by G.L. c. 151B and that this broad authorization is sufficient to constitute a

waiver of sovereign immunity. Id. at 338-339. The court accepted the reasoning adopted

by the SJC in <u>Bain v. City of Springfield,</u> 424 Mass. 758, 763 (1997) recognizing that

sovereign immunity with respect to punitive damages may be waived by necessary

(implication. ***We concur with the Appeals Court's most recent conclusion in the***

***Trustees case and firmly believe that a prohibition against imposing interest on***

***awards to public employees who are victims of discrimination runs contrary to***

***legislative intent, deprives complainants of make-whole relief, and undermines the***

***Commission's "authority to fulfill its mandate of protecting citizens of the***

***Commonwealth from discriminatory employment decisions and punishing unlawful***

***discrimination in the workplace." See Stonehill College v. Massachusetts Commission***

*Against Discrimination,* **441 Mass. 549, 562 (2004).**   (SO ORDERED this 12th day of

May, 2006. Walter J. Sullivan, Jr., Commissioner  Cynthia A. Tucker, Commissioner)

(MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND CHERYL

POORE, COMPLAINANTS v. TOWN OF HARWICH HIGH SCHOOL, VINCENT P.

BRESNAHAN AND GLENN A. ROSE, RESPONDENTS.  2006 WL 1388759,

*3)(Emphasis Added

### PLAINTIFF IS AN INDIVIDUAL WITHIN A PROTECTED CLASS

Plaintiff, an individual with a documented disability, was purposefully

discriminated by the Massachusetts Commission Against Discrimination based on his

gender, his class status (bipolar disorder)(ADA protected class) and his age (forty one

years old) (ADEA protected class) and was denied equal protection under the law and

deprived of equal rights, liberties and privileges accorded individuals that do not have

such a protected class status.  While it is true that the:

"The law does not protect against personality conflict, cronyism, favoritism, or

other acts of harassment or unfair conduct unrelated to a protected class." DeNovellis v.

Shalala, 124 F.2d 298, 306 (1st Cir. 1997). MCAD and Helene MacNeil v. Boston Public

Schools, 25 MDLR 132 (2003); MCAD and Ruth Howard v. MBTA, 26 MDLR 38

(2004) Vargas v. Puerto Rican-American Ins. Co., 52 F. Supp. 2d 305. (D.P.R. 1999)

MCAD & MANUELA PACHECO-LITTLEFIELD, COMPLAINANTS v.

UNIVERSITY OF MASSACHUSETTS, RESPONDENT 2006 WL 1388758, *9

(Emphasis Added), plaintiff was subjected to unequal terms and conditions, was

subjected to a hostile work environment, including, but not limited to threats of

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

termination, threats from other employees, and plaintiff's supervisors caused plaintiff, including, but not limited to, emotional distress, general anxiety, nervousness and apprehension and loss of monetary income and support, humiliation and degradation, in front of other employees, humiliation and degradation, in front of other managers, by and through defendant Haddad Motor Group, Inc's, direct and indirect unlawful discrimination, while plaintiff had sought reasonable accommodation, provided medical documentation of a protected class status to the defendants, including defendant MCAD, of which, the defendant MCAD failed to substantiate their egregious and discriminatory decision by and because of their "workshare agreement" with the defendant United States Equal Employment Opportunity Commission.

"Apart from direct evidence of discrimination, Complainant may establish a prima facie case through the inferential method adopted by the Commission in Wheelock College v. MCAD, 371 Mass. 130 (1976). See Wynn & Wynn, P.C. v. MCAD, 431 Mass. 655, 655-666 (2000); Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 444-445 (1995). The elements of a prima facie case of discrimination vary depending on the type of discrimination alleged. See Knight v. Avon Products, 438 Mass. 413, 420, n. 4 (2003). In order to establish a prima facie case of age discrimination in this case, Complainant must demonstrate that he is a member of a protected class, was adequately performing the responsibilities of his position, and was treated differently from janitors who were substantially younger. See id. (Complainant must show he was denied a condition or privilege of employment granted to someone at least five years younger or present other evidence that the disparate treatment occurred under circumstances that would raise a reasonable inference of unlawful age discrimination);

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

18

Abramian v. President and Fellows of Harvard College, 432 Mass. 107 (2000); Murphy
v. Pub Ventures, 15 MDLR 1098, 110-11 (1993).  Complainant was a member of a
protected class based on his age at the time of the events at issue." (JOSEPH MORSE
AND MASSACHUSETTS COMMISSSION AGAINST DISCRIMINATION,
COMPLAINANTS v. MASSASOIT COMMUNITY COLLEGE, RESPONDENT  2006
WL 372576, *8)

"For purposes of a claim under G. L. c. 151B, s. 4(4), a plaintiff has engaged in
protected activity if "he has opposed any practices forbidden under this chapter or ... has
filed a complaint, testified or assisted in any proceeding under [G. L. c. 151B, s. 5]."
Under s. 4(4A), protected activity consists of "aid[ing] or encourag[ing] any other person
in the exercise or enjoyment of" any right under G. L. c. 151B.  (MCAD & DONNA
DEROSA, COMPLAINANTS v. WOOD RIDGE HOMES, INC. & BARKAN
MANAGEMENT, RESPONDENTS  2005 WL 3578118, *6 )(Emphasis Added)

"Complainant engaged in the protected activity of complaining about
discriminatory treatment. See Augburg v. American Drug Stores, 21 MDLR 238, 242
(1999) (voicing of informal complaint protected under chapter 151B); Proudy v. Trustees
of Deerfield Academy, 19 MDLR 83, 88 (1997) (same). There were immediate
repercussions." (Note:  Plaintiff was subjected to unequal treatment regarding punching
in and out of time clock, and certain practices by the employer treated plaintiff differently
than other employees.  In addition, defendants state that plaintiff requested a reasonable
accommodation and utilized this request as a "perception of a threat" by the plaintiff, of
which, the request was nothing of the sort.)  Like in McCormick:

"This sequence of events establishes that Complainant engaged in protected

activity and that Respondent was aware that she had engaged in protected activity."

(JULIANNA MCCORMICK AND MASSACHUSETTS COMMISSSION AGAINST

DISCRIMINATION, COMPLAINANTS v. MODERN CONTINENTAL

CONSTRUCTION CO., RESPONDENT  2005 WL 3478728, *14 )(Emphasis Added)


## DEFENDANT MCAD FAILED TO NOTIFY PLAINTIFF OF HIS RIGHT TO APPEAL BUT UTILIZED THE EEOC REVIEW PROCESS THRU THEIR "WORKSHARE AGREEMENT" TO DEPRIVE PLAINTIFF OF HIS RIGHTS

The Massachusetts Commission Against Discrimination did not notify the

plaintiff as such:

"This order represents the final action of the Commission for purposes of M.G.L.

c.30A. Any party aggrieved by this final determination may contest the Commission's

decision by filing a complaint in superior court seeking judicial review, together with a

copy of the transcript of proceedings. Such action must be filed within thirty (30) days of

receipt of this decision and must be filed in accordance with *M.G.L. c.30A, c.151B, s.6,

and the 1996 Standing Order on Judicial Review of Agency Actions.* The filing of a

petition pursuant to M.G.L. c.30A does not automatically stay enforcement of this order.

Failure to file a petition in court within thirty (30) days of receipt of this order will

constitute a waiver of the aggrieved party's right to appeal pursuant to M.G.L. c.151B,

s.6.*2 SO ORDERED this 23rd day of May, 2006.  Walter J. Sullivan, Commissioner

Cynthia A. Tucker,[FN1] Commissioner.

FN1. Investigating Commissioner sitting by necessity to establish a quorum. See M.G.L.
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

c.6, § 56, M.G.L. c.151B, § 5." (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND CINDY BULLOCK, COMPLAINANTS v. WINTERGREEN KENNELS, JUDITH CONLIN AND MICHAEL CONLIN, RESPONDENTS  2006 WL 1529023, *1 -2 )(Emphasis Added)

## DEFENDANT MCAD'S COMMISSION DECISIONS ARE SUBJECT TO REVIEW PURSUANT TO MASSACHUSETTS LAW

**"§ 6. Review of commission's order; court order for enforcement; appeals; availability of commission's copy of testimony; limitations.** Any complainant, respondent or other person aggrieved by such order of the commission may obtain judicial review thereof, and the commission may obtain an order of court for its enforcement, in a proceeding as provided in this section. Such proceeding shall be brought in the superior court of the commonwealth within any county wherein the unlawful practice which is the subject of the commission's order occurs or wherein any person required in the order to cease and desist from an unlawful practice or to take other affirmative action resides or transacts business. Such proceeding shall be initiated by the filing of a petition in such court, together with a written transcript of the record upon the hearing before the commission, and issuance and service of an order of notice as in proceedings in equity. The court shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony and proceedings set forth in such transcript an order or decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the commission, with full power to issue injunctions against any respondent and to punish for contempt thereof. No objection that has not been urged before the commission shall

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. Any party may move the court to remit the case to the commission in the interests of justice for the purpose of adducing additional specified and material evidence and seeking findings thereon, provided he shows reasonable grounds for the failure to adduce such evidence before the commission. The order or decision of the commission shall be reviewed in accordance with the standards for review provided in paragraph (7) of section fourteen of chapter thirty A. All such proceedings shall be heard and determined by the court as expeditiously as possible and shall take precedence over all other matters before it, except matters of like nature. The jurisdiction of the superior court shall be exclusive and its final order or decree shall be subject to review by the supreme judicial court in the same manner and form and with the same effect as in appeals from a final order or decree in proceedings in equity. The commission's copy of the testimony shall be available at all reasonable times to all parties for examination without cost and for the purposes of judicial review of the order of the commission. The review shall be heard on the record without requirement of printing. The commission may appear in court by one of its attorneys. A proceeding under this section when instituted by any complainant, respondent or other person aggrieved must be instituted within thirty days after the service of the order of the commission.

M.G.L.A. 151B § 6

## MCAD FAILED TO PROVIDE PLAINTIFF WITH EQUAL TREATMENT UNDER THE LAW UNDER M.G.L. Ch. 151B§3(6)

By and because plaintiff is a white-male over the age of forty, with a documented disability (bipolar disorder) plaintiff was denied services by the defendant Massachusetts

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

Commission Against Discrimination whereby other complainants receive services and support. The Commission, under M.G.L. 151B§3 states:

### § 3. Functions, powers and duties of commission

The commission shall have the following functions, powers and duties:

6. To receive, investigate and pass upon complaints of unlawful practices, as hereinafter defined, alleging discrimination because of the race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, age, genetic information, ancestry, children, marital status, veteran status or membership in the armed services, the receiving of public assistance, or handicap of any person alleging to be a qualified handicapped person. The term "sexual orientation" shall mean having an orientation for or being identified as having an orientation for heterosexuality, bisexuality, or homosexuality. The commission through its chairman may appoint a single commissioner to hold public hearings, as hereinafter provided, and to otherwise act on its behalf in connection therewith; provided, however, that a person aggrieved by the decision of said single commissioner may, within ten days of said decision, file an appeal for rehearing or review by the commission.

### PLAINTIFF IS ENTITLED TO EMOTIONAL DISTRESS DAMAGES AGAINST DEFENDANT MCAD

"Respondents contend that the Hearing Officer's emotional distress award of $100,000 is not supported in the record and is excessive under the circumstances. We disagree. The Hearing Officer considered the evidence in light of the factors in Stonehill College v. MCAD, 441 Mass. 549 (2004) and made detailed, specific findings in support of his award. The Hearing Officer found that Complainant suffered substantial emotional

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

and physical distress following her non-selection as coach in 1998 and 1999, including loss of weight, frequent migraine headaches, and the exacerbation of her heart arrhythmia leading to required increases in medication and treatment regimen, as well as feelings of embarrassment, loss, sadness, self-doubt, and frequent crying bouts. We find that the record fully supports the emotional distress award in this case. (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND CHERYL POORE, COMPLAINANTS v. TOWN OF HARWICH HIGH SCHOOL, VINCENT P. BRESNAHAN AND GLENN A. ROSE, RESPONDENTS.  2006 WL 1388759, *1 )(Emphasis Added)

"The request for interest as part of a damages award against Respondent should be granted. See Trustees of Health and Hospitals of the City of Boston, Inc. v. Massachusetts Commission Against Discrimination & others, No. 04-P-1036 (2005), holding that prejudgment interest may be properly awarded against the Commonwealth by the MCAD under G.L. c. 151B. (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & COLLIN ALLEN, COMPLAINANTS v. UNIVERSITY OF MASSACHUSETTS, BOSTON, RESPONDENT  2006 WL 1529022, *1)(Emphasis Added)

## PLAINTIFF INJURY CAN BE REDRESSED UNDER THE REDRESSABILITY OF THE STANDING DOCTRINE

Under the redressability prong of the standing doctrine, it must be likely, as opposed to merely speculative, that the plaintiff's alleged injury will be redressed by a favorable decision. U.S.C.A. Const. Art. 3, § 2, cl. 1. Judicial Watch, Inc. v. U.S. Senate 340 F.Supp.2d 26 (D.D.C.,2004).

In the case of MCAD & Leanne Sullivan, the Commission held that:

"Miller's verbal and physical conduct toward Complainant was sexually offensive, degrading and humiliating. Miller's sexually explicit and degrading insults and his sexually suggestive comments and gestures toward Complainant were overtly sexual in nature. Such behavior persisted over a period of several months, creating a humiliating and sexually hostile work environment for Complainant and interfering with her ability to do her job. In order for conduct to be considered pervasive, Complainant must demonstrate that she was subjected to a "steady barrage of opprobrious [sexual] comment or abusive treatment." Kelley v. Plymouth County Sheriff's Department, 22 MDLR 208, 214 (2000) [quoting Carlton v. Worcester School Dept., 14 MDLR 1143, 1147 (1992)] (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & LEANNE SULLIVAN, COMPLAINANT v. JIMBOS SOUTH, RESPONDENT 2006 WL 743199, *8)(Emphasis Added)

"Respondent is liable for his acts of sexual harassment if it knew or should have known of the harassment and failed to take reasonable steps to ensure that it ceased." College-Town, supra. 400 Mass. at 163. (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & LEANNE SULLIVAN, COMPLAINANT v. JIMBOS SOUTH, RESPONDENT  2006 WL 743199, *8)(Emphasis Added)

## MCAD FAILED TO PROTECT PLAINTIFF UNDER PLAINTIFF'S
## PROTECTED CLASS STATUS

"Complainant alleges that she was terminated from her employment in retaliation for her having complained repeatedly about Miller's harassment of her. There is sufficient evidence to suggest that this in fact was the case. General Laws c. 151B §4 (4) prohibits

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

25

discrimination against individuals who have opposed any practices forbidden under c.

151B. To prove a prima case of retaliation Complainant must demonstrate that she (1)

engaged in a protected activity; (2) Respondent was aware that she engaged in protected

activity; (3) Respondent subjected her to an adverse employment action; and (4) a causal

connection existed between the protected activity and the adverse employment action.

Morris v. Boston Edison Company, 924 F. Supp. 65, 68-69, Kelley v. Plymouth County

Sheriff's Department, 22 MDLR 208, 215 (2000).  Complainant engaged in protected

activity [when she complained to Respondent's managers about Miller's sexual

harassment]. (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION &

LEANNE SULLIVAN, COMPLAINANT v. JIMBOS SOUTH, RESPONDENT 2006

WL 743199, *9)(Emphasis Added)

"Pursuant to G.L. c. 151B §5, the Commission is authorized to order remedies

that will effectuate the purposes of this chapter. This includes the authority to make a

complainant whole by restoring her to the position she would have been in absent the

discrimination. The Commission has the power to award back pay and damages for

emotional distress, to order affirmative relief, including training and to assess civil

penalties, where appropriate....Complainant also makes a claim for damages for the

emotional distress she suffered as a result of Miller's conduct and her termination.

"Emotional distress damage awards, when made, should be fair and reasonable, and

proportionate to the distress suffered." Stonehill College v. MCAD, 441 Mass. 549, 576

(2004). The factors to consider when making awards of such damages were articulated in

Stonehill, as follows: "(1) the nature and character of the alleged harm; (2) the severity of

the harm; (3) the length of time the complainant has suffered and reasonably expects to

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

26

suffer; and (4) whether the complainant has attempted to mitigate the harm (e.g., by counseling or by taking medication)." Id. at 576. (MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION & LEANNE SULLIVAN, COMPLAINANT v. JIMBOS SOUTH, RESPONDENT 2006 WL 743199, *11)(Emphasis Added)

"Upon a finding of unlawful discrimination, the Commission is authorized to award remedies pursuant to c. 272, sec. 98 and G.L. c. 151B and to render the injured Complainant whole. Such remedies include damages for lost wages and benefits and for emotional distress Complainant has suffered as a direct result of Respondent's discriminatory actions. See Stonehill College v. MCAD, 441 Mass. 549 (2004); College-Town, 400 Mass. at 169; Buckley Nursing Home v. MCAD, 20 Mass. App. Ct. 172, 182-183 (1988).

"I conclude that Complainant sustained emotional distress damages as a result of Respondent's conduct. In this regard, Complainant's entitlement to an award of monetary damages does not need to be based on expert testimony; it can be based solely on the Complainant's testimony as to the cause of her distress. See Stonehill College v. MCAD, 441 Mass. 549 (2004); College-Town, 400 Mass. at 169; Buckley Nursing Home v. MCAD, 20 Mass. App. Ct. 172, 182-183 (1988). Proof of physical injury or psychiatric consultation, while not necessary to sustain an award for emotional distress, is beneficial. See Stonehill, 441 Mass. at 576. An award must rest on substantial evidence that is causally connected to the unlawful act of discrimination and take into consideration the nature and character of the alleged harm, the severity of the harm, the length of time the Complainant has or expects to suffer, and whether Complainant has attempted to mitigate the harm. Id. The evidence of emotional harm in this case consists of the credible

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

testimony of Complainant and her sister that after they left the store and arrived at their

mother's house, they started to cry. Complainant testified that she felt like "dirt" and was

humiliated. Fraser testified that she was "shattered." and "shocked" at how she and her

sister were treated" (IMMACULA SAINT LOUIS AND MASSACHUSETTS

COMMISSION AGAINST DISCRIMINATION, COMPLAINANTS v. LA REINE

BOUTIQUE & MIREILLE STANBRO, RESPONDENTS 2006 WL 468310,

*6)(Emphasis Added)

## MCAD FAILED TO PROVIDE PLAINTIFF REVIEW BY THE FULL COMMISSION OR A QUORUM OF THE FULL COMMISSION

"It is axiomatic that it is the duty of the Full Commission to review the record of

proceedings before the hearing officer. M.G.L. c. 151B, s. 5. The hearing officer's

findings of fact must be supported by substantial evidence, which is defined as "...such

evidence as a reasonable mind might accept as adequate to support a finding..." Katz v.

MCAD, 365 Mass. 357, 365 (1974); M.G.L. c. 30A. This includes taking into account

whatever in the record detracts from the evidence relied on by the hearing officer.

Lycurgus v. Director of Division of Employment Security, 391 Mass. 623, 627-628

(1984). It is the responsibility of the hearing officer to evaluate the credibility of

witnesses and/or to weigh the evidence when deciding disputed questions of fact, and the

Full Commission defers to these determinations. See e.g. School Committee of Chicopee

v. MCAD, 361 Mass. 352 (1972); Bowen v. Colonnade Hotel, 4 MDLR 1007, 1011

(1982). The role of the Full Commission is to determine whether the decision under

appeal was rendered in accordance with the law, or whether the decision was arbitrary or

capricious, an abuse of discretion, or was otherwise not in accordance with the law. See

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

804 CMR 1.16(8)(f). (ANDREW HARRIS AND SPENCE TATUM,

COMPLAINANTS v. CITY OF WORCESTER POLICE DEPARTMENT,

RESPONDENT 2006 WL 662739, *3)

## DEFENDANT MCAD'S DECISION MAKING ABILITY IS IN CONFLICT WITH THE LEGISLATIVE INTENT OF CONGRESS AND THE LAWS OF THE COMMONWEALTH

"The standard used in by the Full Commission in reviewing the facts found by the

Hearing Officer, including determinations of credibility, is to defer to those facts so long

as they are supported by substantial evidence in the record. Under the substantial

evidence test, the reviewer on appeal is not permitted to make de novo determinations of

the facts, to make different credibility choices, or to draw different inferences from the

facts found by the agency. Pyramid Co. of Hadley v. Architectural Barriers Bd., 403

Mass. 126, 130 (1988). If a fact-finder has made a "choice between two fairly conflicting

views" and his determination is based on reasonable evidence, a reviewer on appeal may

not displace the fact-finders choice ... even though it would have justifiably made a

different choice had the matter been before it de novo. Lisbon v. Contributory Retirement

Appeals Board, 41 Mass. App. Ct. 246, 259 (1996). Thus, while the reviewer on appeal

may disagree with the outcome and might have made a different determination based on

those same facts, this is not a basis for reversal so long as the facts are supported by the

evidence *4 Relying on this standard, Commissioner Sullivan concludes that there is

sufficient evidence in the record to support the credibility determinations made by the

fact-finder on the issue of racial animus. That basic standard requires deference to the

facts found by the hearing officer which are carefully laid out in this case. Commissioner

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

Sullivan accepts the Hearing Officer's finding that Raymond's testimony was credible and that the morale of the white officers as one of a number of reasons for failing to exercise PAR 10, was insufficient evidence of discriminatory motive, particularly where the employer has articulated other legitimate non-discriminatory reasons for its action.

*Based on her review of the very same set of facts, Commission Tucker concludes that the Hearing Officer's finding of no racial animus is unsupported by the evidence.* She finds little to no support in the record upon which to credit the testimony of Respondent's agents on the issue of their good faith belief that a PAR 10 exception was not appropriate, given the extreme circumstances. Other than the self-serving testimony of both Silverman and Raymond supporting each others' testimony in this regard, no corroborating evidence was introduced by the City establishing any basis for not administering and advancing the provisions of PAR 10.

In addition, *Commissioner Tucker finds that that the city's concern that implementation of PAR 10 type affirmative action efforts would have affected the morale of (white) officers constitutes direct evidence of racial animus*. Given this she concludes that Complainants have established evidence of pretext sufficient to warrant a decision in their favor. Commissioner Tucker thus finds the Decision of the Hearing Officer to be erroneous as not based on the substantial evidence in the record and, therefore, subject to reversal.

As a general principal, the inability to reach a consensus on whether to affirm or reverse the decision below, results in the decision below standing, when, as here, there is a tie vote. Therefore, the Decision of the Hearing Officer stands. Notwithstanding, the Full Commission has sufficient concerns regarding the Respondent's record of promoting

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

minorities that it strongly urges the Respondent to exercise its PAR. 10 option to

determine if the promotion of minority officers, including Complainants, is appropriate at

this time. In addition, given Respondent's problematic record in promoting minorities

over a significant period of time, the Full Commission hereby authorizes the

Investigating Commissioner for the region to initiate a Commission complaint, at her

discretion, to investigate the current promotional practices of Respondent.

(ANDREW HARRIS AND SPENCE TATUM, COMPLAINANTS v. CITY OF

WORCESTER POLICE DEPARTMENT, RESPONDENT 2006 WL 662739, *3 –

4)(Emphasis Added)

## CONCLUSION

Plaintiff is entitled to damages.

"Proof of physical injury or psychiatric consultation is not necessary to sustain an

award for emotional distress. See Stonehill, 441 at 576. An award must rest on substantial

evidence that is causally connected to the unlawful act of discrimination and take into

consideration the nature and character of the alleged harm, the severity of the harm, the

length of time the Complainant has or expects to suffer, and whether Complainant has

attempted to mitigate the harm." (JULIANNA MCCORMICK AND

MASSACHUSETTS COMMISSSION AGAINST DISCRIMINATION,

COMPLAINANTS v. MODERN CONTINENTAL CONSTRUCTION CO.,

RESPONDENT 2005 WL 3478728, *17)(Emphasis Added)

Discovery is relevant and necessary. Plaintiff is entitled to compensation, including, but

not limited to, injuries of emotional distress, lost earnings capacity, back pay, interest on

back pay, violations of equal protection, equal treatment against, including, but not

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

31

limited to, the defendants  Massachusetts Commission Against Discrimination.

For these reasons, herein is provided Plaintiff's Memorandum of Law in Support of Notice of Objection to MCAD'S MOTION TO DISMISS.

The Massachusetts Commission Against Discrimination failed to uphold its mandate and the laws of the Commonwealth of Massachusetts and plaintiff is entitled to recover for damages forthwith and expeditiously.  Defendant MCAD failed to uphold their mandate by and through its agreement with Defendant United States Equal Employment Opportunity Commission, contrary to the laws of the United States and the laws of the Commonwealth of Massachusetts, because they have a financial interest in depriving plaintiff of his rights, liberties and privileges under the laws of the United States.

The decision by the Massachusetts Commission Against violated the plaintiff's rights, liberties and privileges and plaintiff is entitled to recover for the damages inflicted by the defendants for their negligent, egregious, and disparate decision making process that is in conflict with defendants own briefs, rulings, citations, and, including, but not limited to, the Commonwealth of Massachusetts Anti-discrimination laws and the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts that has caused plaintiff severe emotional distress.

"Turning to the issue of emotional distress damages, Complainant's entitlement to an award of monetary damages does not need to be based on expert testimony; it can be based solely on the Complainant's testimony as to the cause of his distress. See Stonehill College v. MCAD, 441 Mass. 549 (2004); College-Town, 400 Mass. at 169; Buckley Nursing Home v. MCAD, 20 Mass. App. Ct. 172, 182-183 (1988) (JULIANNA

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF OBJECTION TO MCAD MOTION TO DISMISS

MCCORMICK AND MASSACHUSETTS COMMISSSION AGAINST

DISCRIMINATION, COMPLAINANTS v. MODERN CONTINENTAL

CONSTRUCTION CO., RESPONDENT  2005 WL 3478728, *17)(Emphasis Added)


Most respectfully submitted this 7 day of August, 2006.

Scott Stern
Sui Juris
All Rights Reserved without Prejudice
Pro Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF
OBJECTION TO MCAD MOTION TO DISMISS

Appendix A

## COMMONWEALTH OF MASSACHUSETTS
### MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

SPRINGFIELD, ss

MCAD DOCKET NO. 03SEM0146B
EEOC DOCKET NO.   16CA301828

|  |  |
|---|---|
| SCOTT STERN,    **Complainant** | ) ) ) ) |
| v. | ) ) |
| HADDAD TOYOTA PONTIAC BUICK,    **Respondents** | ) ) ) |

### RESPONDENT'S ANSWER TO CHARGE OF DISCRIMINATION

Now come Respondent Haddad Toyota Pontiac Buick ("Haddad" or "Respondent"),

through its counsel of record, and responds to the Charge of Discrimination by Complainant

Scott Stern ("Complainant"), in the above-captioned case.

### Narrative Answer

Respondent Haddad denies that it discriminated against Complainant in any way or made

an adverse employment decision concerning Complainant based on any improper motive.

Complainant was a reasonably competent car salesperson at Respondent's dealership, but his

performance suffered from chronic tardiness until he was terminated for this same problem. His

tardiness was chronic and repeated (approximately three times per week and sometimes more),

affected his job performance, and threatened to decrease morale among other salespeople who

were not afforded the same leniency as to required hours and arrival times. Respondent

reprimanded Complainant for his repeated tardiness long before Complainant claimed to

1

Appendix A

Respondent's management that he was bi-polar. Complainant's termination on or about 2/3/03 was because of his tardiness problem, not because of his alleged disability.

Complainant has never shown any proof that he is in fact bi-polar. During a meeting in November or December of last year, Complainant flashed and read a crumpled-up, handwritten note that he claimed was from a doctor, which note allegedly asked Complainant's employer (Respondent) to "work with" Complainant. The note did not indicate any diagnosis or identify any disability. Complainant would not give the note, or a copy thereof, to Respondent, and Respondent could not see the name of any doctor on that note to enable Respondent to verify Complainant's claim concerning his disability. Respondent's General Manager, Mike Coggins, specifically asked Complainant to provide a letter from his doctor indicating the nature of his disability and stating the need for the accommodation that Complainant requested. Complainant never provided such a letter, nor did any medical provider ever contact Respondent with regard to plaintiff's alleged disability. To this date, Respondent has received no proof that Complainant was (1) bi-polar, (2) disabled (partially or totally), or (3) entitled to any accommodation such as being able to arrive 15 minutes late every day because of his alleged disability.

As Complainant indicates in ¶6 of his Charge, Respondent granted him the accommodation that he requested, even without the above-referenced documentation of his medical condition and its connection to his tardiness. He was permitted to arrive 15 minutes late, with the understanding that he was in effect on "probation," such that if he ever arrived *more* than 15 minutes late, he would be terminated. As Complainant concedes in ¶7, he *did* in fact arrive 6 minutes too late (that is, a total of 21 minutes late: the permitted 15 minutes, plus 6 minutes). After months of putting up with his repeated tardiness (on average, 3 times per week),

*Appendix A*

Respondent terminated Complainant, as Respondent had repeatedly warned Complainant that it would.

Respondent does not accept, and holds Complainant to its proof, (1) that Complainant is bi-polar in the first place, and if so, (2) that that condition constitutes a legal disability. The only accommodation that Complainant requested because of his alleged disability, was permission to arrive late every day. There does not seem to be any clinical reason that the ability to always be late to work would in some way alleviate bi-polar disorder. In fact, it was not until months of warnings, days of being sent home, and intimations by Respondent that it was about to fire Complainant, that Complainant conveniently mentioned his alleged bi-polar disorder and made his request for an accommodation to be permitted to arrive late because of this disorder. Respondent submits that Complainant may have used an imagined (or concocted) disorder to buy himself time when it became apparent that he was about to be terminated for his chronic tardiness. And Complainant has still not shown any medical evidence of his alleged condition, and did not provide any to Respondent during the final three months of his employment (between the first time he informed Respondent that he suffered from this disorder, and his termination in February of 2003).

### Respondent's Answers to Complainant's Specific Numbered Paragraphs

1.    Respondent admits that it hired Complainant in April 2002 as a salesperson. Haddad also admits that, other than the chronic and repeated tardiness for which Complainant was terminated, Complainant's performance as a salesperson was usually satisfactory; although Respondent did receive several complaints about Complainant's behavior from customers and from other employees.

2.      Respondent denies that Complainant was subjected to any unfair or unequal treatment by Respondent. Respondent admits that its management asked Complainant to go home on certain days, after he had repeatedly called in late, but denies that other salespersons were treated any differently. Respondent admits that it followed standard practice with splitting commissions between the salesperson who actually made the sale and the salesperson who serviced the client at the time of delivery (if different people). Respondent denies that Complainant was treated any differently from any other salespersons in this standard practice at the dealership, and points out that Complainant sometimes *benefited* from this practice, as he would receive a portion of the commission on a sale that he had not originally made if he was the salesperson present at the time of delivery.

3.      Coggins remembers referring to Stern as "crazy" in a joking manner, but never *after* Stern informed Respondent that he was allegedly bi-polar. All employees were treated in a similar joking manner, and Stern was not singled out. Moreover, the joking title of "crazy" was not entirely unearned: Complainant had a practice of staring at other employees and customers, and the dealership received complaints about his behavior. On one occasion he followed a female customer home, and the dealership received a complaint about his surveillance of her house on different occasions. At another time, he went to the house of two other employees early in the morning (12:30 a.m.), opened their door, and watched them from the doorway (while they were unaware of his presence). He would frequently complain about other employees and then, after discussing equal treatment with management, he would inexplicably weep and confess that he was sorry, "it's all in my head." Respondent could have terminated him much earlier for his aberrant behavior, but tried to work with him on this as well as his chronic tardiness.

4.    Respondent agrees that Complainant "frequently had difficulties arriving to work on time" and that many meetings were held to discuss his tardiness. Respondent does not recall the date of the meeting discussed in this paragraph, and had remembered that it was in December, not November of 2002. Respondent admits that Complainant informed Respondent that he was allegedly bi-polar and that he showed Respondent the referenced note, allegedly from a doctor, suggesting that Respondent "work with" Complainant (see discussion above). Respondent denies that Complainant ever gave this note, or a copy of it, to Respondent, or provided any other documentation (such as a doctor's letter) attesting to his bi-polar disorder, even though Respondent asked Complainant to provide same.

5.    Respondent admits that Complainant invoked the ADA, at the previously referenced meeting at which he claimed that he had bi-polar disorder. Respondent also admits that Complainant sought an accommodation of being permitted to be late every day, unlike other employees. Respondent denies that it "refused to make any accommodations whatsoever," and asserts that it did in fact grant Complainant permission to be 15 minutes late each day. This accommodation was made despite Complainant's failure to provide any type of medical documentation to support his alleged bi-polar disorder.

6.    Respondent agrees that it allowed Complainant to be as much as 15 minutes late. Respondent denies that this accommodation was provided "on or about the last week of February 2003," and points out that Complainant had already been fired by that time.

7.    Respondent agrees with Complainant that he was late again on or about the date of his termination. Respondent also states that Complainant was fired for violating the terms of his reasonable accommodation or "probationary" period, because he was *more than* 15 minutes

late that day. Respondent denies that his supervisor's annoyance (if any) over allegedly not receiving some fee of $160 had anything to do with Complainant's termination.

8.    Respondent denies the allegations in ¶8. Further, Respondent asserts that, in fact, it bent over backwards to treat Complainant specially, and permitted Complainant to be late for work every day (which Respondent did not permit any other employee to do).

### Respondent's Additional Defenses

1.    Complainant cannot show his prima facie case for disability discrimination because Complainant cannot show that he was a "qualified handicapped person."

2.    Complainant cannot show his prima facie case for disability discrimination because he cannot show that he was fired based on his alleged disability.

3.    Complainant cannot show his prima facie case for disability discrimination because he cannot show that Respondent was unwilling to make any requested "reasonable accommodation" for his disability.

4.    To the extent that there has been no attempt to mitigate, minimize, or avoid any damage alleged in Complainant's claims, any recovery against Respondents must be reduced or eliminated.

5.    Complainant's claims are barred by the exclusivity and/or preclusion provisions of the Worker's Compensation Act (M.G.L. ch. 152), which bar her recovery against Respondents.

6.    The MCAD Complaint does not describe the subject claims with sufficient particularity to enable Respondent to determine all of the grounds for its defense. Respondent therefore reserves its right to assert any additional grounds for its defense that may have become available once the precise nature of Complainant's claims is ascertained.

Signed under the pains and penalties of perjury, by Respondent, as required by 804

C.M.R. § 1.10(8)(e), on September 15, 2003.

David Michael Coggins

RESPONDENT,
By Its Attorneys
MICHIENZIE & SAWIN LLC

Dated: 9/13/03

BY:

Richard A. Sawin, Jr. – BBO NO: 546786
John C. Barker – BBO NO: 637406
101 Merrimac Street, 6th Floor
Boston, MA 02114
Tel: (617) 227-5660

{00043654.DOC}

7
TOTAL P.09

July 12th, 2004

Commonwealth of Massachusetts
Commission Against Discrimination
436 Dwight Street, Suite 220
Springfield, MA. 01103

Dear Migdalia Rivera,

I received the notice on May 25th, 2004 for dismissal of complaint. I requested a review
of that decision and have not heard anything in regard to a new date. I witnessed an
Attorney outright lie and tell a falsehood that "No note ever existed" and when the
Attorney for the MCAD showed the DEFENDANT Attorney the note, the note which I
had  provided at the time of the meeting in November of 2003, the Attorney quickly
"changed" his line of defense to state that the note was recently provided and no illness
ever existed, and such a note was presented without the proper information. I was
disheartened and disillusioned that this case was wrongly decided against the merits I
presented to the Commission. THIS CASE SHOULD HAVE BEEN CONSIDERED
OPEN AND SHUT FOR MY BEHALF. The Defendant managers stated that their was
a note in their original affidavitt. In fact, one of the Defendant's even described one of
the notes contents. The Attorney for the Defendant had the audacity to state that if such a
note existed, well, it was illegible and could not identify the illness and the doctor.  He
even went so far as to state that the illness was "made up" to suit the situation. Prior to
the meeting there was a clear and convincing argument that the DEFENDANT was not
providing truthful and accurate information. It would take a simple review of the
affidavits provided to quickly and clearly know this. This, however, was clearly and
unequivocably not the case. As clear as the note was that I provided, was the inconsistent
affidavits on the behalf of the Defendants. The note was clear with the diagnosis; the
address of the Doctor was legible at the top; the date respective to the diagnosis was
much prior than the date of the meeting in November of 2003. I was requested, by
management, to obtain another note from my doctor, which I obliged them with on the
following day after this initial meeting. I also provided copy of this note to the
commission. This in itself showed that such a meeting had taken place, and that there
was a strong probability that discussion of a topic as I described had definitively taken
place.

In your summary of findings, you incorrectly note me as a being a she by stating "her". I
am a man, a devoted father, and one who had been discriminated against by his employer.
I am under the belief that with such an egregious error on your behalf such as this, it calls
for the reconsideration of the merits and facts of my case in itself.

I believe that the Defendant in this case, by their affidavit, and their remarks in the
hearing, had committed the gross act of perjury.

I am trying to understand just how this Commission Against Discrimination operates. A
woman can claim abuse, seek a restraining order against a partner, without ANY

Appendix D

corroborating evidence.  I, myself, a man, show that a meeting took place, a discussion of the issues takes place, and then I am discharged after having requested, months prior, a reasonable accommodation. I REQUESTED, AND WAS DENIED, A REASONABLE ACCOMODATION. The DEFENDANT admitted that there was a meeting and a note was passed around in regard to the disability. A DISCUSSION TOOK PLACE. THAT DISCUSSION WAS ABOUT THE ADA AND THIS PERSON'S RIGHT TO A REASONABLE ACCOMODATION.

PLEASE MAIL ME A COPY OF ALL NOTES, WRITINGS, DOCUMENTATIONS, INTERVIEWS IN REGARD TO THE CASE OF STERN v. HADDAD DEALERSHIPS OF THE BERKSHIRES, INC. that were handled by all individuals that may have had access and knowledge to this case. I am asking for all writing, notes and interviews that were conducted by Karen Dome, Investigator; Migdalia Rivera, Supervisor; Jerry Levinsky, Lead Attorney and the prior investigator, if there was a previous investigator; there was another individual present on the day of the hearing, if that person had taken any notes, writings or communications, I would like copy of that as well.  If the hearing was taped, I would like to receive a copy of the tape as well.

I expect a response within thirty days of this letter.

Sincerely,

Scott L. Stern
400 West Main Street
North Adams, MA.  01247

Cc: Stephen Kaplan, Attorney at Law
    Phyllis Mitchell, Advocate, Massachusetts Office on Disability

# Massachusetts Office on Disability

## One Ashburton Place, Room 1305
## Boston, MA 02108

Mitt Romney, Governor
Kerry Healey, Lieutenant Governor
Myra Berloff, Acting Director

[617] 727-7440 V/TTY
[800] 322-2020 V/TTY
[617] 727-0965 FAX
Web: http://www.mass.gov/mod
Phyllis.Mitchell@modi.state.ma.us

December 31, 2003

Ms. Karen Dome, Investigator
Mass. Commission Against Discrimination
436 Dwight Street, Room 220
Springfield, MA 01103

.

Re:    **Stern v. Haddad Toyota Pontiac Buick.**
       **Doc. NO. 03-23-01468**

Dear Ms. Dome:

This letter is my Rebuttal in the above referenced case.

**Issue:** Whether or not Complainant's employment was terminated because of his disability (bi-polar).

**Issue:** Whether or not the complainant was discriminated against due to denial of a reasonable
accommodation (flexible arrival time).

**Issue:** Whether or not Complainant was discriminated against in different terms and conditions of
employment.

## BACKGROUND

Complainant worked for Respondent from April of 2002 until February 3, 2003 when his employment
was terminated.

Complainant's job was that of a Sales/leasing agent. Complainant's work has always been satisfactory
and he had a high performance score in customer service. He often worked 7 days a week generally
putting in more work hours then the other Sales/leasing representatives.

Complainant's disability is a bi-polar disorder. He informed Respondent about this disability in a
meeting on or before November 26, 2002. The purpose of the meeting was to discuss Complainant's
tardiness. Sometimes he would show up a few minutes late for work. He explained to Respondent that
this was disability related. He asked for flex time as a reasonable accommodation. He offered to work
over time to make up for the tardiness. According to his complaint, "I notified them of my condition,

APPENDIX C

and it was at this time I was asked to disclose exactly what my condition was to all the managers present. Although I felt pressured, and was hesitant to tell them, I did so. At this time I presented my managers with a note from my doctor that stated that "my employer should work with me being the fact that I was showing signs of improvement.'" The accommodation Complainant requested was a few minutes of flex time in case he ran late at the start of his shifts. His complaint states: "All I requested was a few minutes of flex time in case I ran late at the start of my shifts. David Michael Coggins refused to make any accommodations whatsoever."

On or about the last week in January of 2003 Respondent agreed to accommodate Complainant. According to his complaint "On or about the last week of February (sic) 2003, James Salvie and Tim Cardillo had a meeting with me in which James Salvie acknowledged and stated that although it was against his better judgment, he would allow me to (sic) up to fifteen minutes to be late to work." A week later Complainant was fired for being 6 minutes late for work.

Complainant was treated differently in the terms and conditions of his employment. His complaint states: "When I would call and let them know I was running late or showed up late, David Michael Coggins and/or James Salvie would tell me to return home or not show up at all and I would be suspended for the weekend. Other co-workers would show up late or forget to clock in at all and not be penalized or reprimanded for it. There were also several occasions were (sic) my Commission on the sell (sic) of a vehicle or even my customers were given to other salesmen by James Salvie. I believe he purposely did this to effect my sales and work flow production and create another possible excuse to terminate me."

## ARGUMENT

Complainant is a qualified person with a disability. His bi-polar condition makes it difficult for him to arrive at work on time. Complainant takes medication for his disability but once in a while does experience mood swings. However, he was qualified for his job because he only showed up a few minutes late when he was late, and because he worked over time and on weekends to more than make up the lost minutes. Furthermore he had a satisfactory work record. In July of 2002 he sold 17 cars. That was more than any other sales person that month. He also reports that during the time of his employment he had 2 double sales. This means that two customers who were happy with the first car he sold them came back to him for a second sale. During the time of his employment he also sold 2 land cruisers which were very expensive cars.

Respondent claims they terminated Complainant because of his tardiness. "Complainant's termination on or about 2/3/03 was because of his tardiness problem, not because of his alleged disability." Respondent refused to understand that Complainant's tardiness was a symptom of his disability. Accommodating his disability was not a hardship for Respondent. If the Commission requests time card records from Respondent they will see that Complainant put in a lot of overtime to make up for his tardiness. Complainant may have been a few minutes late from time to time, however Respondent never stated that Complainant missed a lot of days of work, just that he was a few minutes late 2 or 3 times a week. Also, Complainant was not the only sales person on the floor at the start of business. Given that fact it is clear that Complainant's few minutes of tardiness should not have been a hardship for Respondent to bear.

APPENDIX C

In terms of whether or not Respondent knew of Complainant's disability, Respondent's position statement says: "Complainant has never shown any proof that he is in fact bi-polar. During a meeting in November or December of last year, Complainant flashed and read a crumpled-up, handwritten note that he claimed was from a doctor, which note allegedly asked Complainant's employer (Respondent) to "work with" Complainant. The note did not indicate any diagnosis or identify any disability. Complainant would not give the note, or a copy thereof, to Respondent, and Respondent could not see the name of any doctor on that note to enable Respondent to verify Complainant's claim concerning his disability. Respondent's General Manager, Mike Coggins, specifically asked Complainant to provide a letter from his doctor indicating the nature of his disability and stating the need for the accommodation that Complainant requested." Respondent states that Complainant never provided that requested documentation and that no medical person ever contacted Respondent about Complainant's condition. Complainant disagrees. The note he handed in may have been crumpled up as he took it from inside his wallet. However it did have the name of his psychiatrist, the fact that he is treating Complainant for a bi-polar disorder, and that Respondent should work with Complainant.

Respondent states that they did in fact provide Complainant with the requested accommodation of being allowed to come to work up to 15 minutes late. However, the accommodation was not provided appropriately or in a timely fashion. The accommodation was requested in late November. It was not granted for at least 2 months which was very shortly before Complainant's termination. It was provided as if it were a punishment. They accommodated him and put him on probation at the same time. It would have been more appropriate if they had simply allowed him to make up the time as he was already doing. Putting him on probation simply added to his stress level.

Respondent implies that Complainant all of a sudden made up his disability as an excuse for being late for work. This is not the case. Often people with hidden disabilities are very uncomfortable about revealing their disabilities. This is very apparent in Complainant's case given the fact that when he was late he either had to go home for the day, get suspended, and often get reprimanded for his actions. According to Respondent's statement: "In fact, it was not until months of warnings, days of being sent home, and intimations by Respondent that it was about to fire Complainant, that Complainant conveniently mentioned his alleged bi-polar disorder and made his request for an accommodation to be permitted to arrive late because of this disorder."

Complainant was treated differently in terms and conditions of employment. Respondent was very strict about Complainant clocking in and out. Much more so then with other employees. Complainant states that once they clocked in, a majority of his colleagues would go outside and smoke. To Complainant this meant that with other employees, management was not so strict about starting work right on time.

Complainant's complaint states: "When I would call and let them know I was running late or showed up late, David Michael Coggins and/or James Salvie would tell me to return home or not show up at all and I would be suspended for the weekend. Other co-workers would show up late or forget to clock in at all and not be penalized or reprimanded for it. There were also several occasions were (sic) my commission on the sell (sic) of a vehicle or even my customers were given to other salesmen by James Salvie. I believe he purposely did this to effect my sales and work flow production and create another possible excuse to terminate me."



Respondent writes: "Moreover, the joking title of "crazy" was not entirely unearned: Complainant had a practice of staring at other employees and customers, and the dealership received complaints about his behavior." It is doubtful that the complaints were that bad or that numerous. After all, these alleged complaints were not used as one of the reasons for termination of Complainant's employment and none were submitted with Respondent's position statement.

Respondent goes on to say, "On one occasion he followed a female customer home, and the dealership received a complaint about his surveillance of her house on different occasions." Again, why wasn't he fired? This is a serious allegation. Complainant states that he never "followed" a customer home unless it was related to the sale of a car.

Respondent states that Complainant went to the house of 2 employees early one morning at 12:30 a.m. Complainant's depiction of the events of that evening is quite different. He was out fishing with his ex girlfriend's children. His ex inadvertently took home his car keys. Complainant did not realize this until much later that night, when it was time to leave. He knocked on the door of the first house he saw that happened to have its door open. He didn't know that was where his co-worker, Paul, lived. He was sitting at his table. His wife Angie came to the door and invited Complainant and the children in for a drink. Complainant called his ex girlfriend about the keys and waited at his car for her to return with them.

Respondent states: "Complainant invoked the ADA, at the previously mentioned meeting at which he claimed he had bi-polar disorder. Respondent also admits that Complainant sought an accommodation of being permitted to be late every day, unlike other employees." Whether other employees were allowed to come in late is irrelevant. What matters is whether Complainant was able to perform the essential functions of his job. Respondent never said he did not perform the essential functions of his job. What is very clear though is the fact that Respondent did not believe Complainant had a disability and they very much resented having to accommodate him.

There are some documents Complainant would like the Commission to request from Respondent. A compilation of time cards for all individuals working for Respondent at the time Complainant worked for them. A compilation of all time sheets prior to the institution of the time card system. A compilation of employees that have been terminated from Respondent for similar reasons, during the time Complainant worked there.

## CONCLUSION

Complainant's employment was terminated because of his bi-polar disability.

He was denied Reasonable Accommodation for up to 2 months after the accommodation was requested. When the accommodation was provided it was done grudgingly, proven by the fact that he was put on probation at the same time.

Complainant was treated differently than his colleagues in the manner in which he was paid as well as by Respondent's diligent scrutiny of Complainant's time sheets/cards in comparison to other employees.

**APPENDIX C**

For the above reasons a finding of Probable Cause should be found in this case.

Sincerely,

*Phyllis J Mitchell*

Phyllis J. Mitchell
Civil Rights Advocate

APPENDIX D

To whom it may concern.

This letter is in response to the complaint from Scott Stern. I am a direct supervisor of Mr. Stern. It is a practice at Haddads that if a salesperson is continually late with no good reason and we can't seem to get his attention and want to retain the person because they are an asset, we will send them home for a period of time to see if we can get their attention. Mr. Stern is not the only one this has occurred with.

If a salesperson is not here to take care of their customer at the time of delivery, we do split the deal. It is our opinion that the customer must be treated in a certain way and we do try to be very consistant on the delivery. Mr. Stern is not the only salesperson who has had to split a deal for not being available at the time of delivery.

We had a meeting with Mr. Stern due his frequently arriving late for work. It was at this meeting Mr. Stern informed us that he had a bi-polar disability that was causing him to frequently be late. Not knowing a lot about this disability, we did ask Mr. Stern to bring a doctors note stating that one of the effects of this disability was being late for work on a consistant basis. A note was presented that said "work with Scott". I couldn't get anything that states that due to his disability he would frequently be 15 minutes late. In spite of this and the disruption it would cause with all the other employees that were required to be here on time, we did give Scott a new schedule that allowed him to be 15 minutes late. .

Everything did finally come to a head when Mr. Stern could not arrive within the 15 minute window everybody had agreed on. In spite of the frequent disruptions, we liked Mr. Stern but counld not justify his behavior any longer.

Jim Salvie
General Sales Manager
Haddad Motors

RECEIVED

AUG 1

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

Subscribed to and sworn before me
this 11 day of Aug, 03
Constance J. Welland, Notary Public
My commission expires July 28, 2007

APPENDIX E

To whom it may concern.

This letter is in response to allegations of discrimination against a former employee of Haddad Motors Scott Stern.  I have been employed at Haddad Motors since October 1, 2002 as a sales manager.  During this time I had the opportunity to work directly with Scott.  Scott had several issues that brought his employment to an end with Haddad Motors.  The number one reason was his inability to be on time.  Scott was consoled many times about his tardiness.  I have attended many meetings addressing his tardiness. Scott was given time off on several occasions after being counseled and then continued to be late.  Jim Salvie the general sales manger gave Scott more than enough chances to address the issue.  Only after Scott was about to be terminated did he bring up the fact that he had a disease which he called Bi- Polar.  The manner in which he brought it up was taken as a direct threat of a law suit if we didn't back off the issue of his tardiness. We requested Scott have his Doctor write a signed letter so as to communicate to us that his tardiness was associated with his disease.  Scott never produced a signed documentation or any real proof of his disease.  Scott did take out of his wallet a crumpled piece of note paper that said please work with Scott.  Jim Salvie gave Scott a final chance of a 15 minute grace period.  The deal was if Scott was late again by more than his 15 minute grace period he would be terminated.  Scott was late and he was terminated.  No other employee has ever been given a grace period especially after Scott Stern was asked to provide documentation about his Bi-Polar and never did.  Scott never advised Haddad of his disease prior to his employment. Scott had other issues concerning comments and inappropriate behavior with staff and customers.

Sincerely

Timothy Cardillo
Sales Manager
Haddad Motors
tcardillo@haddaddealerships.com

Subscribed to and sworn before me
this 13 day of Aug, 03

Constance J. Welland, Notary Public
My commission expires July 28, 2007


November 2, 2004

Massachusetts Commission Against Discrimination
Mr. Jerry Levinsky, Deputy General Counsellor
436 Dwight Street
Suite 220
Springfield, Massachusetts 01103

<u>NOTICE OF APPEAL</u>

Dear Mr. Levinsky,

This is a formal notification to your office that I, Scott Stern, am,
hereby appealing the egregiously erroneously error of your
Investigating Commissioner, Cynthia Tucker, and the decisions through
the Springfield Office of the Massachusetts Commission Against
Discrimination.

I am requesting this formal appeal, in regard to the MCAD CASE
NUMBER#03SEM01468 of Stern vs. Haddad Dealerships.

I believe that this letter is sufficient to secure my right to appeal
the implausible and inconceivable decision of the Springfield Office of
the Massachusetts Commission Against Discrimination and the
Investigating Commissioner.

I have sent letter to the Massachusetts Governor, Mitt Romney, and am
pursuing legal action against the Massachusetts Commission Against
Discrimination.

Should this letter be not sufficient to secure my right of appeal, and
I need to submit other documentation or requests for such an appeal,
please mail, to me, the specific requirements in order that I secure my
right of appeal of this inconsiderate and inconceivable decision by
Cynthia Tucker, Investigating Commissioner.

Sincerely,

Scott Stern
400 West Main Street
North Adams, Massachusetts 01247

Cc: Phyllis Mitchell
    Scott Stern

APPENDIX F

CERTIFICATE OF SERVICE

I, Scott Stern,  plaintiff in the action of Stern vs Haddad Dealerships, MCAD Case #03SEM01468, hereby certify that I have this day served a copy of the enclosed NOTICE OF APPEAL and REQUEST FOR FILE AND DOCUMENTATION to Massachusetts Commission Against Discrimination, Jerry Levinsky, Deputy General Counsellor, 436 Dwight Street, Springfield , Massachusetts 01103.

November 2, 2004

_____

Scott Stern

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**436 Dwight Street, Rm. 220, Springfield, MA 01103**
**Phone: (413) 739-2145  Fax: (413) 784-1056**

## - DISMISSAL and NOTIFICATION of RIGHTS -

| To: | Phyllis Mitchell | **Case:** Stern v. Haddad Toyota Pontiac Buick |
| --- | --- | --- |
| | Massachusetts Office on Disability | **MCAD Docket Number:** 032301468 |
| | One Ashburton Place, Room 1305 | **EEOC Number:** 16CA301828 |
| | Boston, MA 02108 | **Investigator:** Karen Dome |

Your complaint has been dismissed for the following reasons:

[ ]  The facts alleged fail to state a claim under any of the statutes the Commission enforces.

[ ]  Respondent employs less than the required number of employees.

[ ]  Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]  The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]  The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[X]  The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[ ]  Other (briefly state)

### - NOTICE of APPEAL -

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. **Attention: Migdalia Rivera.**

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

Cynthia Tucker
Investigating Commissioner

Date  5/27/04

Cc:  John C. Barker
Michienzie & Sawin LLC
745 Boylston, Street, 5th Floor
Boston, MA 02116

# Massachusetts Office on Disability

### One Ashburton Place, Room 1305
### Boston, MA 02108

Mitt Romney, Governor
Kerry Healey, Lieutenant Governor
Myra Berloff, Acting Director

[617] 727-7440 V/TTY
[800] 322-2020 V/TTY
[617] 727-0965 FAX
Web: http://www.mass.gov/mod

## FACSIMILE COVER SHEET

**TO:**  _MIGDALIA RIVERA_

Organization:  _MCAD - SPRINGFIELD_

Fax Number:  _(413) 784-1056_

**FROM:**  _PHYLLIS MITCHELL_

Fax Number:  (617) 727-0965

Pages:  _1_  + Cover Sheet

Date:  _6/8/2004_

Brief Message:  _ALSO VIA MAIL_



# Massachusetts Office on Disability

**One Ashburton Place, Room 1305**
**Boston, MA 02108**

Mitt Romney, Governor
Kerry Healey, Lieutenant Governor
Myra Berloff, Acting Director

[617] 727-7440 V/TTY
[800] 322-2020 V/TTY
[617] 727-0965 FAX
**Web:** http://www.mass.gov/mod
Phyllis.Mitchell@modi.state.ma.us

June 8, 2004

Migdalia Rivera
Massachusetts Commission Against Discrimination
436 Dwight Street, Suite 220
Springfield, MA 01103

Re: Appearance of Phyllis J. Mitchell
    Stern v. Haddad Toyota Pontiac Buick
    Docket No. 042301468

Dear Ms. Rivera:

My Client, Scott Stern, has authorized me to appeal the Commission's dismissal of his complaint,
referenced above.

Also, at the convenience of the Commission, we would like a copy of the referenced case file. Please let
me know if this is a problem or if there is any cost associated with this request. Thank you.

Sincerely,

*Phyllis J Mitchell*

Phyllis J. Mitchell
Civil Rights Advocate

Appendix I

## MEMORANDUM

CASE NAME: Stem v. Haddad Toyota Pontiac Buick
DOCKET NO: 032301468
EEOC NO: 16CA301828
NUMBER OF EMPLOYEES: 25+
INVESTIGATOR: Karen Dome

### RE:   RECOMMENDATION FOR DISMISSAL OF COMPLAINT
### DATE: May 25, 2004

### ISSUE(S) INVESTIGATED:

On May 2, 2003, Complainant filed a charge alleging that Respondent discriminated against him by subjecting him to unequal terms and conditions, denying him a reasonable accommodation and wrongfully terminating his employment based on his handicap (Bi-Polar Disorder), in violation of M.G.L. c. 151B §4(16) and The Americans with Disabilities Act (ADA).

### SUMMARY OF FINDINGS:

Respondent denies all allegations.  The evidence presented supported Respondent's position that Complainant was not discriminated against on the basis of his disability (Bi-Polar Disorder), subjected her to unequal terms and conditions and/or denied a reasonable accommodation.  The evidence presented supported Respondent's legitimate non-discriminatory reason for terminating Complainant's employment based on Complainant's repeated tardiness. Complainant has failed to produce sufficient evidence of pretext.  Therefore, there is insufficient evidence upon which a fact-finder could form a reasonable belief that the Respondent committed an unlawful practice.


Karen Dome
Investigator

Migdalia Rivera
Supervisor

Appendix J

## THE COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION
### 436 DWIGHT STREET, SUITE 220
### SPRINGFIELD, MA 01103



Mitt Romney
Governor

Kerry Healey
Lieutenant Governor

Eric A. Kriss
Secretary

Dorca I. Gómez
Chairwoman

Cynthia A. Tucker
Commissioner

Walter J. Sullivan, Jr.
Commissioner

July 1, 2004

Phyllis J. Mitchell
Massachusetts Office on Disability
One Ashburton Place, Room 1305
Boston, MA 02108

      RE:   Stern v. Haddad Toyota Pontiac Buick
      NO:   03-23-01468

Dear Ms. Mitchell:

      You are hereby notified the Commission has received your appeal in the above-referenced matter. A preliminary hearing has been scheduled for September 29, 2004 at 11:00 a.m., in our Springfield office, 436 Dwight Street, Suite 220, Springfield, MA 01103.

      Please bring any additional information you wish to present to the Commission in support of your appeal.

      If the Complainant is unable to attend, the Investigating Commissioner may allow the Complainant to submit the appeal in writing. You must receive permission at least 48 hours prior to the scheduled preliminary hearing date. If the respondent is unable to attend, no continuance will be granted.

Very truly yours,

Migdalia Rivera
Compliance Officer III

cc:   John C. Barker, Esquire
      Michienzie & Sawin LLC
      745 Boylston Street, 5th floor

Appendix K

The Commonwealth of Massachusetts
Commission Against Discrimination
436 Dwight Street, Rm. 220, Springfield, MA 01103

September 29, 2004

Phyllis J. Mitchell
Massachusetts Office on Disability
One Ashburton Place, Room 1305
Boston, MA 02108

RE: Scott Stern Vs. Haddad Toyota Pontiac Buick
MCAD DOCKET NO: 03SEM01468

Dear Scott Stern:

On September 29, 2004 a preliminary hearing was held regarding the above reference
complaint to consider the Complainant's appeal of lack of probable cause finding issued
in this Complaint on May 27, 2004.

Based upon information presented at the appeal hearing and a review of the evidence
adduced in investigation, I have determined that the Lack of Probable Cause finding in
this case is affirmed. This means that investigation and appeal evidence fails to establish
sufficient   evidence to determine that an unlawful act of discrimination has been
committed.

Very truly yours,

Cynthia Tucker
Investigating Commissioner

cc:
John C. Baker, Esquire
Michienzie & Sawin LLC
745 Boylston Street, 5th Floor
Boston, MA 02116

Appendix L

## DISCRIMINATION COMPLAINT
## MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEOC

FEPA:  03-23-01468            FILING DATE: 5/2/03
EEOC NO.: 16CA301828         VIOLATION DATE: February 3, 2003

**RECEIVED**

NAME OF AGGRIEVED PERSON OR ORGANIZATION:
Scott Stern                 TELEPHONE NUMBERS:          MAY 02 2003
400 West Main Street        HOME: (413) 664-7805
North Adams, MA 01247       BUSINESS:                   COMMISSION AGAINST
                                                        DISCRIMINATION/SPRINGFIELD

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY OR
STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:
Haddad Toyota Pontiac Buick.     TELEPHONE NUMBER:
130 Pittsfield-Lenox Road        (413) 445-4535
Pittsfield, MA 01202             NO. OF EMPLOYEES: 25+

CAUSE OF DISCRIMINATION BASED ON: Handicap

Shortly after being hired in April 2002, continuing on a ongoing basis until February 3, 2003, Haddad Dealership discriminated against me by subjecting me to unequal terms and conditions, denying me of a reasonable accommodation and wrongfully terminating me on the basis of my handicap (Bi-Polar Disorder) in violation of M.G.L. c.151B §4, ¶(16), and Americans with Disabilities Act (ADA).

THE PARTICULARS ARE:
1. Haddad Dealership hired me on or about the last week of April 2002 as a sales/ leasing representative. I have received high scores in customer service and my work performance has always been satisfactory.
2. During the time I worked at Haddad I was also subjected to very unfair and unequal treatment. When I would call and let them know I was running late or showed up late, David Michael Coggins and /or James Salvie would tell me to return home or not show up at all and I would be suspended for the weekend. Other co-workers would show up late or forget to clock in at all and not be penalized or reprimanded for it. There were also several occasions were my commission on the sell of a vehicle or even my customers were given to other salesmen by James Salvie. I believe he purposely did this to effect my sales and work flow production and create another possible excuse to terminate me. This also affected me financially as it detrimentally affected my wages.
3. David Micheal Coggins would also refer to me as "crazy" in Saturday sale meetings and occasionally around other employees.
4. Because of my disability (Bi-Polar Disorder) I frequently had difficulties arriving to work on time. On or about November 26, 2002 a meeting was held to discuss my tardiness. Present at the meeting were David Michael Coggins (General Manager), James Salvie (General Sales Manager), Tim Cardillo (Sales Manager), Joseph Scibelli (Used Car Manager), and myself. I notified them of my condition, and it was at this time I was asked to disclose exactly what my condition was to all the managers present. Although I felt pressured, and was hesitant to tell them, I did so. At this time I presented my managers with a note from my doctor that stated that 'my employer should work with me being the fact that I was showing signs of improvement.'
5. I informed David Michael Coggins that under the American with Disabilities Act I was entitled to receive reasonable accommodations from my employer. All I requested was a

*Appendix L*

few minutes of flextime incase I ran late at the start of my shifts. David Michael Coggins refused to make any accommodations what so ever.

6. On or about the last week of February 2003, James Salvie and Tim Cardillo had a meeting with me in which James Salvie acknowledged and stated that although it was against his better judgment, he would allow me to up to fifteen minutes to be late to work.

7. A week later, on February 3, 2003, I arrived at work 6 minutes late. I was getting a car ready to deliver to a customer. This particular customer was unwilling to pay the $160 fee Haddad charges as a documentation fee. James Salvie is always upset when a customer refuses to pay this fee, and I believe he became infuriated with this, and after learning I was 6 minutes late, he used that excuse to terminate me.

8. I believe Haddad dealership subject me to unequal terms and conditions, denied me reasonable accommodation and wrongfully terminated my employment based on my disability (Bi-Polar Disorder).

I ALSO WANT THIS CHARGE FILED WITH EEOC:  XX
I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.

I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

*Scott Stern*

Scott Stern

SWORN TO AND SUBSCRIBED BEFORE ME THIS DAY OF MAy 1        , 2003.

NOTARY PUBLIC: *Cynthia J Seed*

My Commission Expires: 10/2/09

**RECEIVED**

**MAY 0 2 2003**

COMMISSION AGAINST
DISCRIMINATION/SPRINGFIELD

Appendix M

APPENDIX 4

FAX COVER SHEET

MASSACHUSETTS
COMMISSION AGAINST
DISCRIMINATION
SUITE 220

FROM: _____

Massachusetts Commission
Against Discrimination
FAX   (413) 784-1056

I think I was on
the way out on
11/25/02 when I
so just that I
called WMAD over
treatment. This is the initial Fax.

*FAX NOTE*

3 transmission co...
nded to he for th...
are not the inter...
the contents...
telecopy in err...
he retrieval of t...

YES IN TRA...
5/5962145

EMPLO WMY

FACT SHEET

AP/DISABILITY

DISABILITY OF

...its General Laws Chapter 151B, Section 4; 804 CMR 3.01

Under Massachusetts' Handicap Law, it is illegal for an employer to discriminate against an individual because of his or her disability. The law protects people who are disabled, as well as people who are perceived to be disabled, from discrimination in employment. Other provisions of the Handicap Law prohibit discrimination on the basis of disability in housing, public accommodations, and credit.

Disabilities covered...

APPENDIX M

## REASONABLE ACCOMMODATION

The Human Rights Law is designed to ensure that qualified applicants obtain and maintain jobs regardless of disability. An employer or applicant must be able to do the essential functions of the job with or without reasonable accommodation. The employer may be required to provide such accommodation.

Examples of reasonable accommodations are:

- Modifications to the worksite, work area, installation of wheelchair access ramps, grab bars, telephone amplification, or other equipment (TDD/TTY), changing the location of an employee's office.
- alternative methods for accomplishing the essential functions of job (for example, allowing a job to be done in part at home, and 4) the nature and cost of the accommodation, and other similar factors.

The employer has a right to provide her or his own accommodation, or to seek outside funding for an accommodation that might impose undue financial hardship on the employer.

## PRE-EMPLOYMENT INQUIRIES

An employer may ask an applicant about her or his ability to perform a job for which the applicant is applying. For example, if a position to be filled requires an employee to operate a jackhammer, it is the employer's responsibility to have a clearly defined position, and to limit pre-employment questions to those that pertain to the job.

The following questions which often appear on pre-employment forms and applications are designed to elicit an applicant's disability status. The only instance in which an employer may ask such questions:

- Do you have any job-related handicap?    Lawful
- Do you have any physical handicap which would prevent you from doing the job?    Unlawful
- Have you ever been hospitalized?    an inquiry
- Have you ever received Workmen's Compensation?
- Do you have any physical handicap, disease, or disability that should be considered in assigning you to work?
- Have you ever received psychiatric treatment?

## TEST SELECTION AND ADAPTATION

Like other employment criteria, qualification tests must measure only those abilities that are necessary to perform essential job functions.

(over)

Page 2

Appendix N

**42 USCS § 2000a-6**

**§ 2000a-6. Jurisdiction; exhaustion of other remedies; exclusiveness of remedies; assertion of rights based on other Federal or State laws and pursuit of remedies for enforcement of such rights**

(a) The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this title [42 USCS §§ 2000a—2000a-6] and shall exercise the same without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law.

(b) The remedies provided in this title [42 USCS §§ 2000a—2000a-6] shall be the exclusive means of enforcing the rights based on this title, but nothing in this title [42 USCS §§ 2000a—2000a-6] shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this title [42 USCS §§ 2000a—2000a-6], including any right to equal treatment, or ordinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right.

(July 2, 1964, P.L. 88-352, Title II, § 207, 78 Stat. 245.)

**RESEARCH GUIDE**

**Federal Procedure:**
6 Fed Proc L Ed, Civil Rights §§ 11:98, 115, 132, 314, 341, 343, 347.

**Am Jur:**
4 Am Jur 2d, Alternative Dispute Resolution § 40.

**Forms:**
12 Am Jur Pl & Pr Forms (Rev), Fraternal Orders and Benefit Societies, Form 92.

**Annotations:**
Criminal liability, under 18 USC §§ 241, 242, for depriving, or conspiring to deprive, a person of his civil rights—Supreme Court cases. 20 L Ed 2d 1454.

Actionability under Federal Civil Rights Acts of Section 201(b)(1) and related provisions prohibiting discrimination because of complaining party's association with persons of different race, color, or the like. 6 ALR Fed 973.

Validity, construction, and application of Section 201(b)(2) and related provisions of the Civil Rights Act of 1964 (42 USC § 2000a(b)(2)), prohibiting discrimination or segregation in inns, hotels, motels, or other establishments providing lodging to transient guests. 7 ALR Fed 450.

Validity, construction, and application of § 201(b)(2) and related provisions of the Civil Rights Act of 1964 (42 USC § 2000a(b)(2)), prohibiting discrimination or segregation in restaurants, cafeterias, and other food facilities principally engaged in selling food for consumption on the premises, and in gasoline stations. 10 ALR Fed 220.

**Law Review Articles:**
Calhoun. The Thirteenth and Fourteenth Amendments: Constitutional Au-

---

thority for Federal Legislation Against Private Sex Discrimination. 61 Minn L Rev 313.

**INTERPRETIVE NOTES AND DECISIONS**

1. Nonexhaustion provision
2. Exclusive remedy provision
3. Removal
4. Pleading
5. Class action
6. Injunctions

**1. Nonexhaustion provision**

Proviso of 42 USCS § 2000a-6(a) regulating exhaustion of administrative remedies requirement does not do away with the written notice to state or local agency requirement of 42 USCS § 2000a-3(c). Harris v Ericson (1972, CA10 NM) 457 F2d 765.

**2. Exclusive remedy provision**

"Exclusive remedy" provision of § 207(b) of Civil Rights Act of 1964 (42 USCS § 2000a-6(b)) does not pre-empt every other mode of protecting federal "right" here asserted. Where protection to those persons who had long been subject to criminal conspiracy provisions of civil rights statutes—whether his faculties are subject to Act; but hindrance operating in fashion of Ku Klux Klan by using violence against Negroes for having received service at other Negroes from seeking service there on same basis as white citizens, are not given protection against criminal prosecution, by Civil Rights Act of 1964 (42 USC §§ 2000a et seq.), for violating their "right" of citizen which were designed to be protected by civil rights statute in 18 USC § 241, which penalizes conspiracy to interfere with citizen's right or enjoyment of any right or privilege secured by Constitution or laws of United States. United States v Johnson (1966) 390 US 563, 20 L Ed 2d 132, 88 S Ct 1231.

Indictment under 18 USCS § 241 for conspiracy to deprive Negro citizens of equal public accommodation rights barred by the exclusive remedies provision of subsec. (b) of 42 USCS § 2000a-6. United States v Guest (1964, MD Ga) 246 F Supp 475, revd on other grounds (1966) 383 US 745, 16 L Ed 2d 239, 86 S Ct 1170.

**3. Removal**

Allegation of state trespass action in derogation of rights protected by 42 USCS § 2000a, in light of the Hamm abstention doctrine, entitle pleader to removal to district court. Georgia v Rachel (1966) 384

US 780, 16 L Ed 2d 925, 86 S Ct 1783 (criticized in Davis v Glanton (1996, ED Pa) 921 F Supp 1421).

Prosecution under Florida trespass laws, authoritative statement of precisely existing in restaurant or other public areas covered by 1964 Civil Rights Act, can no longer be maintained when racially based; therefore, order of district court upon petition for removal, remanding cases to state court, must be vacated and the case remanded to the district court for hearing as to the purpose for the arrests and prosecution. Robinson v Florida (1963, CA5 Fla) 345 F2d 133.

**4. Pleading**

In private action under 42 USCS § 2000a-6, plaintiff is not required to allege pattern of conduct required under other subdivisions where defendant has engaged in any act or practice prohibited by Title II of Civil Rights Act of 1964 (42 USCS §§ 2000a et seq.) is sufficient. Hughes v Marc's Big Boy (1979, ED Wis) 479 F Supp 834.

**5. Class action**

Named person had right to proceed by class action for enforcement of rights contained in title II of 1964 Civil Rights Act, and court had jurisdiction to entertain a class action for enforcement of such rights. Lance v Plummer (1965, CA5 Fla) 353 F2d 585, 9 FR Serv 2d 23a.32, cert den (1966) 384 US 929, 16 L Ed 2d 532, 86 S Ct 1444, reh den (1966) 384 US 994, 16 L Ed 2d 1011, 86 S Ct 1883.

**6. Injunctions**

Appellants were denied the right of non-segregated service in a restaurant, afforded by 42 USCS § 2000a(a), and refused to leave the premises; state trespass prosecution was commenced; 42 USCS §§ 2000a-2(c), 2000a-3(a), and 2000a-6(a), taken together, constitute an "expressly authorized" exception to the anti-injunction provisions of 28 USCS § 2283; part-time special deputy sheriff, who used his badge to enforce the state custom of violating an injunctive order of the court by intimidating those who he owed duty to protect, is in privity with his co-conspirators, and a peace officer so long as he be continued such conduct. Lance v Plummer (1965, CA5 Fla) 353 F2d 585, 9 FR Serv 2d 23A.33, Case 6, cert den (1966) 384 US 929, 16 L Ed 2d 532, 86 S Ct 1444, reh den (1966) 384 US 994, 16 L Ed 2d 1011, 86 S Ct 1883.

Appendix O

tion clause selecting Arizona for resolution of disputes between parties where transfer of action would contravene strong public policy interest of local residents in determining whether chain's actions were inimical to goal of ensuring fair housing and equal access to public accommodations. Red Bull Associates v Best Western Int'l (1988, SD NY) 686 F Supp 447.

**5. Remedy**

Substantive rights to public accommodations defined in §§ 201 and 202 of Civil Rights Act of 1964 (42 USC §§ 2000a and 2000a-1) are to be enforced exclusively by injunction. United States v Johnson (1968) 390 US 563, 20 L Ed 2d 132, 88 S Ct 1231.

## § 2000a-2. Prohibition against deprivation of, interference with, and punishment for exercising rights and rights and privileges secured by section 2000a or 2000a-1 of this title

No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right of privilege secured by section 201 or 202 [42 USCS §§ 2000a, 2000a-1,] or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202 [42 USCS §§ 2000a, 2000a-1], or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202 [42 USCS §§ 2000a, 2000a-1].

(July 2, 1964, P. L. 88-352, Title II, § 203, 78 Stat. 244.)

### CROSS REFERENCES

This section is referred to in 42 USCS § 2000a-3.

### RESEARCH GUIDE

**Federal Procedure:**

6 Fed Proc L Ed, Civil Rights §§ 11:98, 108, 115, 132, 314.

**Am Jur:**

4 Am Jur 2d, Alternative Dispute Resolution § 40.
16A Am Jur 2d, Constitutional Law § 540.

**Forms:**

12 Am Jur Pl & Pr Forms (Rev), Fraternal Orders and Benefit Societies, Form 92.

**Annotations:**

Validity, construction, and application of § 201(b)(2) and related provisions of the Civil Rights Act of 1964 (42 USC § 2000a(b)(2)), prohibiting discrimination or segregation in restaurants, cafeterias, and other such facilities principally engaged in selling food for consumption on the premises, and in gasoline stations. 10 ALR Fed 220.

Civil actions removable from state court to Federal District Court under 28 USCS § 1443. 28 ALR Fed 488.

**Texts:**

Antieau, Federal Civil Rights Acts—Civil Practice.

**Law Review Articles:**

Calhoun. The Thirteenth and Fourteenth Amendments: Constitutional Authority for Federal Legislation Against Private Sex Discrimination. 61 Minn L Rev 313.

### INTERPRETIVE NOTES AND DECISIONS

I. IN GENERAL

1. Relation to other federal law

II. IMMUNITY FROM PUNISHMENT [42 USCS § 2000a-2(c)]

2. Generally
3. Retroactivity of provision
4. As basis for habeas corpus
5. As basis for removal
6. Miscellaneous

#### I. IN GENERAL

**1. Relation to other federal law**

Appellants were denied the right of nonsegregated service in a restaurant, afforded by 42 USCS § 2000a(a), and refused to leave the premises; state trespass prosecution was commenced; 42 USCS §§ 2000a-2(c), 2000a-3(a), and 2000a-6(a), taken together, constitute an "expressly authorized" exception to the anti-injunction provisions of 28 USCS § 2283; nor was request to stay state proceedings barred by principles of comity. Dilworth v Riner (1965, CA5 Miss) 343 F2d 226, 9 FR Serv 2d 65B.7, Case 1.

#### II. IMMUNITY FROM PUNISHMENT [42 USCS § 2000a-2(c)]

**2. Generally**

After enactment of Civil Rights Act of 1964 (78 Stat 241), Negroes' conduct in refusing to leave lunch counters which serve interstate travelers but are restricted to white persons cannot be subject of trespass prosecutions, federal or state. Hamm v Rock Hill (1964) 379 US 306, 13 L Ed 2d 300, 85 S Ct 384, reh den (1965) 379 US 995, 13 L Ed 2d 614, 85 S Ct 698.

Under § 203 of Civil Rights Act of 1964 (42 USC § 2000a-2), providing that no person shall punish or attempt to punish anyone for exercising his civil right of access to public accommodations, defendants charged in state court with violation of state criminal trespass laws by remaining in restaurant notwithstanding requests to leave, are not only immune from conviction, but have right not even to be brought to trial. Georgia v Rachel (1966) 384 US 780, 16 L Ed 2d 925, 86 S Ct 1783 (criticized in Davis v Glanton (1996, ED Pa) 921 F Supp 1421).

Persons refused service in a restaurant have limited right to self-help to the extent of remaining quietly in the restaurant and are immune from prosecution for such activities. Dilworth v Riner (1965, CA5 Miss) 343 F2d 226, 9 FR Serv 2d 65B.7, Case 1.

**3. Retroactivity of provision**

Clause (c) of 42 USCS § 2000a-2 operates to immunize nonforcible attempts to gain admittance to, or remain in, establishments covered by 42 USCS § 2000a from prosecution, and state convictions for such activities occurring before the passage of these provisions, but not yet finalized, are abated notwithstanding 1 USCS § 109. Hamm v Rock Hill (1964) 379 US 306, 13 L Ed 2d 300, 85 S Ct 384, reh den (1965) 379 US 995, 13 L Ed 2d 614, 85 S Ct 698.

Civil Rights Act of 1964, forbidding racial discrimination in places of public accommodation and removing peaceful attempts to be served on equal basis in such places from category of punishable activities, abates pending state trespass convictions of Negroes who sought service in racially discriminatory restaurant and, notwithstanding owner's request to leave, continued to wait quietly outside until they were arrested. Blow v North Carolina (1965) 379 US 684, 13 L Ed 2d 603, 85 S Ct 635.

Conviction under Georgia antitrespass act for failure to leave premises upon request did not violate 42 USCS § 2000a-2; provisions of this section cannot be given retroactive application to violations of the Georgia statute which occurred prior to its enactment. Mack v Connor (1964) 220 Ga 450, 139 SE2d 286.

Convictions of Negro defendants for violation of Georgia antitrespass act in refusing to leave restaurant after being requested to leave were vacated and the prosecutions dismissed, notwithstanding that the offenses charged against defendants and convictions therefor were obtained prior to the passage of this Act. Bolton v State (1965) 220 Ga 632, 140 SE2d 866.

**4. As basis for habeas corpus**

By analogy to the Hamm "pending case" abatement decision, a "pending conviction" (i.e., one in which the sentence has not yet been completely served) under state trespass law overturned as an unconstitutional and null conviction on habeas corpus proceedings. Tolg v Grimes (1966, CA5 Ga) 355 F2d 92, cert den (1966) 384 US 988, 16 L Ed 2d 1005, 86 S Ct 1887; contra Mack v Connor (1964) 220 Ga 450, 139 SE2d 286.

Petitioner in habeas corpus proceedings is entitled to a federal evidentiary hearing on allegation that state subjected him to prosecution for activities protected by 42 USCS § 2000a-2 where the state court did not resolve the actual issue nor did it mention petitioner's activity or the activities of those accompanying him. Wyche v Hester (1970, CA5 La) 431 F2d 791, cert den (1971) 401 US 974, 28 L Ed 2d 323, 91 S Ct 1192.

**5. As basis for removal**

Defendants charged with violations of state antitrespass statute for refusal to leave a public eating place when requested to do so were entitled to re-

EEOC Form 161 (3/98)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

---

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  Scott Stern<br>400 West Main Street<br>North Adams, MA 01247 | From:  **Boston Area Office**<br>**John F. Kennedy Fed Bldg**<br>**Government Ctr, Room 475**<br>**Boston, MA 02203** |

☐ On behalf of person(s) aggrieved whose identity is
  CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16C-2003-01828 | **Anne R. Giantonio,**<br>**Intake Supervisor** | **(617) 565-3189** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

---

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

On behalf of the Commission

_____                    APR  0 2005

**Robert L. Sanders,**
**Area Office Director**                                      *(Date Mailed)*

Enclosure(s)

cc:  **HADDAD TOYOTA PONTIAC BUICK**
   **130 Pittsfield-Lenox Road**
   **Pittsfield, MA 01202**

APPENDIX Q



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Boston Area Office

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

April 11, 2005

RE: Charge No. 16C-2003-01828

Scott Stern
400 West Main Street
North Adams, MA.   01247

Dear Mr. Stern:

This is in response to your telephone call on 4/8/2005 requesting the name of the person who conducted the review of your file.  The person is Joseph Alvarado, State & Local Manager, EEOC, 33 Whitehall Street, 5th Floor, New York, NY.  His telephone number is (212)336-3640.

I hope this information is helpful.

Sincerely,

Anne Giantonio
Supervisor



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, MA 02203
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

**April 18, 2005**

Scott Stern
400 West Main Street
North Adams, MA 01247

Dear Mr. Stern:

This is in response to your letter dated April 9, 2005, concerning the charge of employment discrimination you filed against Haddad Toyota Pontiac Buick (MCAD Docket No. 032301468, EEOC Charge No. 16C-2002-00212, formerly 16CA301828).

Under the terms of a worksharing agreement between the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC), the MCAD had initial responsibility for investigating your charge. Although the MCAD dual-filed your charge with the EEOC to protect your federal suit rights, our worksharing agreement with the MCAD provides that the EEOC will not initiate a duplicate investigation of cases being investigated by the MCAD. Consequently, the EEOC held your charge in suspense pending completion of the MCAD's investigative process.

On May 27, 2004, the MCAD issued a finding that the evidence did not support your allegations of employment discrimination. You appealed the dismissal of your charge and on September 29, 2004, the MCAD issued a decision sustaining the dismissal. The EEOC conducted a substantial weight review of the findings on November 17, 2004, and concurred with the MCAD's determination. As a result, on April 6, 2005, you were issued a determination letter by the EEOC which included a notice of your right to bring a private lawsuit in federal district court within 90 days of your receipt of the determination.

I hope this information is helpful to you.

Sincerely,

Robert L. Sanders, Director
Boston Area Office

April 8, 2005

Mr. Robert Sanders
Area Office Director
Boston Area Office, Equal Employment Opportunity Commission
John F. Kennedy Federal Building
Government Center, Room 475
·Boston, Massachusetts 02203

Dear Mr. Sanders,

I am in receipt of the United States Equal Employment Opportunity
Commission's Notice of Rights and Dismissal of the action of Stern
v. Haddad Toyota Pontiac Buick.

I adamantly and wholeheartedly disagree with the decision to dismiss
this action.

For several reasons I implore you to review this case further and
examine the evidence, and the statements of Phyllis Mitchell, my
advocate at the Massachusetts Office on Disability.

I believe that this case should not be dismissed, and I am hereby
notifying the Equal Employment Opportunity Commission that I am
appealing this egregious decision.

Let me point out some facts:

Fact #1:

On November 27, 2002, I met with management and presented a note from
Dr Michael Perlman, received from Dr. Perlman the same day, of which
management was aware that I had this appointment, in Northampton.
This doctor's note clearly lists what my diagnosis is and who my doctor
is.

David Michael Coggins, James Salvie and Timothy Cardillo each refer to
a note that was "crumpled" and their statements that no proof or
documentation being presented to corroborate my bipolar disorder is
inconsistent with their admission that a note, which was "crumpled" and
stated "work with Scott" existed. There was only one note that
incorporated the words "work with Scott".

Please find enclosed a copy of this note that was received from my
doctor, on November 27, 2002, and presented to Haddad Toyota Pontiac
Buick, Inc. Respondent David Michael Goggins, in his response by
counsel states: "allegedly bi-polar, and that he showed Respondent the
referenced note, allegedly from a doctor". This is that note. There
is no question that note is from a doctor. It also corroborates the
fact that Complainant-Scott Stern does have a disability. Please note
the date on this doctor's order/note: Even though I prove that I have
a disability, management requests that I get further documentation from
my doctor regarding my condition and verifying that it does affect my
ability to arrive to work on time.
Dr Michael Perlman, M.D. and discussed the issue of my bipolar disorder
and what my employer had requested, and how my bipolar affected my

- 1 -

work. Dr. Perlman provided the note, which I have enclosed for your convenience a copy of the same. This note clearly lists that:

    a) Dr. Perlman is a Psychiatrist
    b) Scott Stern has "bipolar disorder"
    c) Dr. Perlman encourages my employer to "work with him as he continues to improve"
    d) The note is dated, for November 27, 2002.
    e) On November 26, 2002 I was instructed to get a note and, did as I was instructed by my employer.

Prior to the meeting with Management on November 27, 2002, I removed, from my wallet, an order from my Doctor stating that I had a disorder called "bipolar disorder". This meeting took place Timothy Cardillo merges two separate incidents into one event.

The first note, which was referred to as "crumpled" and illegible, I have also enclosed for your perusal. This Doctor's note happens to be from the same doctor and it clearly states what my diagnosis is. Timothy Cardillo and Michael Coggins mis-state facts and events. This note was viewed on November 26, 2002 and it did involve a note that was tattered, but it was, and is, quite legible. This note also corroborates who my doctor is (I still have Dr. Perlman as my doctor) and what my condition is. Whether it is this note dated, or the second note of November 27, 2002 both clearly state and show who my doctor is and what my diagnosis is. The doctor's note discussed on November 27, 2002 is that which you have before you. One event occurred prior to November 27, 2002; the next event occurred on November 27, 2002. Two separate doctor notes. The first meeting I provided a doctor's order for bloodwork, similar to the one enclosed dated December 18, 2000. All of Dr Perlman's bloodwork orders state the procedure to be performed, the diagnosis, and the doctor's name, address and telephone number that can be contacted. This note describes in clear terms the diagnosis as bipolar disorder and it also describes the doctor's name, address and telephone number like the note that was presented on November 27, 2002. It was the meeting with a note similar to this the one dated December 18, 2000.

Fact #2:

Timothy Cardillo, Sales Manager for Haddad Dealerships, on August 13, 2003, stated that:

    a) "We requested Scott have his Doctor write a signed letter as to communicate to us that his tardiness was associated with his disease"
    b) "Scott never produced a signed documentation or any real proof of his disease"
    c) "Scott did take out of his wallet a crumpled piece of paper that said "please work with Scott"

A doctor's note was presented, it states my diagnosis, certainly the fact that he acknowledges this "please work with Scott" corroborates this note you have before you. I am sure you can clearly read who my doctor is and what my diagnosis is. Obviously, if Timothy Cardillo can read and paraphrase the actual statement to "please work with Scott", it should be fairly obvious to a reasonable person that he could read who my doctor is and what the diagnosis is. These two facts are as plain as day, and are enclosed for your review and analysis.

- 2 -

Fact #3:

James Salvie, General Sales Manager for Haddad Dealerships, on August 14, 2003 stated that:

    a) "A note was presented that said "work with Scott"

James Salvie statements corroborates both my statement and Timothy Cardillo that a note was presented to them that stated "please work with Scott" Likewise, if James Salvie could read the "work with Scott" statement, it should be fairly obvious to a reasonable person that he could read who my doctor is and what the diagnosis is.

Fact #4

On September 15, 2003, David Michael Coggins swore, under the penalties of perjury, that on page 2 of Respondent's defense dated September 13, 2003,

    Respondent stated several false and inconsistent statements if one compared his statements to the original note from Mr. Stern's Doctor or simply compared the statements one after another.

    1) "Complainant has never shown any proof that he is in fact "bi-polar""
    2) "During a meeting in November or December of last year, Complainant flashed and read a crumpled-up, hand-written note that he claimed was from a doctor, which note allegedly asked Complainant's employer (Respondent) to "work with" Complainant."
    3) "The note did not indicate any diagnosis or identify any disability."
    4) "Complainant would not give the note, or a copy there-of to Respondent, and Respondent could not see the name of the doctor on that note to enable Respondent to verify Complainant's claim concerning his disability"
    5) "To this date, Respondent has received no proof that Complainant was (1) bipolar"

    Obviously if David Michael Coggins, had ample time to read the "work with" statement on this doctor's note, certainly he should have been fairly competent to read who my doctor is, and what my diagnosis is.

    Each of these three defendants corroborate the facts that:

    1) A meeting took place
    2) A Doctor's note was passed around, and each corroborate a singular point of this doctor's note.
    3) Each of the three Respondents had ample opportunity to view said note, and it was not "flashed" as David Michael Coggins asserts in his response.

Fact #5:

    Dr Michael Perlman's note fully:

1) Discloses that it originates from a Doctor, and it is quite
   legible
2) What Doctor Perlman's relationship is to the patient
   (complainant-Scott Stern),
3) What disorder the Complainant(Scott Stern) has (bipolar
   disorder).
4) This same doctor's note encompasses each of the three points
   above and, in addition, clearly states: "I encourage his
   employer to work with him as he continues to improve."

**Fact #6:**

Respondent admits that Complainant did invoke his rights asserted
under the ADA, which corroborate the statement of complainant. When
Complainant asserted his rights, accordingly, he was denied the right
to submit a request for reasonable accommodation. In addition, at this
meeting, my schedule became more stringent in that they changed my day
time shifts to earlier and more frequent early morning shifts, thus
setting me up for a fall, knowing that I had issues, they exacerbated
it by changing my schedule and did not accommodate my disability. They
placed me on probation at the same time that they allowed me to be "up
to 15 minutes late", but no later than 15 minutes. That is not flex
time. It was incredibly unfair and unconscionable that management had
expected complainant to work seven days a week, deny me the right to
visit my three minor children, threaten termination if quota's were not
met, threaten termination if we did not work on Sunday (Contrary to my
court ordered Visitation), denied me the right to modify my schedule to
visit my children, steal my sales leads to allow other employees the
necessary quota to have Sunday off so they could golf at 7:00 a.m. on
Sunday mornings (Pat Cody) and would not be flexible to accommodate my
disability should I run 16 minutes late, or 21 minutes late.

**Fact #7**

Complainant was an excellent salesperson contrary to what David
Michael Coggins asserts in his response. If I were not, why would they
allow me to deliver a vehicle to New Jersey, by personally driving the
vehicle to the intended customer? I also had to drive the customer's
other vehicle back to Massachusetts. In addition on this and several
other occasions, I was granted the authority to execute the documents
for the dealership when delivering the customer's vehicles. This
salesperson sold, on two occasions, two vehicles to two separate
families within a six month period. I am the only salesperson to have
sold two of the most expensive vehicles in the Toyota family of
vehicles (Land Cruisers) which the dealership usually traded to
alleviate its burden of carrying this stock on its inventory, within a
six month period. In July of 2002, I sold 17 vehicles, delivered three
in one day, six or seven in one week!

**Fact #8**

David Michael Coggins denied this individual the opportunity to
formally submit in writing a request for a "reasonable accommodation".
He further asserted that he never received anything, yet the doctor's
note, which each of these defendants corroborate in their own sworn

affidavits, contradicts each of their own statements and further prove that they did receive and handle a doctor's note, more specifically, the note that you have before you. David Michael Coggins, was directly handed the note by me, a note I requested of my doctor earlier that same day. I also had to point out who he is and my diagnosis to him directly. David Michael Coggins personally made a copy of the Doctor's note, and returned the original to me. David Micheal Coggins conspired with the defendant James Salvie and Timothy Cardillo to deprive me of earned commissions, earned special incentives, and add-on commissions. David Michael Coggins contributed to harassing me by sending me home on numerous occasions, underwriting and allowing James Salvie to delete customers and a customer base I was developing. He sought to impair my ability to work by creating an inhospitable, unfriendly and negative atmosphere.

Fact #9

James Salvie created an incredibly hostile work atmosphere and sought, at every possible instance, to deprive me of commissions, of potential customers and literally stole leads to give them to his wife's sisters husband, Pat Cody. He continually harassed me, my work style, criticized me in front of other employees, and forcibly removed me from meetings in front of other employees.

Fact #10

Timothy Cardillo, a part-time police officer for Great Barrington, Massachusetts, allowed another individual (Peter Haven) to threaten me verbally, directly before his person, and did nothing about it, as it occurred. Only afterward, when Tim knew that he was wrong for not stopping the actions of this other employee (Peter Haven) as it occurred. Timothy Cardillo came over only after the incident had transpired and I was humiliated in the showroom, and apologized for this other employee's behavior and his own lack of response to this employee's behavior. He informed me that he had admonished that employee for his actions towards me. This same employee was fired for not showing up to work, and then rehired several weeks later.

Each of these individuals attempt to confuse my doctor's order, retrieved from my wallet, at a separate meeting, prior to November 27, 2002, which was an order for me to obtain bloodwork to monitor medication, and to assert that this note was the note of November 27, 2002. Either note, the note ordering bloodwork or the note of November 27, 2002 establish what I have set forth under Fact #5 above. The diagnosis is also corroborated on the doctor's note requested on November 27, 2002 and presented to management on this same day! It was from the meeting before the meeting of November 27, 2002 that I was requested to get another note from my Doctor, of which I did, on November 27, 2002 and likewise presented this same note on November 27, 2002 to the management of Haddad Dealerships which included David Michael Coggins, James Salvie, and Timothy Cardillo and a fourth individual, named Joseph Scibelli who was not named in the complaint.

Clearly, a reasonable individual would see that they are each providing partially factual, yet partially false testimony.

Fact: Doctor's note that stated "work with Scott"

Falsehood: This Doctor's note did not provide diagnosis or the name of the Doctor.

Falsehood: No Documentation in general was ever presented to the management;   Compare that with each of their statements which identify the "work with Scott" doctor's note.

Falsehood: Scott never provided documentation of his disorder.  Compare that with each of their statements which identify the "work with Scott" doctor's note.

They unknowingly and inadvertently corroborating the fact that a doctor's note was presented.  Specifically, James Salvie and Timothy Cardillo both swear that I never provided "documentation about his bi-polar disorder", yet both describe the note of November 27, 2002 in separately dated affidavits.

Dr. Perlman's note of November 27, 2002 does provide documentation.  Each of the respondents corroborate that there was a note which stated "work with Scott".  There is only one note that had this statement on it. I am providing this doctor's note for your direct review and analysis. Compare this with their statements and you will clearly see that, not only am I right, but that the Massachusetts Commission Against Discrimination failed to enforce my Equal Employment Opportunity rights and my claim against Haddad Dealerships.

There is only one note for November 27, 2002 that was copied, and passed around at the meeting.  David Michael Coggins, James Salvie, and Timothy Cardillo mis-state facts and further provide false affidavits to the Massachusetts Commission Against Discrimination.

I have issue with the fact that the Equal Employment Opportunity Commission did not clearly see that these three individuals did not provide honest and truthful statements to the Massachusetts Commission Against Discrimination and there are inconsistencies within their own statements.  A reasonable person can read this and recognize their inconsistencies and mis-statements.

I have no qualms about filing a lawsuit against Haddad Dealerships in either Federal or State Court.  In that lawsuit, I will also be naming the Massachusetts Commission Against Discrimination for its failure to uphold my rights and claims against Haddad Dealerships. The MCAD clearly denied this individual justice when the evidence against the dealership was conclusive, factual and corroborated by Respondents themselves.

I prefer not to file a lawsuit against the United States Equal Employment Opportunity Commission to secure my rights accorded by both the United States Constitution, Bill of Rights, and the Acts of Congress, including, but not limited to the Civil Rights Acts of 1866, Civil Rights Act of 1871, Civil Rights Act of 1964, and the Americans with Disabilities Act of 1971, and its related amendments citing recent Federal and State law.  The EEOC has failed to uphold the laws it is entrusted to enforce for this citizen of the United States.  I have no reservations about filing a lawsuit against the United States Equal Employment Opportunity Commission.

*APPENDIX*

I am mailing a copy of this letter to my Congressman, my Senator, and expect that I shall receive a response, appropriate to the matter, regarding this issue, within the next several days.

The Courthouse in Springfield, Massachusetts has an inscription on its building, it reads: "Obedience to law is Justice". What is the point of law, if the laws are not going to be enforced by the agencies that are entrusted to enforce them?

I leave that thought with you and hope that you shall take action accordingly to review this egregious decision, and to further reopen this case promptly and expeditiously.

Most Sincerely,

Scott Stern
400 West Main Street
North Adams, Massachusetts 01247

Cc: Senator John Kerry
    Congressman John Olver
    Phyllis Mitchell, Massachusetts Office on Disabilities

Appendix T

Federal statute, [***12] 42 U.S.C. § 2000e-7 (1970), provides: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter." Section 2000h-4 of 42 U.S.C. (1970), which applies to Titles I-XI of the Civil Rights Act of 1964, provides: "Nothing contained in any title of this Act shall [**1198] be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act or any provision thereof." *Gilbert* interpreted 42 U.S.C. § 2000e-2(a)(1) (1970) as not requiring the inclusion of pregnancy-related disabilities in a disability plan; *Gilbert* did not hold that the inclusion of pregnancy-related disabilities violated Title VII. Hence, an interpretation [***13] of G. L. c. 151B, § 4, which required the inclusion of such disabilities in a comprehensive disability plan would not "require . . . the doing of any act which would be an unlawful employment practice" under 42 U.S.C. § 2000e et seq (1970). The major purpose of Title VII was "to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national [*167] origin." *Franks* v. *Bowman Transp. Co.*, 424 U.S. 747, 763 (1976). An interpretation of G. L. c. 151B, § 4, requiring the inclusion of pregnancy-related disabilities in a comprehensive disability plan would impose a higher duty than that existing under present Federal law; such a construction, however, is certainly not inconsistent with the expressed purpose of Title VII of eliminating all practices which lead to inequality in employment opportunity. See *Anderson* v. *Upper Bucks County Area Vocational Technical School*, 30 Pa. Commw. Ct. 103, 108 (1977).

ADA
TITLE VII

Massachusetts Commission Against Discrimination Budget Recommendations

Page 1 of 2

Appendix U



# The Governor's Budget Recommendation
## HOUSE 1A FISCAL YEAR 2005 - Mitt Romney, Governor

Mass.

Where's my Line Item?    GO | Search

**Home**

**Governor's Message**

**Executive Summary**

**Budget Recommendations**

Preamble and Sections 1, 1A & 1B
Judiciary
District Attorneys
Sheriffs
Executive Office
Secretary of State
Treasurer
State Auditor
Attorney General
Ethics Commission
Campaign Finance
Status of Women
Comptroller
Disabled Persons Protection
Administration & Finance
   Administration & Finance
   Developmental Disabilities Council
   Capital Asset Management
   Bureau of State Office Buildings
   Office on Disability
   Teachers' Retirement Board
   Group Insurance
   Public Employee Retirement
   Administrative Law Appeals
   George Fingold Library
   Commission Against Discrimination
   Dept. of Revenue
   Appellate Tax Board
   Human Resources Division
   Civil Service Commission
   Operational Services
   Information Technology
   Educational Quality
Environmental Affairs
Transportation & Construction
Housing/Community Development
Health & Human Services
Library Commissioner
Economic Development
Education
Higher Education
Public Safety
Legislature
Line Item Listing

**Outside Sections**

**Capital Overview**

**Presentations (PowerPoint)**

**Companion Legislation**

## Budget Recommendations

### Executive Office for Administration and Finance

Print

Executive Office for Administration and Finance

**Massachusetts Commission Against Discrimination**
For the operation of the Massachusetts Commission Against Discrimination

Click here for outside sections related to:   Massachusetts Commission Against Discrimination

**Budgetary Direct Appropriations**
*Direct Appropriations*
  1150-5100  Massachusetts Commission Against Discrimination
*Retained Revenues*
  1150-5104  Federal Housing and EEOC Revenue for Closing Discrimination Cases
  1150-5116  Training Fees to Support the Discrimination Prevention Certification Program

**Trust and Other Spending**
  1150-5113  Massachusetts Commission Against Discrimination 50th Anniversary

## CERTIFICATE OF SERVICE

I, Scott Stern, Pro-Se Plaintiff, in this action of Scott Stern v. Haddad Motor Group, Inc.,
et. al., in the United States District Court, Case Number 05-30160-KPN, certify that I
have caused a copy of the foregoing documents

Appendix A; Appendix B; Appendix C; Appendix D; Appendix E; Appendix F; Appendix G;
Appendix H; Appendix I; Appendix J; Appendix K; Appendix L; Appendix M; Appendix N;
Appendix O; Appendix P; Appendix Q; Appendix R; Appendix S; Appendix T; Appendix U;
to be delivered, postage prepaid, United States Postal Service, to the defendants, at their
respective addresses this _8_ day of _August_, 2006.

"Certificate of Service"

Michenzie & Sawin, LLC
Richard Sawin, Resident Agent and Manager
745 Boylston Street
Boston, Massachusetts 02116-2636

Michenzie & Sawin, LLC
John C. Barker
745 Boylston Street
Boston, Massachusetts 02116-2636

Massachusetts Commission Against Discrimination
Cynthia Tucker
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Massachusetts Commission Against Discrimination
James Levinsky,
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Massachusetts Commission Against Discrimination
Migdalia Rivera
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

Massachusetts Commission Against Discrimination
Crystal Borges
436 Dwight Street, Suite 220
Springfield, Massachusetts 01103

## CERTIFICATE OF SERVICE page 2

(By leave of Erin Norris to serve one copy for both defendants)
U.S. Equal Employment Opportunity Commission
Erin Norris
Robert Sanders and Joseph Alvarado, Official Capacities
1801 L. St. N.W.
Washington, D.C. 20507


Equal Employment Opportunity Commission
Robert Sanders.
Defendant, Personal Capacity
Area Office Director
John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, Massachusetts   02203

Equal Employment Opportunity Commission
Joseph Alvarado,
Defendant, Personal Capacity
State and Local Manager
33 Whitehall Street, 5th floor
New York, New York,  10004-2167


to be delivered, postage prepaid, by United States Postal Service, this _____ day of
_____, 2006 to:


United States District Court
1550 Main Street
Springfield, Massachusetts 01103
Attn: Clerk of Courts


Scott Stern
All Rights Reserved without Prejudice
Sui Juris
400 West Main Street
North Adams, Massachusetts 01247

Date of Mailing/Delivery