UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SCOTT STERN, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-30160-MAP |
| | ) | |
| | ) | |
| HADDAD DEALERSHIPS OF THE | ) | |
| BERKSHIRES, INC., ET AL., | ) | |
| Defendants | ) | |

REPORT AND RECOMMENDATION WITH REGARD TO CERTAIN
DEFENDANTS' MOTIONS TO DISMISS (Documents No. 28 and 48)
October 27, 2006

NEIMAN, C.M.J.

Now before the court are two motions to dismiss the complaint of Scott Stern ("Plaintiff"), proceeding *pro se.* The first, filed by Joseph Alvarado and Robert Sanders, both of whom are employees of the Equal Employment Opportunity Commission ("EEOC") (together the "EEOC Defendants"), seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), (5) and (6). The second motion, filed by the Massachusetts Commission Against Discrimination ("MCAD"), Cynthia Tucker, Crystal Borges, James Levinsky and Migdalia Rivera, all of whom are connected with the MCAD, (together the "MCAD Defendants"), seeks dismissal under Fed. R. Civ. P. 12(b)(6). The remaining defendants, Haddad Motor Group, Inc. ("Haddad, Inc."), Timothy Cardillo, James Salvie, and Michael Coggins (all of whom are managers at Haddad, Inc.) (together the "Haddad Defendants"), have not filed dispositive motions and, but for a partial opposition to the two motions to dismiss, remain on the sidelines.

The EEOC Defendants' and the MCAD Defendants' motions to dismiss have

been referred to this court for a report and recommendation. *See* 28 U.S.C. §
636(b)(1)(B). For the reasons which follow, the court will recommend that both motions
be allowed.

## I. STANDARD OF REVIEW

Rule 12(b)(1) entitles a party to seek dismissal of an action for "lack of
jurisdiction over the subject matter." Rule 12(b)(5) provides for dismissal based on
insufficient service of process. And Rule 12(b)(6) allows a defendant to seek dismissal
of an action for "failure to state a claim upon which relief can be granted." On a motion
to dismiss under these rules, the court is required to construe the allegations in favor of
the plaintiff, the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974);
*Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). Moreover, as
applicable here, a *pro se* plaintiff is entitled to liberal construction of his allegations, no
matter how inartfully pled. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. BACKGROUND

The following allegations come from Plaintiff's amended complaint, filed on
January 5, 2006, and "modified" on January 12, 2006.[1] Plaintiff was employed as a
sales and lease representative with Haddad, Inc. from approximately May 1, 2002,
through February 3, 2003. (Amended Complaint ¶¶ 2, 3.) Coggins, Salvie and
Cardillo, too, were employed by Haddad, Inc., respectively, as General Manager,
General Sales Manager, and Sales Manager at its Pittsfield dealership. (*Id.* ¶¶ 4-6.) In

---

[1] Since January 12th, Plaintiff has thrice sought to further amend his complaint
in various ways. Each motion has been denied, the latest by an Electronic Order this
day. That order also dealt with other outstanding, non-dispositive motions.

2

these capacities, each exercised a supervisory role over Plaintiff. (*Id.*) Liberally

construed, Plaintiff's complaint alleges that the Haddad Defendants subjected him to

unfair and unequal treatment, emotional distress, and wrongful termination because of

his disability, *i.e.*, a bipolar disorder. (See generally *id.* at 4-26.)

Plaintiff filed a charge of discrimination with the MCAD against the Haddad

Defendants on May 2, 2003. (*Id.* ¶ 49.) Just over one year later, on May 27, 2004, the

MCAD issued a Lack of Probable Cause determination, essentially finding that there

was insufficient evidence to justify pursuing Plaintiff's charge further. (See *id.* ¶ 58.

See also Document No. 49 ("MCAD's Brief") at 2.) Plaintiff sought review of this

determination within the MCAD; a preliminary hearing was held, but the lack of

probable cause finding was affirmed. (Amended Complaint ¶ 59. See also MCAD's

Brief at 2.) Plaintiff thereafter sought to have the EEOC review the MCAD's decision.

(Amended Complaint ¶ 61.) On or about April 20, 2005, however, Plaintiff apparently

received a letter from Robert Sanders stating that, under the EEOC's worksharing

agreement with the MCAD, the MCAD has initial responsibility for investigating the

charge and, as such, the EEOC would not conduct a duplicate investigation. (See *id.* ¶

62. See also Document No. 29 ("EEOC's Brief") at 2.)

Plaintiff filed the instant action on July 7, 2005. Rather than proceeding solely

against the Haddad Defendants, however, Plaintiff also named the above-noted

employees of both the EEOC and the MCAD, as well as the MCAD itself. In response,

the EEOC Defendants and the MCAD Defendants filed the motions to dismiss presently

before the court.

3

III. D<small>ISCUSSION</small>

Applying the liberal pleading interpretation for *pro se* complaints, Plaintiff's grievance against the EEOC Defendants and the MCAD Defendants is, in essence, that they failed to do their respective jobs.  Thus, Plaintiff asserts both sets of defendants ignored what was, in his view, overwhelming evidence of the unlawful employment practices of the Haddad Defendants.  By not giving this evidence the weight it deserved, Plaintiff continues, the MCAD and the EEOC Defendants failed to uphold their statutory mandates, thereby causing further deprivation of his rights under both federal and state law.

Plaintiff purportedly asserts his claims against the EEOC Defendants and the MCAD Defendants pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Articles I, V, X, XI and XIV of the Massachusetts Constitution.  The court will separately address the EEOC Defendants' and MCAD Defendants' motions to dismiss and conclude with a discussion of the Haddad Defendants' "partial opposition" with respect thereto.  In the end, the court will recommend that both motions to dismiss be allowed.

A.  The EEOC Defendants' Motion

As indicated, The EEOC Defendants seek dismissal of Plaintiff's complaint for lack of subject matter jurisdiction, failure to state a claim on which relief can be granted, and insufficient service of process.  For its part, the court has determined that the statutes and constitutional provisions Plaintiff invokes simply do not create a cause of

action against the EEOC Defendants for individuals in Plaintiff's position.  Accordingly, the court will confine its analysis to that part of the EEOC Defendants' motion arising under Rule 12(b)(6).[2]

### 1. Title VII and the ADA

A statutory right of action may be created by Congress either expressly or impliedly.  Whether a cause of action in fact exists is a matter of statutory construction. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).

As applicable here, Title VII, specifically 42 U.S.C. § 2000e-5(f), expressly provides for three types of civil actions with respect to EEOC matters.  First, the EEOC itself "may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge [of discrimination]."  42 U.S.C. § 2000e-5(f)(1).  Second, in cases involving governmental respondents, the EEOC can "refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court."  *Id.*  Third, in addition to having the option of intervening as a plaintiff in either of the two aforementioned actions, an aggrieved employee may file suit in his own right against an allegedly discriminating employer.  *Id.*  The employee's right to sue ripens only after (a) the EEOC dismisses the charge, or (b) one hundred and eighty days go by from the filing of the charge without

---

[2]  Plaintiff's memorandum in opposition to the EEOC Defendants' motion to dismiss (hereinafter "Pl.'s EEOC Brief") has been of little use to the court.  Much of his opposition is taken up by random snippets from federal case law without any attempt at coalescing those excerpts into an argument.  While, as indicated, the court is mindful of its obligation to accord a generous construction to the papers filed by *pro se* litigants, it does not consider itself bound to organize Plaintiff's random collection of quotations into a coherent argument.

the EEOC or the Attorney General commencing a civil action.  *See id.*

As is evident, there is no mention in this statutory scheme of any right of an aggrieved employee to sue the EEOC itself in the event the employee does not like the way in which the claim against his employer has been handled.  In other words, the statute provides a federal vehicle for aggrieved employees to proceed against their employers directly, not a means to proceed against the enforcement authority itself as Plaintiff attempts to do here.

Just as there is no explicit cause of action against the EEOC created by Title VII, there is no implied cause of action upon which Plaintiff can rely.  As described, the statutory scheme only allows an aggrieved employee, who is dissatisfied with the way the EEOC has resolved his claim, to file a private suit against the allegedly discriminating employer.  *See* 42 U.S.C. § 2000e-5(f)(1).  The Supreme Court addressed the purposes of this arrangement in *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355 (1977), quoting as follows from the Conference Committee Report:

> The retention of the private right of action, as amended, . . . is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission . . . does not act with due diligence and speed. Accordingly, the provisions . . . allow the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.
>
> It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC. . . .  However, as the individual's rights to redress are paramount under the provision of Title VII it is necessary that all avenues be left open for quick and effective relief.

*Id.* at 365-66.  As is clear from this exposition, Congress was aware of the possibility that an aggrieved employee might not be satisfied with the manner in which the EEOC determined his claim.  Congress was also aware of the importance of the employee's right to redress.  This awareness, when considered in conjunction with the enforcement arrangement set out in the statute, demonstrates that Congress did not intend to create an implied right of action against the EEOC itself for individuals in Plaintiff's position.  To the contrary, an individual who is dissatisfied with the EEOC's processing of his claim may seek vindication of his rights in a *de novo* private suit against his employer.

In short, Title VII does not explicitly or implicitly provide for the claim that Plaintiff seeks to assert against the EEOC Defendants.  Moreover, since the ADA, upon which Plaintiff also relies, adopts "[t]he powers, remedies, and procedures" of Title VII, 42 U.S.C. § 12117(a), it likewise does not provide for the type of claim he wishes to pursue here.

2.  The Massachusetts Constitution

Plaintiff alleges as well, in Count V of his complaint, that the EEOC Defendants violated various provisions of the Massachusetts Constitution, although he offers little clarity to this claim.  Rather, Plaintiff simply alleges that the EEOC Defendants conspired to "preclude the right of the plaintiff, and others similarly situated, from having their meritorious claims adjudicated properly," (Amended Complaint ¶ 104), which claim the court interprets, at best, as a denial of due process.  Plaintiff, however, does not allege that the EEOC Defendants departed from the EEOC's statutory requirements.  Rather, he asserts that the EEOC's procedures themselves are the

7

source of his alleged injury, in particular, the EEOC's practice of conducting "substantial weight findings" and of entering into "work share agreements" with counterpart state agencies.  (See *id.* ¶¶ 62, 104.)

These assertions, in the court's opinion, fail to state a claim upon which relief can be granted.  Simply put, Plaintiff fails to take into account that, to comply with its statutory mandate, the EEOC is either bound or permitted to employ the very practices to which he objects.  For example, the EEOC "[i]n determining whether reasonable cause exists," is directed by statute to "accord substantial weight to final findings and orders made by State or local authorities."  42 U.S.C. § 2000e-5(b).  The EEOC is also statutorily authorized to "cooperate with State and local agencies charged with the administration of State fair employment practices laws" and "may enter into written agreements . . . under which [it] shall refrain from processing a charge in any cases or class of cases specified in such agreements."  42 U.S.C. § 2000e-8(b).  The EEOC's employment of these very practices in the case at bar, rather than reflecting any dereliction of duty, shows compliance with the governing statute as well as appropriate deference to the findings of the state agency, here, the MCAD.

Moreover, as described, the EEOC's enforcement procedures have not prejudiced Plaintiff's right to bring his claims to court.  That right is fully retained under the statute.  *See* 42 U.S.C. 2000e-5(f)(1).  Indeed, at the same time as Plaintiff was notified that the EEOC would not be pursuing  his claim, he was notified in writing of his right to sue his former employer in court.

Oddly enough, it may well be that Plaintiff's direct claims against the EEOC

8

Defendants are grounded in a misunderstanding of the EEOC's written notification to him, causing him to interpret his right to sue his employer as a right to sue the EEOC and its employees.  (See, *e.g.*, Pl.'s EEOC Brief at 11.)  The EEOC's Notice of Suit Rights, of course, unambiguously states that Plaintiff may file a lawsuit against the "respondent(s)," *i.e.*, the Haddad Defendants, under federal law based on his charge of discrimination in federal or state court.

In any event, given the retention of the right to sue and absent any allegation of improper conduct by the EEOC Defendants, it is impossible to conclude that the EEOC's policies, carried into effect by the individual defendants named herein, operated in any way to deny Plaintiff his right to due process.  For that reason, as well as the other reasons articulated above, the court will recommend that Plaintiff's claims against the EEOC Defendants be dismissed pursuant to Rule 12(b)(6) for failing to state claims upon which relief can be granted.

B.  The MCAD Defendants' Motion

The court begins its discussion of the MCAD Defendants' motion with a warning to Plaintiff about his need to follow the court's rules.  It then turns to the substantive arguments the MCAD raises.

1.  Plaintiff's Compliance with Court Rules

In response to the MCAD Defendants' motion to dismiss, Plaintiff filed a memorandum running to twenty-four pages, along with a "supplemental" memorandum of fourteen pages, amounting, in effect, to a thirty-eight page memorandum.  Plaintiff filed these two documents despite the court's order of August 16, 2006, denying his

request for leave to file a memorandum in excess of twenty pages, thirty-three pages at the time. *See also* Local Rules of the United States District Court for the District of Massachusetts, Local Rule 7.1(B)(4) ("***Memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed twenty (20) pages, double spaced.***") (emphasis in original).   This followed a previous denial in July 2001 of Plaintiff's request to file a memorandum of fifty-three pages.  The court explained that Plaintiff's memorandum was both excessive and prolix.

Unfortunately, the latest pair of submissions suffer from the same deficiencies as his previous papers.  Most troubling is the fact that Plaintiff has submitted what amounts to a thirty-eight page memorandum in disregard of the court's earlier order and has done so by way of a most transparent attempt at trickery, *i.e.*, filing one memorandum in two parts.  Notwithstanding, the court has allowed Plaintiff's motion to file both parts to move the case along.  Nonetheless, the court admonishes Plaintiff that sanctions could be imposed in the future if he continues to play fast and loose with the court's rules and orders.

2. Substantive Issues

Plaintiff's allegations against the MCAD Defendants are identical to those he raises against the EEOC Defendants, without any effort on his part to draw either statutory or constitutional distinctions.  And like the EEOC Defendants, the MCAD Defendants seek dismissal of the complaint under Rule 12(b)(6) for failure to state a claim against them upon which relief can be granted.  For many of the same reasons set forth above, therefore, Plaintiff's claims against the MCAD necessarily fail.  One

10

particular argument, however, needs further explanation, namely, the MCAD

Defendants' contention that the preliminary MCAD hearing which upheld the

investigator's lack of probable cause determination and which is the focus of Plaintiff's

complaint, is not itself subject to judicial review.  The court agrees.

While Plaintiff has not technically sought judicial review pursuant to chapter 30A

of the Massachusetts General Laws, he is, in substance, asking this court to find that

the MCAD's determination was erroneous.  Chapter 30A comprises the state

Administrative Procedure Act and provides, in applicable part, that "any person or

appointing authority aggrieved by a final decision of any agency in an adjudicatory

proceeding . . . shall be entitled to judicial review thereof."  Mass. Gen. L. ch. 30A, §

14. An "adjudicatory proceeding" is defined as a "proceeding before an agency in which

the legal rights, duties, or privileges of specifically named persons are required by

constitutional right or by any provision of the General Laws to be determined after

opportunity for an agency hearing."  Mass. Gen. L, ch. 30A, § 1(1).  Specifically

excluded from this definition are "proceedings solely to determine whether the agency

shall institute or recommend institution of proceedings in a court."  *Id.*

As the MCAD Defendants point out, the investigation and preliminary hearing it

conducted in connection with Plaintiff's charge of discrimination fall squarely into this

latter category, *i.e.,* a proceeding "to determine whether the agency shall institute or

recommend institution of proceedings in court."  Chapter 151B, section 5, which

governs MCAD procedures, provides that, where an MCAD  commissioner has

determined after an investigation "that no probable cause exists for crediting the

11

allegations of the complaint, the commission shall . . . cause to be issued and served upon the complainant written notice of such determination."  Mass. Gen. L. ch. 151B, § 5.  Within ten days after such service, the statute continues, "the said complainant . . . may file with the commission a written request for a preliminary hearing before the commission to determine probable cause for crediting the allegations of the complaint." *Id.*  Most importantly for purposes here, the statute concludes as follows:  "the commission shall allow such request as a matter of right; *provided, however that such a preliminary hearing shall not be subject to the provisions of chapter 30A.*"  *Id.* (emphasis added).  At bottom, no legal rights are determined through the preliminary proceedings; they function solely to establish whether there is probable cause to believe that an unlawful employment practice has taken place.

It must be understood, of course, that a lack of probable cause determination does not prevent a complainant, here Plaintiff, from subsequently filing suit as an *original* matter against his employer.  *See Brunson v. Wall*, 541 N.E.2d 338, 342 n.12 (Mass. 1989) ("Before conducting a formal adjudicatory hearing, the MCAD investigates complaints and attempts reconciliation between the parties. . . . Neither the MCAD preliminary investigation nor attempted reconciliation precludes a complainant from deciding ultimately to file an action under § 9.").  That is, in fact, what Plaintiff has done here to the extent he is seeking relief against the Haddad Defendants.  However, his claim against the MCAD Defendants, for all the reasons stated, is quite another matter.  As Plaintiff has provided no cogent argument as to why his claim against the MCAD Defendants themselves should go forward, the court will recommend that their motion

12

to dismiss be allowed.

C.  Partial Opposition of the Haddad Defendants

The Haddad Defendants have filed a partial opposition to both motions to dismiss.  While the Haddad Defendants agree that the EEOC and MCAD Defendants should be dismissed, they object to the contention, implied by both sets of defendants, that Plaintiff had retained the right to file a *de novo* suit against them.  In apparent anticipation of a future dispositive motion of their own contesting this assertion, the Haddad Defendants ask that the two motions be allowed, but on a basis -- *i.e.*, an "absolute litigation" privilege -- that does not prejudice their position. The court does not go that far.

Specifically, the Haddad Defendants contend that, because Plaintiff pursued his claims against them to final resolution before the MCAD, the matter is *res judicata* and he retains no further right to bring the same claims in this or any other court.  This argument, in the court's estimation, is built upon a misunderstanding of the nature of the MCAD proceedings that Plaintiff and, in turn, the Haddad Defendants went through. In short, the court finds, the investigation and preliminary hearing in the MCAD are not the sort of "adjudicatory proceedings" or "final decisions" that the Haddad Defendants suggest they are.  They were, rather, investigatory only and were concerned merely with whether there was probable cause to believe discrimination had occurred and whether further action was warranted.  As described, probable cause was found to be lacking without Plaintiff's charge of discrimination ever making it beyond the investigatory stage, much less to a final determination.

13

Moreover, the Haddad Defendants' use of *Brunson*, a case discussed above, is unpersuasive. In contrast to the facts at bar, the plaintiff there *had* pursued her claim before the MCAD through to a "full adjudicatory hearing" whereupon a "hearing commissioner" (as opposed to the investigating commissioner who presided over Plaintiff's preliminary hearing) issued "findings and rulings" and "dismissed the plaintiff's complaint with prejudice, concluding that the plaintiff was not the victim of racial discrimination." *Brunson*, 541 N.E.2d at 339. The plaintiff's claims, the *Brunson* court held, could not be subsequently relitigated in a *de novo* suit because of the preclusive effect of the commission's adjudicatory decision. *Id.* at 342. Here, as indicated, Plaintiff's claims were dismissed at the investigatory stage and, as the *Brunson* court noted, "[o]nly when the MCAD's proceedings reach the stage of a formal adjudicatory hearing must the complainant make an election between the administrative and judicial remedies." *Id.* at 342 n.12.

Whether there is more to the Haddad Defendants' arguments can wait to another day. For the moment, however, the court will decline to recommend dismissal on the grounds suggested by the Haddad Defendants, a declination which the court believes in no way affects their future posture.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the court recommends that both motions to dismiss be ALLOWED.[3]

---

[3] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically

DATED: October 27, 2006

                                   /s/ Kenneth P. Neiman
                                   KENNETH P. NEIMAN
                                   Chief Magistrate Judge

---

identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.