UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED
CLERK'S OFFICE

Springfield, Massachusetts

Civil Action No.05-30160-MAP

U.S. DISTRICT COURT

Scott Stern,
Plaintiff,
vs.

Haddad Motor Group, Inc., et. al.

Defendants

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA OF DEFENDANT'S TO DR. MICHAEL PERLMAN

Now comes Plaintiff in the aforementioned matter and does hereby submit a MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA OF DEFENDANT'S TO DR. MICHAEL PERLMAN and does hereby aver to this Honorable Court the following good cause and reasons for granting this MOTION.

In Massachusetts, the Legislature has demonstrated its recognition of a policy favoring confidentiality of medical facts by enacting G.L. c. 111, §§ 70 and 70E, to limit the availability of hospital records. Furthermore, G.L. c. 233, § 20B, creates an evidentiary privilege as to confidential communications between a psychotherapist and a patient. The fact that no such statutory privilege obtains with respect to physicians generally and their patients, *Bratt v. International Business Machs. Corp., supra* 392 Mass. at 522 n. 22, 467 N.E.2d 126, does not dissuade us from declaring *68 that in this Commonwealth all physicians owe their patients a duty, for violation of which the law provides a remedy, not to disclose without the patient's consent medical information about the patient, ***except to meet a serious danger to the patient or to others***. See *Horne*

*v. Patton, supra* 291 Ala. at 709, 287 So.2d 824; *Simonsen v. Swenson, supra* 104 Neb. at 227-229, 177 N.W. 831; *Hague v. Williams, supra* 37 N.J. at 336, 181 A.2d 345; *MacDonald v. Clinger, supra* 84 A.D.2d at 487, 446 N.Y.S.2d 801; *Berry v. Moench,* 8 Utah 2d 191, 196-199, 331 P.2d 814 (1958); *Hammonds v. Aetna Casualty & Sur. Co., supra* at 797. (Alberts v. Devine 395 Mass. 59, *67-68, 479 N.E.2d 113,**119 (Mass.,1985))

The question is whether the relationship between the plaintiff, Scott Stern, and the Doctor, Dr. Michael Perlman, is a confidential relationship. To that question, the answer is yes, it is, and has been, and will continue to be in the future. The question then becomes whether the relationship between Karpe and Doctor Siegal was a confidential relationship, so as to be subject to ch. 233, § 20B. See *Commonwealth v. Clemons,* 12 Mass.App.Ct. 580, 584 n. 2 (1981). Some confidential relationship must exist between a patient and a psychologist before the privilege can be invoked. *Commonwealth v. Mandeville,* 386 Mass. 393, 409 (1982); *Commonwealth v. Clemons,* 12 Mass.App.Ct. 580, 586-87 (1981). While it has been held that a psychologist or psychiatrist writing confidential notes in a hospital record does not waive the privilege, *Usen v. Usen,* 359 Mass. 453, 455-57 (1971), it is quite another matter when the patient , Karpe, gives permission to the psychologist to talk to and to write to Dean Robert Randolph (Carpenter v. Massachusetts Institute of Technology 2005 WL 3105638, *1 (Mass.Super.) (Mass.Super.,2005)

***WHETHER THE INTEREST IN DISCLOSURE OUTWEIGHS THE INTEREST IN CONFIDENTIALITY***

The second issue that must be faced in considering whether to compel disclosure despite the assertion of the privilege is whether "it is more important to the interests of

justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." G.L. c. 233, § 20B(c). One approach is simply to follow the protocol developed in *Commonwealth v. Bishop,* 416 Mass. 169 (1993) and refined in *Commonwealth v. Fuller,* 423 Mass. 216 (1996), for resolving discovery requests of privileged material by defendants in criminal cases. *Compare Perrin v. S & A Enterprises, Inc.,* 1999 WL 1327665 (Mass.Superior.Court) (2/16/99) (Hillman, J.) (Applying the *Bishop* protocol to the question of a defendant's access under G.L. c. 233, § 20B(c) to the plaintiff's psychological records in a automobile tort case involving a closed head injury-"This court sees no reason why the procedural safeguards should be any less in a civil case. A defendant's needs for protection of relevant records pertaining to a plaintiff's psychological condition is, if any, greater in a criminal case where the defendant's freedom and reputation may be at stake, than in a civil case where money damages alone may be involved"); *Kippenhan v. Chaulk Services, Inc.,* 1994 WL 879628 (Mass. Superior Court) (4/27/94) (Fremont Smith, J.) (Same approach). *But see Jacobs v. Vachon,* 2000 WL 281665 *2 (Mass. Superior Court 1/28/2000) (Hamlin, J.) (disclosure of privileged records ordered pursuant to G.L. c. 233, § 20B without following the *Bishop/Fuller* protocol).

(The *Bishop/Fuller* protocol requires a showing that the party seeking access to privileged material must wait until the end of the discovery process and establish that the material is not available elsewhere. Furthermore, the party seeking access must demonstrate "a good faith, specific and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt. By 'material evidence' we mean evidence which is not only likely to

meet criteria of admissibility, but which also tends to create a reasonable doubt that might not otherwise exist." *Fuller,* 423 Mass. at 226. (Donovan v. Prussman L 1257463, *4 -5 (Mass.Super.,2000))

In order to understand this legislative exception it is useful to review development of the patient-psychotherapist privilege at the federal level. In *Jaffee v. Redmond,* 518 U.S. 1, 18 & n. 19 (1996), the United States Supreme Court recognized the existence of a patient-psychotherapist privilege under Fed.R.Evid. 501, acknowledging that there are situations in which the privilege must give way ("for example, if a serious threat of harm to the patient or others can be averted only by means of disclosure by the therapist"), but rejected the use of a simple balancing test to determine its applicability by weighing the patient's interest in privacy against the need for disclosure. In *Jaffe,* the Court observed that in view of the importance of mental health treatment and of confidentiality in the patient therapist relationship, there were strong public policy reasons for recognizing such a privilege,[FN2] especially because "all fifty states and the District of Columbia have enacted into law some form of psychotherapist privilege." *Id.* at 12.[FN3]

FN2. The Supreme Court observed that "[t]he mental health of our citizenry, no less than its physical health is a public good of transcendent importance," and emphasized that "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.,* 518 U.S. at 10-12.

FN3. In *Jaffee* the court also noted that "[l]ike other testimonial privileges the patient may of course waive the protection." *Id.* at 15 n. 14. However, the Supreme Court specifically avoided a construction of the privilege that admitted of an exception that would invite trial judges to balance the patient's interest in privacy against a party's interest in disclosure. *Id.* at 17-18. In this respect, the federal privilege differs from the

Massachusetts privilege which admits of a number of exceptions and specifically requires trial judges to engage in a balancing of interests. *See* G.L. c. 233, § 20B(c). (Donovan v. Prussman 2000 WL 1257463, *6 (Mass.Super.) (Mass.Super.,2000))

In addition, the Fourth Amendment protects against State intrusions into legitimate expectations of privacy; expectation must be one actually held by defendant and one that society at large would recognize as reasonable. U.S.C.A. Const.Amend. 4. (State v. Guido 698 A.2d 729 (R.I.,1997))

'In 'In Massachusetts, the area of privileges concerning confidential communications is limited. * * * No general physician-patient privilege exists (see Kramer v. John Hancock Mut. Life Ins. Co., 336 Mass. 465, 467, 146 N.E.2d 357) but by St.1968, c. 418 (inserting G.L. c. 233, s 20B), a privilege has been created with respect to certain communications between a patient and a psychotherapist.' ***457** In re Pappas, Mass., 266 N.E.2d 297, 299, the 1968 statute seems to have been modeled on a statute enacted in Connecticut in 1961. Conn.1961 Pub.Act 529, as amended, Conn.Gen.Sts.Anno. ss 52-146d-52- 146j (Supp.1970). See Fox, Psychotherapy and Legal Privilege, 53 Mass. L. Q. 307; Goldstein and Katz, Psychiatrist-Patient Privilege: The GAP Proposal and the Connecticut Statute, 36 Conn.Bar. J. 175; Comment, 71 Yale L.J. 1226, 1251-1260 Compare In re Lifschutz, 2 Cal.3d 415, 422, 431, 85 Cal.Rptr. 829, 832, 839, 467 P.2d 557, 560, 567 stating that 'a growing consensus throughout the country, reflected in a trend of legislative enactments, acknowledges that an environment of confidentiality of treatment is vitally important to the successful operation of psychotherapy,' and referring to 'the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor.' We are not free to water down the legislative policy embodied in the statute by loose construction or by giving our \

approval to informal procedures different from those prescribed. It was error to admit the evidence after the claim of privilege without meticulous observance of the requirements of subparagraph (e). Such observance, unless waived, should be shown in the record or transcript. (Usen v. Usen 359 Mass. 453, *457, 269 N.E.2d 442, **444 (Mass. 1971)

In *Bishop,* prior to outlining the five-stage protocol, the Court reviewed prior case, including *Commonwealth v. Two Juveniles,* 397 Mass. 261 (1986), *Commonwealth v. Jones,* 404 Mass. 339 (1989), and *Commonwealth v. Stockhammer,* 409 Mass. 867 (1991), and observed that the "definition of the defendant's threshold burden exhibited a chamelon-like nature, evading uniform formulation." *Bishop,* 416 Mass. at 178. The Court added "[w]e hold that the defendant must show, at the threshold, that records privileged by statute are likely to contain relevant evidence." *Id.* at 179-80. In *Bishop,* the court explained this threshold requirement as follows:

***"During this relevancy determination stage, the defendant need not make a showing that the records actually contain information that carries, for example, the potential for establishing the unreliability of either the criminal charge or a witness on whose testimony the charge depends. The defendant must, however, advance in good faith, at least some factual basis which indicates how the privileged records are likely to be relevant to an issue in the case and 'that the quest for its contents is not merely a desperate grasping at a straw."*** (Com. v. Spinney 2001 WL 410326, *3 (Mass.Super.) (Mass.Super.,2001))

A construction of G.L. c. 233, § 20B( *e* ), which would permit the State to use information obtained as part of a State plan to strengthen the family would place the parent in the no-win situation of making confidential disclosures to a

psychotherapist*744 in order to regain custody of the child, and then having the disclosures used against the parent in a termination proceeding. Such a choice would discourage a parent from making use of psychotherapeutic services offered by the State, and would run counter to the Legislature's declaration that "the policy of this commonwealth [is] to direct its efforts, first, to the strengthening and encouragement of family life for the protection and care of children; *to assist and encourage the use by any family of all available resources to this end;* and to provide substitute care of children only when the family itself or the resources available to the family are unable to provide the necessary care and protection to insure the rights of any child to sound health and normal physical, mental, spiritual and moral development" (emphasis added). G.L. c. 119, § 1, as amended by St.1972, c. 785, § 5. We think it unlikely that the Legislature intended to place parents in a situation where their use of psychotherapeutic services could result in the termination of parental rights.[FN7] The judgment is reversed, and this matter is remanded for a new hearing, at which the privileged communications between the mother and the two psychotherapists should be excluded. (Petition of Catholic Charitable Bureau of Archdiocese of Boston, Inc., to Dispense with Consent to Adoption 392 Mass. 738, *743-744, 467 N.E.2d 866,**870 (Mass.,1984))

A patient is described as "a person who, during the course of *diagnosis* or *treatment,* communicates with a psychotherapist." Communications is defined as "conversations correspondence, actions and occurrences relating to *diagnosis or treatment* ... regardless of the patient's awareness of such conversations, correspondence, actions and occurrences, *and any records, memoranda or notes of the foregoing.*" (Morgan v. Geran 2001 WL 227736, *2 (Mass.Super.) (Mass.Super.,2001))

On the other hand, "the purpose of the statute is to protect justifiable expectations of confidentiality *that people who seek psychotherapeutic help* have a right to expect." (Emphasis added.) *Commonwealth v. Clancy,* 402 Mass. 664, 667, 524 N.E.2d 395 (1988). (Morgan v. Geran 2001 WL 227736, *3 (Mass.Super.) (Mass.Super.,2001))

In 1972, the Supreme Court recommended the adoption of nine specific rules of privilege for federal trials, including a psychotherapist-patient privilege. *Jaffee,* 518 U.S. at 13, 116 S.Ct. at 1927 n. 7. (U.S. v. Rodriguez 49 M.J. 528, *530 (Army Ct.Crim.App.,1998))

*Psychiatrist's voir dire testimony.* Before receiving testimony from Dr. Robinson (the psychiatrist), the trial judge conducted a hearing in chambers, conformably with G.L. c. 233, § 20B( *e* ), to decide whether the psychotherapist privilege should apply. The statute requires that the privilege shall not apply if the judge, "in the exercise of his discretion, determines that the psychotherapist has evidence bearing significantly on the patient's ability to provide suitable care or custody, and that it is more important to the welfare of the child that the communication be disclosed than that the relationship between patient and psychotherapist be protected." G.L. c. 233, § 20B( *e* ), as appearing in St.1986, c. 594. The judge did determine that Dr. Robinson had things to say that were relevant to the parental fitness issue. (Care and Protection of Bruce 44 Mass.App.Ct. 758, *765, 694 N.E.2d 27, **32 (Mass.App.Ct.,1998))

Instead, Fed.R.Evid. 501,[FN3] a general privilege rule, "authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience.' " *Jaffee,* 518 U.S. at 11, 116 S.Ct. at 1927. Using this authority, the Supreme Court held that confidential communications made between a licensed psychiatrist or psychologist and a patient, in the course of that patient's diagnosis or treatment, are

protected from compelled disclosure under Fed.R.Evid. 501. The Court also extended this privilege to confidential communications made to licensed social workers in the course of psychotherapy treatment. 518 U.S. at 25, 116 S.Ct. at 1931.

Federal Rule of Evidence 501 provides in pertinent part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. (U.S. v. Rodriguez 49 M.J. 528, *529 (Army Ct.Crim.App.,1998))

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, in part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Mockler v. Skipper 1994 WL 716002, *2 (D.Or.) (D.Or.,1994)

Patient's medical records at university were protected by constitutional right to privacy and could not be disclosed by university, even to other university departments or to their attorneys, in absence of release by patient or valid court order. U.S.C.A. Const.Amends. 4, 14; Ohio R.C. § 2317.02(B)(1). (Mann v. University of Cincinnati 824 F.Supp. 1190 (S.D.Ohio,1993))

Patient's medical records at university were protected by doctor-patient privilege under federal law (Mann v. University of Cincinnati 824 F.Supp. 1190 (S.D.Ohio,1993))

Appropriate procedure to follow when discovery privilege is asserted is as follows: party seeking discovery must file motion to compel or may subpoena records; in absence of motion to compel, party claiming privilege must file either motion for protective order or motion to quash subpoena; allegedly privileged material should be submitted to court for in camera review, where resisting party's claim for privilege and irrelevance can be balanced against opposing party's claims of relevance and need. Fed.Rules Civ.Proc.Rule 45, 28 U.S.C.A. (Mann v. University of Cincinnati 824 F.Supp. 1190 (S.D.Ohio,1993))

Attorneys knowingly violated patient's doctor-patient privilege and constitutional privacy right when they requested production of patient's medical records at university; attorneys were on notice of possible privilege and privacy rights, since records sought were medical records privileged under state law, should have known that such records were protected by federal constitutional privacy right, knew that patient had asserted her privacy right and privilege at her deposition, and had issued subpoena to their own client. Fed.Rules Civ.Proc.Rule 45, 28 U.S.C.A. (Mann v. University of Cincinnati 824 F.Supp. 1190 (S.D.Ohio,1993))

University and its counsel were subject to sanctions for violating patient's constitutional privacy right and doctor-patient privilege after university disclosed, pursuant to subpoena issued by its attorney, patient's medical records. Fed.Rules Civ.Proc.Rule 45, 28 U.S.C.A. (Mann v. University of Cincinnati 824 F.Supp. 1190 (S.D.Ohio,1993))

The Sixth Circuit Court of Appeals has, for more than a decade, recognized a constitutional right of privacy in medical records. In cases where the Sixth Circuit

approved the release of medical records to a federal grand jury and to the National Institute for Occupational Safety and Health respectively, it recognized the constitutional privacy rights of patients. *See In re Zuniga,* 714 F.2d 632, 642 (6th Cir), *cert. denied, Zuniga v. United States,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983); *General Motors Corp. v. Director of the National Institute for Occupational Safety and Health,* 636 F.2d 163, 166 (6th Cir.1980), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981) (hereafter *G.M.C. v. N.I.O.S.H).* The Sixth Circuit has clearly stated that, with respect to their medical records, "[i]t is firmly established that individuals have a constitutionally protected right to privacy." *Gutierrez v. Lynch,* 826 F.2d 1534, 1539 (6th Cir.1987).[FN1] The Sixth Circuit applies a balancing test, as did the Supreme Court, considering the potential conflict between the asserted right of access to medical records and the patient's right to privacy. (Mann v. University of Cincinnati 824 F.Supp. 1190, 1196 (S.D.Ohio,1993))

These courts have also applied a balancing test to determine whether disclosure of medical records is justified. *Fisher,* 753 F.Supp. at 694. Other cases that have recognized a constitutional right to privacy regarding medical information include *Inmates of New York State with Human Immune Deficiency Virus v. Cuomo,* No. 90-CV-252, 1991 WL 16032 (N.D.N.Y. Feb. 7, 1991); *Rodriguez v. Coughlin,* No. CIV-87-1577E, 1989 WL 59607 (W.D.N.Y. June 5, 1989); *Doe v. Meachum,* 126 F.R.D. 452 (D.Conn.1989); *Plowman v. United States Dep't of Army,* 698 F.Supp. 627, 633 and n. 22 (E.D.Va.1988); *Doe v. Coughlin,* 697 F.Supp. 1234, 1237 (N.D.N.Y.1988); and *Woods v. White,* 689 F.Supp. 874, 876 (W.D.Wis.1988), *aff'd,* 899 F.2d 17 (7th Cir.1990). (Mann v. University of Cincinnati 824 F.Supp. 1190, *1196 (S.D.Ohio,1993))

There can be no question that the aforementioned information is of such a private

nature that a constitutional right to privacy exists. In a civilized society in the year 1993, where vast amounts of personal information are contained not only in medical files but in computerized data banks or other massive government files, much of which is personal in character and potentially embarrassing or harmful if disclosed, *see Whalen,* 429 U.S. at 605, 97 S.Ct. at 879, the constitutional right to privacy is surely as significant as the protection of commercial information specifically recognized by Rule 45(c)(3)(B)(i). At least two privacy interests regarding medical records are implicated. The first, of course, is right to non-disclosure of private information. The "right to be let alone" is "the right most valued by civilized men." 429 U.S. at 599 n. 25, 97 S.Ct. at 877 n. 25 (quoting Justice Brandeis' dissent in *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928)). The second is the right to health care. If patients have a genuine concern that their private medical information will become publicly known and may adversely affect their reputations or embarrass them, they will be reluctant to seek medical assistance. Thus, patients' interest in making decisions vital to their health care may be impaired by unwarranted disclosures. *See Whalen,* 429 U.S. at 600, 97 S.Ct. at 876. These same reasons support a doctor-patient privilege. (Mann v. University of Cincinnati 824 F.Supp. 1190, *1199 (S.D.Ohio,1993))

I asked for briefs on the issue but I am convinced after reading Montana statutes and case law that the plaintiff is correct. It is impermissible for the defendant's lawyers to have *ex parte* contact with any of the decedent's treating doctors. *Jaap v. District Court of the Eighth Judicial District,* 191 Mont. 319, 623 P.2d 1389, 1392 (1981) (Rules of discovery do not allow private interviews with a party's physicians); See also, *590 *Linton v. City of Great Falls,* 230 Mont. 122, 749 P.2d 55 (1988) overruled on other

grounds by *Anderson v. Hammer,* 1991 WL 182110 (Mont. Sep. 16, 1991) (NO. 90-587), rehearing granted, opinion withdrawn (Nov. 22, 1991). (Hampton v. Schimpff 188 F.R.D. 589, *589 -590 (D.Mont.,1999))

The combination of *Jaap v. District Court of the Eighth Judicial District,* 191 Mont. 319, 623 P.2d 1389, 1392 (1981) and § 26-1-805, MCA, 1997 make any *ex parte* contact with any treating doctor impermissible. Rule 501 F.R.Evid. (the privilege of a witness ... shall be determined in accordance with State law.)

The current statute on Doctor-patient privilege states:

"Except as provided in Rule 35, Montana Rules of Civil Procedure, a licensed physician, surgeon, or dentist cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." (Hampton v. Schimpff 188 F.R.D. 589, *590 (D.Mont.,1999))

Interjecting a treating doctor into the middle of a medical malpractice case as a witness for his or her patient's adversary is against Montana's public policy. Implicit in the *Jaap* decision and § 26-1-805, MCA, 1997 is the intent of the Montana Legislature *591 and the Montana Supreme Court to protect the Doctor-patient privilege. A patient must have confidence that her doctor will not turn on her because of philosophical or political loyalties to the medical profession. The doctor's fiduciary loyalty must be to her patient. It is not, and cannot be to her colleagues. To hold otherwise would place a treating physician, one to whom a patient with difficult complications has been referred, in the untenable position of having to choose between her fiduciary duty to the patient, and her collegial relationship with a referring physician who may have caused or contributed to the harm in question. Furthermore, Rule 403 F.R.Evid would proscribe the

use of such testimony because its probative value is substantially outweighed by the danger of unfair prejudice, by confusion of the issues, and by misleading the jury. If a treating doctor chooses to overlook her fiduciary duty to the patient and to testify on behalf of a colleague, it is unlikely that the patient could overcome the prejudice or the confusion that would be created in the minds of reasonable jurors. A conflict in credibility that goes to the heart of the advocacy system exists if the plaintiff's proof to the jury is from academic "hired gun" experts, while the defendant's proof is from the plaintiff's own treating physician who is engaged in a clinical practice. Consequently, the proof should not be allowed. The same problem does not exist when the doctor testifies on behalf of her patient. (Hampton v. Schimpff 188 F.R.D. 589, *590 – 591 (D.Mont.,1999))

Although K. has a privilege under state law pursuant to Mass.G.L. ch. 233, § 20J, this Court must determine whether there is a privilege for rape counselling records under federal law. In *Jaffee v. Redmond,* 518U.S. 1, ----, 116 S.Ct. 1923, 1931, 135 L.Ed.2d 337 (1996), which involved a pretrial discovery dispute in a civil wrongful death and civil rights action, the Supreme Court recently held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Because the "vast majority of states explicitly extended a testimonial privilege to licensed social workers," the Supreme Court recognized a privilege for communications with licensed clinical social workers as well, stating that "[t]heir clients often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist ... but whose counselling sessions serve the same public goals." *Id (*U.S. v. Lowe 948 F.Supp. 97, *99 (D.Mass.,1996))

Deciding that there is a federal privilege under *Jaffee* is only the first step of the inquiry. This Court must also determine if there has been a lawful waiver of K.'s rights. K. has granted a limited waiver for purposes of permitting this Court to conduct an *in camera* review without prejudice to assertion of the privilege should this Court determine that the records contain exculpatory materials. This is consistent with longstanding federal procedure for handling disputes involving claims of privilege in the context of criminal cases where the constitutional due process rights of a defendant must be weighed against the privileges of another. *See generally Pennsylvania v. Ritchie,* 480 U.S. 39, 60, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987) (suggesting that *in camera* review by a court of state records pertaining to a child abuse investigation would properly accommodate the state's compelling interest in protecting child-abuse information and the defendant's compelling due process interest in information that may change the outcome of the trial); *United States v. Wilson,* 798 F.2d 509, 514 (1st Cir.1986) (reviewing documents protected under the attorney-client privilege to determine if any were exculpatory); *United States v. Cuthbertson,* 630 F.2d 139, 148 (3rd Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981) (permitting *in camera* review of statements of a government witness despite qualified journalistic privilege because of the unavailability from another source). (U.S. v. Lowe 948 F.Supp. 97, *100 (D.Mass.,1996))

We hold today that, absent the patient's consent or a serious danger to the patient or to others, a physician owes to a patient a duty not to disclose information gained through the physician-patient relationship, and a violation of that duty gives rise to a cause of action sounding in tort. (Alberts v. Devine 395 Mass. 59, *75, 479 N.E.2d 113,

124 (Mass.,1985))

Wherefore, for the case citations herein cited, Plaintiff respectfully prays that the SUBPOENA TO DR. MICHAEL A. PERLMAN be QUASHED by and because the interest of confidentiality outweigh the need for disclosure of plaintiff's medical records and Dr. Perlman's testimony.

Most Respectfully submitted this 26 July 2007.

Scott Stern
Sui Juris
All Rights Reserved without Prejudice
400 West Main Street
North Adams, Massachusetts 01247

**CERTIFICATE OF SERVICE**

I, Scott Stern, Pro-Se Plaintiff, Sui Juris, in this action of Scott Stern v. Haddad Motor Group, Inc., et. al, in the United States District Court, Case Number 05-30160-MAP, certify that I have caused a copy of the foregoing documents:

Copy of "MOTION TO QUASH SUBPOENA OF DEFENDANT TO DR. MICHAEL PERLMAN"



Copy of "MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA OF DEFENDANT TO DR. MICHAEL PERLMAN"

Copy of "CERTIFICATE OF SERVICE"

to be delivered, postage prepaid, United States Postal Service, to the defendants, at their respective counsel address this 26 day of July, 2007.

Michienzie & Sawin, LLC
John C. Barker
745 Boylston Street
Boston, Massachusetts 02116-2636

Scott Stern
Sui Juris
All Rights Reserved without Prejudice
400 West Main Street
North Adams, Massachusetts 01247

July 26, 2007
Date