UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS         CIVIL ACTION NO. 3/05-CV-30160-KPN

| | |
|---|---|
| SCOTT STERN, | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| HADDAD DEALERSHIPS OF THE | ) |
| BERKSHIRES, INC.; JAMES SALVIE, | ) |
| GENERAL SALES MANAGER; | ) |
| TIMOTHY CARDILLO, SALES | ) |
| MANAGER; MICHAEL COGGINS, | ) |
| GENERAL MANAGER, IN THEIR | ) |
| PERSONAL AND OFFICIAL | ) |
| CAPACITIES OF HADDAD | ) |
| DEALERSHIPS OF THE BERKSHIRES, | ) |
|     Defendants | ) |

**THE HADDAD DEFENDANTS' OPPOSITION TO
PLAITIFF'S MOTION TO QUASH THE SUBPOENA
ON PLAINTIFF'S PSYCHIATRIST**

Now come defendants Haddad Dealerships of the Berkshires, Inc.,[1] James Salvie, Michael Coggins, and Timothy Cardillo (collectively the "Haddad Defendants"), through their counsel of record, and hereby oppose Plaintiff's Motion to Quash the Subpoena by the Haddad Defendants to Dr. Michael Perlman. The Motion to Quash was filed on 7/26 or 7/27/07 by plaintiff Scott Stern ("plaintiff" or "Stern"). In support of this Opposition Memorandum, the Haddad Defendants they are also submitting the Affidavit of John Barker ("Barker Affidavit") with exhibits.

I.      **Introduction and Summary of Argument**

Dr. Perlman is plaintiff's psychiatrist. Plaintiff is claiming employment discrimination herein because of his mental condition, an alleged bi-polar condition.

---

[1] The correct name for this party is Haddad Motor Group, Inc.

Plaintiff has thus put his mental condition at issue as a prima facie element of his claim. Further, plaintiff is claiming that he notified his former employer and individual managers at that employer -- the Haddad Defendants -- with various notes from Dr. Perlman, a contention that the Haddad Defendants dispute. Therefore, Dr. Perlman is both a percipient witness as to alleged communications between him and the Haddad Defendants (if any) and also a witness as to plaintiff's psychological condition during his employment at Haddad Motor Group, Inc. ("Haddad").

The Haddad Defendants do not dispute the existence of a psychotherapist-patient privilege, both under federal common law and under Massachusetts statute (M.G.L. ch. 233 §20B). However, the Haddad Defendants submit that plaintiff has waived this privilege by putting his mental condition at issue, as a prima facie element of his claim, and by putting at issue the communications and notices from his psychiatrist to his former employer. Although it is not clear whether this privilege should be analyzed under federal or state law in this case (see below), if analyzed under the state statute, the litigation exception in §20B(c) applies to the records and to the deposition testimony of plaintiff's psychiatrist Dr. Perlman. Plaintiff cannot make out his prima facie case for discrimination without this evidence, and defendants would be seriously and unfairly prejudiced by not having pre-trial access to this evidence, in order to fully and adequately defend themselves.

## II.    Pertinent Factual Background

### A.    Plaintiff Stern's Claims; the Purported Notes From Dr. Perlman; and the Pertinent Factual Disputes

The plaintiff is suing the Haddad Defendants for employment discrimination and for related ancillary torts, such as alleged violations of the Massachusetts Civils Rights

statute ("MCRA" in M.G.L. ch. 12 §11H and §11I).  The disability for which plaintiff alleges the Haddad Defendants discriminated against him, was a bi-polar disorder.  Amended Complaint ¶¶14, 25, 83, 94, 127.  Stern claims that he was discriminated against because of this alleged mental handicap.  Id. ¶¶25, 28, 65, 73, 86, 91, 94, 97, 108, 111, 114.  He alleges that he "would, on occasion, arrive tardy to work" because of his bi-polar disorder.  Id. ¶14.  Further, he alleges that he suffered mental anguish because of the alleged discriminatory actions of the Haddad Defendants.  Id. ¶¶109, 112, 115, 118, 121, 124.

Dr. Michael Perlman was plaintiff Stern's psychiatrist.  Id. ¶33.  Dr. Perlman allegedly wrote at least two handwritten notes about Stern, which Stern claims to have presented to the Haddad Defendants in November 2002.  Id. ¶¶28, 34.  Plaintiff has attached four handwritten notes purportedly from Dr. Perlman at Exhibits C through F to his Amended Complaint.  The note referenced in ¶28 (the "blood work" note) appears to be at Exhibit C, and the note referenced in ¶¶33 and 34 (the "work with Scott" note) appears to be at Exhibit D, although this note actually states "work with him."  These notes are essential to plaintiff's prima facie case.  It is these notes, or one of these notes, that plaintiff claims gave notice to his former employer (the Haddad Defendants) that (1) he was suffering from a disability, bi-polar disorder; (2) that he was under a doctor's care, (3) giving the name and contact information for the doctor, so that the employer could verify Stern's claims, and (4) that plaintiff was capable of performing the essential functions of his job at Haddad.  See Amended Complaint ¶¶33-36, 57.

The note(s) from Dr. Perlman also form part of the basis for plaintiff's claims against the Haddad Defendants, because plaintiff claims that defendants lied about the

00124531.DOC

3

note(s). *See* Amended Complaint ¶¶51-57.[2]

The Haddad Defendants saw some handwritten note that plaintiff claimed at the time was from his doctor, and that contained the phrase "work with Scott...." However, Stern did not permit them to copy this note, take down the information concerning the doctor so that they could contact the doctor, or keep the note; in fact, the individual Haddad Defendants remember that Stern did not let them see the note long enough for them to evaluate its authenticity and determine whether it was from a doctor or merely a handwritten note by Stern himself.[3] This was the only note the Haddad Defendants ever saw from Stern concerning his condition. They do not remember any note concerning plaintiff's need to be late, and/or concerning the reported connection between his bi-polar condition and his need to be late. The Haddad Defendants expressly requested from Stern that he have his doctor (who we now know was Dr. Perlman) send a letter or other written communication to the Haddad Defendants attesting to Stern's bi-polar disability and explaining the connection between such a disability and the need for Stern's requested accommodation of being allowed to arrive up to 15 minutes late to work each day. The Haddad Defendants never received such a letter or other communication from Stern's doctor.[4]

---

[2] These allegations are part of the justification for plaintiff's demand in his Amended Complaint, for $100M in damages (¶(i) of Prayer for relief).

[3] These factual allegations were set forth in the Haddad Defendants'/Respondents Answer to Charge of Discrimination which was previously submitted to the MCAD, and which is copied at Exhibit I to the Barker Affidavit. This Answer (Exhibit I) is verified by Defendant Michael Coggins's signature. Attached at Exhibit F to the Barker Affidavit, is a previous Affidavit of Defendant James Salvie, which also corroborates these facts in its ¶4.

[4] *See* Respondent's Answer filed with the MCAD, at Exhibit I to Barker Affidavit; *see also* Exhibits A and B to the Barker Affidavit and to plaintiff's Amended Complaint, initial statements by defendants Cardillo and Salvie; Salvie Affidavit ¶4, at Exhibit F to Barker Affidavit.

Stern, on the other hand, claims that he provided at least two notes from Dr. Perlman to the Haddad Defendants in November 2002.[5] Stern also claims that he *did* copy at least one of the doctor's notes to the Haddad Defendants, and that the individual defendants "had ample opportunity to view said note," which was not "flashed" at defendants during the November 2002 meeting. From these factual disputes, it is abundantly clear how important the testimony of Dr. Perlman will be in this case as to what notes and/or letters he provided to Stern to provide to Haddad.

B.  **The Recent Deposition Notice to Dr. Perlman From the Haddad Defendants**

On 6/27/07, defense counsel for the Haddad Defendants sent a keeper-of-records subpoena to Dr. Perlman, seeking his relevant non-privileged documents relating to this lawsuit or to the treatment of plaintiff Stern "from 2000 until the present" and seeking Dr. Perlman's deposition. Barker Affidavit ¶6. The Haddad Defendants submit to this Court that the period of documents requested (2000 to the present) was sufficiently narrow as it relates only to plaintiff's treatment starting two years before his employment at Haddad. The more specific categories in Schedule A, attached to the deposition notices to Dr. Perlman and to plaintiff Stern were as follows:

1. A copy of the complete medical records of plaintiff Scott Stern.
2. Any treatment records or reports, copies of medical documents (including but not limited to bills, prescriptions, treatment plans) for Scott Stern, during the period from 2000 to the present.
3. Any initial treatment write-up, evaluation, or assessment for Scott Stern.[6]

---

[5] Stern's factual contentions in this regard are set forth in some detail in a 4/8/05 document called "Appendix S," which was an attachment to his letter to Robert Sanders, Area Officer Director of the EEOC. Both Mr. Sanders and the EEOC were previously defendants in the instant case, until they were recently dismissed [*see* Docket Nos. 82 & 89]. A copy of "Appendix S" is attached to the Barker Affidavit at Exhibit C.

[6] A copy of the Haddad Defendants' 6/27/07 subpoena to Dr. Perlman is attached to the Barker Affidavit at Exhibit D.

00124531.DOC

        4.     Any notes, correspondence, messages, or other communications from Dr. Perlman's office to Scott Stern's former employer Haddad Motors (or to any representative, agent, or employee of Haddad Motors) concerning Scott Stern.

While the first category in the above Schedule A is broad, the next three categories are narrow and absolutely necessary for the Haddad Defendants to defend themselves in this case.

By letter of 7/27/07, the undersigned defense counsel requested a discovery conference pursuant to Local Rules 7.1(A)(2) and 37.1(B), by 8/3/07.[7] Plaintiff's response was the Motion to Quash that this brief is opposing.

Dr. Perlman wrote to the undersigned defense counsel to indicate that, because of his client's assertion of the psychotherapist-patient privilege, he would not produce any records and would not attend any deposition. The undersigned defense counsel wrote back to Dr. Perlman acknowledging receipt of his 7/17/07 letter and also inquiring whether he was independently represented by counsel.[8]

---

[7] As detailed in paragraph ¶¶6-8 of the Barker Affidavit, defense counsel for the Haddad Defendant first wrote plaintiff on 6/5/07 indicating that defendants intended to seek discovery from Dr. Perlman. Plaintiff responded with a telephone message that he objected. Defense counsel then sent the subpoena to Dr. Perlman that is the subject of this Motion to Quash. Dr. Perlman responded as well on 7/17/07 stating that he would not produce any records or appear for his deposition. Defense counsel then responded to Dr. Perlman by letter of 7/20/07 acknowledging Dr. Perlman's letter and asking if he had any independent counsel in the matter. Finally, defense counsel wrote to plaintiff on 7/27/07 citing the privilege issues as to Dr. Perlman and requesting a discovery conference pursuant to U.S. District Court Local Rule 37.1(B). Copies of defense counsel's letters are attached as Exhibits E, G, and H to the Barker Affidavit.

[8] The Haddad Defendants had previously subpoenaed Dr. Perlman for records and a deposition, earlier in this case. This request for documents and Dr. Perlman's deposition was later withdrawn as untimely. At that time, Dr. Perlman was represented independently by James Hilliard of Connor & Hilliard in Walpole, MA. Defense counsel wanted to make sure that Dr. Perlman was no longer represented by Attorney Hilliard (or any other independent counsel), so defense counsel inquired about this in defense counsel's 7/20/07 letter to Dr. Perlman. On 8/8/07, defense counsel received a phone call from Michael Porter of Connor & Hilliard, indicating that that firm still represented Dr. Perlman in the matter. *See* Barker Affidavit ¶7. Because of the phone call from Connor & Hilliard, defense counsel has included them on its service list for this motion practice.

00124531.DOC

III.  **Legal Argument: The Federal Common-Law Psychotherapist-Patient Privilege has Been Waived in This Case, Such That Defendant Should be Entitled to Discovery From Plaintiff's Psychiatrist.**

    A.  **Whether Federal or State Law Applies**

Cases are somewhat inconsistent on the choice of law issue. This Court has sometimes determined that privileges should be assessed using the forum state's substantive law. *See, e.g.,* McLaughlin v. McDonald's Corp., 203 F.R.D. 45, 48 (D.Mass. 2001); Sorenson v. H&R Block, Inc., 197 F.R.D. 199, 202-03 (D.Mass. 2000). However, other cases have determined that privileges such as the psychotherapist-patient privilege should be analyzed under federal common law. *See, e.g.,* Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 226-27 (D. Mass. 1997); Sabree v. United Brotherhood of Carpenters and Joiners, 126 F.R.D. 422, 424 (D.Mass. 1989).

Two cases that used Massachusetts law to analyze this privilege (McLaughlin, 203 F.R.D. at 48, *and* Sorenson, 197 F.R.D. at 202-03) were both diversity cases. However, the instant case gains its federal subject-matter jurisdiction from a federal statutory cause of action, rather than from diversity jurisdiction. Thus, it is more likely that federal common law will apply to the analysis of the psychotherapist-patient privilege here. In Vanderbilt, this Court explained that

> …if federal substantive law controls a civil case, federal common law would control questions of privilege. On the other hand, if state substantive law controls, as in a diversity case, [Federal Rule of Evidence] 501 instructs a federal court to use the applicable state law of privilege…. [In a federal question case that also has state-law claims] pursuant to supplemental jurisdiction… the federal law of privilege applies.

Vanderbilt, 174 F.R.D. at 226-27 (citing other federal circuits).

    B.  **Application of the Federal Common Law Privilege to This Case**

The federal courts, since the U.S. Supreme Court decision in Jaffee, have

recognized the psychotherapist-patient privilege. Jaffee v. Redmond, 518 U.S., 12 & 18, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); Sabree, 126 F.R.D. at 425. Some federal courts analyze the applicability of this privilege by balancing "the importance of [the patient's] privacy interest against the defendant's claimed need for the information." Id. Other courts reject such balancing, and analyze whether the privilege has been waived. *See, e.g.,* Vanderbilt, 174 F.R.D. at 227, *citing* Jaffee, 518 U.S. 1.[9] The analysis in Vanderbilt states that this privilege is waived when the patient-party uses the privileged communication in support of a claim or defense, and not merely by claiming emotional distress damages. 174 F.R.D. at 228-30. Thus, where the plaintiff "used the privileged communication as evidence," this should waive the privilege. Id. at 228.[10] Plaintiff bears the burden here of showing good cause why the deposition of Dr. Perlman should not go forward. Sorenson, 197 F.R.D. at 203.

In this case, plaintiff must prove his mental disability in order to make a prima facie case of disability discrimination. He will need to prove this through some medical record, if not testimony from a medical expert. Further, he has already introduced into evidence the four notes purportedly from Dr. Perlman. Thus, he has waived the protection of this privilege, and defendants should be entitled to discovery of his psychiatric records around the time of his employment at Haddad, and should also be entitled to depose Dr. Perlman concerning plaintiff's condition at that time and concerning the handwritten notes. While it is true that Stern is claiming emotional distress damages, his is not merely a "garden variety" claim of emotional distress; Stern's

---

[9] Plaintiff's brief for his Motion to Quash first states that the U.S. Supreme Court rejected balancing as to this privilege (p.4, *citing* Jaffee), then uses balancing for its analysis (pp.10, 11, 16).

[10] *See also* Jaffee, 518 U.S. 15 n.14, which states that the "patient may of course waive the protection" afforded by the psychotherapist-patient privilege.

00124531.DOC

8

is a "claim of psychic injury or psychiatric disorder resulting from the alleged discrimination" by the Haddad Defendants. Sabree, 126 F.R.D. at 426.

### C. The Haddad Defendants' Request for Plaintiff's Psychiatric Records and the Deposition of Dr. Perlman, Do Not Violate the Federal Fourth Amendment.

Plaintiff invokes a Fourth Amendment right to privacy in his brief (p.5). First, the Haddad Defendants doubt there is any "state action" here. *See, e.g.,* Commonwealth v. Considine, 448 Mass. 295, 299-300, 860 N.E.2d 673 (2007), *citing* Rendell-Baker v. Kohn, 457 U.S. 830, 837-38, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (Fourth Amendment claims require state action, and cannot be brought against private entity).

To the extent that the use of a subpoena constitutes state action, the Haddad Defendants submit that their seeking psychiatric records and the testimony of plaintiff's psychiatrist is neither a "search" nor a "seizure" under the Fourth Amendment. Finally, if for some reason it *does* constitute a search, the search is objectively reasonable: Dr. Perlman is a percipient witness, purported author of the four notes that plaintiff has introduced into evidence already, and plaintiff is relying on his mental condition as a prima facie element of his own case.

## IV. Legal Argument: If the State Statutory Privilege Applies, Plaintiff Has Waived This Priviledge; or in the Alternative, the Litigation Exception at §20B(c) Applies Here.

### A. The Applicability of the Privilege and Plaintiff's Burden

Stern sets forth the respective burdens in his brief (p.6) as follows:

> "During this relevancy determination stage, the defendant [seeking the psychiatric records] need not make a showing that the records actually contain information that carries, for example, the potential for establishing the unreliability of either the criminal charge or a witness on whose testimony the charge depends. The defendant must, however, advance in good faith, at least some factual basis which indicates how the privileged

> records are likely to be relevant to an issue in the case and 'that the quest for its contents is not merely a desperate grasping at a straw.'"

Plaintiff's brief, p.6, *quoting* Commonwealth v. Spinney, 2001 WL 410326, *3 (Mass.Super. 2001). This is a burden that the Haddad Defendants can easily meet. They have already shown that they need testimony from plaintiff's psychiatrist to test whether or not plaintiff was actually suffering from bi-polar disorder at the time he was terminated from Haddad. They also need testimony from Dr. Perlman concerning the notes that plaintiff claims come from Dr. Perlman. These issues are central to the case.

The plaintiff discusses at some length in his brief whether the information and testimony sought can be considered confidential (p.2).[11] The Haddad Defendants do not dispute that psychotherapist-patient communications are confidential; rather they submit that these communications fall within the litigation exception to this privilege, and/or that plaintiff has waived this privilege because he has put his mental condition at issue as a prima facie element of his case.

It should be noted that, even if this Court disagrees with defendants' legal arguments concerning plaintiff's wavier of the psychotherapist-patient privilege, that privilege only protects psychotherapist-patient communications. Thus, that privilege does not protect a psychotherapist's diagnoses themselves to the extent that they do not contain communications with the patient. In re Adoption of Saul, 60 Mass.App.Ct. 546, 551, 804 N.E.2d 359, *rev. denied*, 441 Mass. 1107, 807 N.E.2d 830 (2004) (citing cases); Linscott v. Burns, 2005 WL 351039, *3 (Mass.Super. 2005). Thus, other psychiatric or medical records are not protected under §20B, which "does not preclude admission of such parts of a psychiatric record as are 'conclusions based on objective indicia rather

---

[11] Plaintiff inexplicably refers to individuals named "Karpe" and "Dr. Siegal" (p.2). The Haddad Defendants do not know who these people are, nor does plaintiff identify them in his brief.

than on communications from the [patient].'" P.W. v. M.S., 67 Mass.App.Ct. 779, 786-87, 857 N.E.2d 38 (2006), *quoting* Adoption of Abigail, 23 Mass.App.Ct. 191, 198-99, 499 N.E.2d 1234 (1986). Additionally, if plaintiff is not required to produce privileged psychiatric records, not only must he produce any non-privileged materials within those records, but he should also produce a privilege log (see below). Linscott, 2005 WL 351039, at *3.

### B.     The Standard Under the State Statutory Privilege

Section 20B recognizes a psychotherapist-patient privilege in MA. The statute also recognizes a litigation exception to that privilege, which will not apply:

> (c) In any proceeding, except one involving child custody, adoption or adoption consent, in which the plaintiff introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than the relationship between patient and psychotherapist be protected.

M.G.L. ch. 233 §20B(c). This is the exception to this statutory privilege that the Haddad Defendants submit applies in this case.[12]

### C.     The First Prong of the Analysis of the Exception in §20B(c)

Many cases stand for the principle that the psychotherapist-patient privilege is not waived by a "garden variety" emotional distress damages claim, but the privilege is

---

[12] It should be noted in passing the many tangently related legal provisions that *do not* apply here. Stern repeatedly cites to the exception in §20B(e) concerning child custody cases (pp.6-8). This exception is made expressly separate from the litigation exception by language in §20B(c). Further, the exception in §20B(e) expressly requires a hearing in chambers -- undoubtedly because of the added sensitivity of child custody cases --whereas the litigation exception in §20B(c) does not mention such a requirement.

Plaintiff includes an extended discussion of law from the Sixth Circuit and from the State of Montana (pp.11-14); plaintiff discusses the production of rape counseling records (p.14); and plaintiff often analogizes to protection of privileges in the setting of *criminal* cases (pp.14-16).

Each of these settings is distinguishable from the instant case, a civil employment-discrimination case, where the plaintiff relies on his mental/psychiatric condition as a prima facie element of his discrimination claims.

00124531.DOC

11

waived by a claim of psychological injury or mental damage that is integral to the plaintiff's case. *E.g.,* Sorenson, 197 F.R.D. at 203-04 ("pressing a 'garden variety claim of emotional distress' does not waive the privilege, but any claim of 'mental damage,' 'psychic damage' or 'impairment of mental health' will operate as a waiver"). The state Superior Court in Donovan followed these principles, even though it ultimately did not allow defendant access to the psychiatric records at issue:

> The claim by the plaintiff in this case makes the mental and emotional harm that she has suffered a central and not an incidental aspect of her damages…. Even though the plaintiff has decided not to call a psychiatrist, psychologist or other mental health professional as a witness…, she has nonetheless alleged a mental impairment (inability to remember and to function well enough to return to work) and assigned it as a central element of her claim. Thus, she has introduced her 'mental or emotional condition as an element' of her claim.

Donovan v. Prussman, 12 Mass.L.Rptr. 65, 2000 WL 1257463, *4 (Mass. Super. 2000). In this case, Stern cannot prove his prima facie case without psychiatric evidence (1) that he was mentally disabled at the time, (2) that he notified the Haddad Defendants of this; (3) that the accommodation he requested (allowing him to be up to 15 minutes late each day) was related to his mental disability; and (4) that it was because of his mental disability that he was chronically late when he worked at Haddad. *See* Doe No. 301 v. Roman Catholic Bishop of Worcester, 2006 WL 620701 (Mass.Super. 2006) (court presumes that plaintiff will offer psychotherapist communications as evidence of plaintiff's emotional or mental condition, an element of his claim that he must prove). As noted, Stern's claims are for disability discrimination based on his alleged mental disability. *See* Amended Complaint ¶¶25, 28, 73, 86, 91, 94, 97, 108, 111, 114. The Haddad Defendants are entitled to see plaintiff's evidence of his bi-polar condition -- the evidence he did not produce to the Haddad Defendants when requested in 2002. Further,

Dr. Perlman is a percipient witness as to the four notes (Exhibits C-F to Amended Complaint), and Haddad Defendants are entitled to examine him about these notes. *See* Amended Complaint ¶¶34-36, 51-57.

### D.     The Second Prong of the Analysis of the Exception in §20B(c)

After the Court has determined that the patient (plaintiff) will introduce "his mental or emotional condition as an element of his claim or defense," the second prong of the analysis is for the Court in its discretion to find "that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." 233 §20B(c). The Massachusetts Superior Court has further divided this prong into the following two-part test, under which there will be no disclosure unless

> (1) the patient calls the psychotherapist as a witness or introduces evidence of the communication through her own testimony or otherwise, or (2) the party seeking access to the communication makes a specific showing that the truth-seeking function of the trial will be seriously impaired unless a disclosure of the communication is ordered.

Doe No. 301, 2006 WL 620701, at *2, *quoting* Donovan, 2000 WL 1257463, at *7. In this case, Stern has already satisfied the first sub-prong: He has introduced the four notes from Dr. Perlman as proof of elements of his prima facie discrimination case. By itself, this should constitute waiver of the privilege here. *See* Doe No. 301, 2006 WL 620701, at *2, *citing* Vanderbilt, 174 F.R.D. at 230.

Further, it is impossible to see how plaintiff can meet his burden on his mental disability discrimination case without introducing psychiatric evidence. Regardless, it is not required that plaintiff plan to call his psychiatrist as a trial witness. *See, e.g.,* Donovan, 2000 WL 1257463, *4. Moreover, as to the second sub-prong, it would

"seriously impair" the Haddad Defendants' ability to defend themselves, not to be able to cross-examine Dr. Perlman concerning the notes, plaintiff's condition at the time, and the connection (if any) between plaintiff's request for the 15-minute accommodation and his bi-polar condition. For all of the foregoing reasons, plaintiff has waived the psychotherapist-patient privilege in this case, and the Haddad Defendants are entitled to discovery concerning plaintiff's mental condition at the time.

IV.  **Procedural Considerations**

   A.  **Privilege Log**

If this Court should find that some or all of plaintiff's psychiatric records *are* privileged, then the Haddad Defendants respectfully request that plaintiff be required to provide a privilege log. Privilege logs are generally required in Massachusetts practice, as to documents withheld on privilege grounds. *See, e.g.,* Linscott, 2005 WL 351039, at *3, *citing* In re Adoption of Saul, 60 MassApp.Ct. at 553; *see also* Decelle, Inc. v. B&M Realty Nominee Trust, 2000 WL 1512379, *3 (Mass.Super. 2000) (privilege log needed because privilege must be challenged document-by-document).

   B.  **Protocol; In-Camera Inspection**

Plaintiff proposes (pp.3-4, 15) that this Court follow the protocol with inspection of allegedly privileged documents that is followed in criminal cases, as expressed in Commonwealth v. Bishop, 416 Mass. 169, 181-83 *and* Fuller, 423 Mass. 216. This (rather stringent) protocol is not necessary in the instant case. This is not a criminal case, nor is it a child custody case where §20B(e) requires "a hearing in chambers."

However, should this Court believe that such measures are necessary, the Haddad Defendants would agree to an in-camera inspection of the records and/or to a court-

00124531.DOC

14

supervised deposition of Dr. Perlman.

### C. Confidentiality Protections

The Haddad Defendants are willing to agree to confidentiality protections for any psychiatric records that are produced in this case. First, the Haddad Defendants will agree that such records will only be shared with parties, counsel, experts, and/or insurance claims representatives, on an as-needed basis. Second, the Haddad Defendants and their counsel agree that any such records will be kept confidential, and that such individuals must agree to maintain this confidentiality before being shown any such records. Further, the Haddad Defendants and their counsel will agree to destroy or return all psychiatric records to plaintiff at the end of the litigation (after exhaustion of all possible appeals). Finally, defense counsel suggests that the Court hold a separate voir dire (without the jury present) as necessary before introduction of any psychiatric evidence (either documents or testimony by Dr. Perlman) at trial.

### V. Conclusion

For the foregoing reasons, the Haddad Defendants respectfully ask this Court to allow discovery of plaintiff's psychiatric records and to allow the deposition of plaintiff's psychiatrist, Dr. Michael Perlman, to go forward. The Haddad Defendants submit that the plaintiff has waived the psychotherapist-patient privilege as to Dr. Perlman's records and as to his testimony, by already introducing his notes into evidence and by putting plaintiff's mental condition at issue as a prima facie element of plaintiff's discrimination claims against the Haddad Defendants.

In the alternative, should this Court grant plaintiff's Motion to Quash, the Haddad Defendants respectfully request that this Court preclude plaintiff from introducing

psychiatric evidence at his trial and strike plaintiff's counts against the Haddad Defendants that claim mental disability.
                                    THE HADDAD DEFENDANTS,
                                    By Their Attorneys
                                    MICHIENZIE & SAWIN LLC

Dated: 8/8/07            BY: /s/ John Barker
                                    Richard A. Sawin, Jr. – BBO NO: 546786
                                    John C. Barker – BBO NO: 637406
                                    745 Boylston Street, 5th Floor
                                    Boston, MA 02116
                                    Tel: (617) 227-5660

## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for defendant, hereby certify that I have on this 8th day of August 2007, served a copy of the foregoing Opposition Memorandum of Law, in Opposition to Plaintiff's Motion to Quash, and the supporting Affidavit of John Barker, with exhibits, by mailing a copy of same, postage prepaid, to the following:

Mr. Scott Stern
400 West Main Street
North Adams, MA 01427

James T. Hilliard, Esq.
Michael Porter, Esq.
Connor & Hilliard, P.C.
1350 Main Street
Walpole, MA 02081-1731

/s/ John Barker
John C. Barker