UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS        CIVIL ACTION NO. 3/05-CV-30160-KPN

| | |
|---|---|
| SCOTT STERN,<br>    Plaintiff<br><br>v.<br><br>HADDAD DEALERSHIPS OF THE<br>BERKSHIRES, INC.; JAMES SALVIE,<br>GENERAL SALES MANAGER;<br>TIMOTHY CARDILLO, SALES<br>MANAGER; MICHAEL COGGINS,<br>GENERAL MANAGER, IN THEIR<br>PERSONAL AND OFFICIAL<br>CAPACITIES OF HADDAD<br>DEALERSHIPS OF THE BERKSHIRES,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THE HADDAD DEFENDANTS' MEMORANDUM OF LAW,
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Now come defendants Haddad Dealerships of the Berkshires, Inc.,[1] James Salvie, Michael Coggins, and Timothy Cardillo (collectively the "Haddad Defendants"), through their counsel of record, and hereby file and serve the following Memorandum of Law in Support of their Motion for Summary Judgment pursuant to F.R.C.P. 56(c) and U.S. District Court Local Rule 56.1.

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Scott Stern ("plaintiff" or "Stern") has brought several claims against the Haddad Defendants based on alleged employment discrimination because of Stern's alleged mental disability, which is a bi-polar condition. Plaintiff's discrimination claims are Counts 1, 2, and 3 (for alleged violation of M.G.L. 151B §4); Counts 6, 7, and 8 (for

---

[1] The correct name for this party is Haddad Motor Group, Inc.

00142783.DOC

1

alleged violations of the federal Americans with Disabilities Act ("ADA")); and Counts 9, 10, and 11 (for alleged violations of Title VII). In addition, plaintiff brings claims for alleged violations of the Massachusetts Civil Rights Act ("MCRA"), in Counts 14, 15, and 16. Briefly, the facts are that plaintiff worked for Haddad Motors from April 2002 for about ten months, until he was terminated on 2/3/03. Plaintiff claims that he was terminated because of his bi-polar condition, and the Haddad Defendants assert that he was fired for his chronic tardiness, lack of cooperation, and various stalking incidents.

The Haddad Defendants will show, below and in their other summary judgment papers filed and served herewith, that plaintiff was not able to perform the essential functions of his job by the time he was terminated in February 2003. He was incapable of arriving at work on time, and was uncooperative and did not get along with other employees, and sometimes customers. In the alternative, the Haddad Defendants submit that they afforded plaintiff the same accommodation that he requested, even though plaintiff had never presented any documentation showing them that this accommodation had any connection to his disability -- namely that he was permitted to arrive late to work each day, up to a certain amount of time. Plaintiff admits that the accommodation of being allowed to arrive late to work each day was a reasonable one. However, plaintiff did not *follow* this accommodation, and arrived even later than the "grace period" permitted under this reasonable accommodation. He was terminated for cause on 2/3/03.

As to plaintiff's MCRA claims, such claims require an interference with a constitutional or statutory right, as well as some "physical confrontation," as discussed below. As an at-will employee, plaintiff cannot show any constitutional or statutory right that was being violated as to his MCRA claims. Further, plaintiff has not alleged any

00142783.DOC

2

"physical confrontation" except one unsubstantiated incident with only one of the Haddad Defendants -- James Salvie. On both grounds, the Haddad Defendants are entitled to summary judgment on these three MCRA claims. In the alternative, if this Court believes a question of fact exists as to the MCRA claim against defendant Salvie, the Haddad Defendants request summary judgment on the other two MCRA claims.

## II. PERTINENT FACTUAL BACKGROUND

Plaintiff Stern was a full-time and at-will employee at Haddad Motors, from April 2002 until February 2003. Undisputed Facts ¶¶4-5. He was a car salesman at Haddad. Haddad Affidavit ¶3.

Stern himself concedes that he had difficulties arriving at work on time. Undisputed Facts ¶17. His performance suffered from chronic tardiness, and he had been suspended more than once for tardiness by the time of his termination. Id.

It was at a meeting in late November 2002, when plaintiff had been called in again to discuss his attendance and punctuality problems, that plaintiff informed Haddad that he was disabled and had a bi-polar condition. Undisputed Facts ¶¶6-7. Before this meeting in November 2002, the Haddad Defendants had no notice that plaintiff was disabled. Id. ¶7. At this meeting in November 2002, plaintiff presented a handwritten note that he claimed was from his doctor, which advised that he had a bipolar condition and asked his employer to "work with him."[2] Id. ¶13. However, plaintiff did not permit the Haddad Defendants to keep or copy this note or to contact the doctor who purportedly wrote the note. Id. The Haddad Defendants had no way of knowing whether the note was written by a doctor at all. They requested from plaintiff that he provide written

---

[2] A copy of this note is at Exhibit 1. Neither the Haddad Defendants nor their counsel had possession of this note until the MCAD proceedings in this matter in 2004.

00142783.DOC

3

documentation (such as a note or letter from his doctor) that stated (a) that he was disabled and suffered from a bi-polar condition and (b) that a reasonable accommodation for this condition would be to permit him to arrive a certain amount of time late to work each day. Id. ¶¶12, 14. Plaintiff had shown the Haddad Defendants the handwritten "work with him" note, but never provided any documentation from any doctor (oral or written) that allowing plaintiff to arrive late to work was connected to his alleged disability, let alone that such an allowance would constitute a reasonable accommodation of his alleged disability. Id. ¶15.

Despite the fact that Stern did not provide Haddad with sufficient documentation of his alleged disability, or with any documentation of the connection between that disability and his request to be able to arrive late to work, the Haddad Defendants nevertheless asked him how they could accommodate his alleged disability; Stern requested that he be given a "grace period" and be permitted to arrive up to 15 minutes late to work. Undisputed Facts ¶¶10-16; Haddad Affidavit ¶5. Stern concedes that permitting him to arrive late to work each day was a *reasonable* accommodation for his disability. Undisputed Fact ¶10. Thus, it is undisputed that the Haddad Defendants gave plaintiff the accommodation that he asked for, and that he considered it a reasonable accommodation for his alleged disability. Id. ¶¶10-11.

However, the plaintiff could not stick to the new "grace period." His chronic tardiness continued, and he arrived *later* than the permitted "grace period." Id. ¶17. For this and other reasons, plaintiff was terminated for cause on 2/3/03. Haddad Affidavit ¶4-5; *see* Undisputed Facts ¶17.

The Haddad Defendants will assume, without conceding and for the purposes of

00142783.DOC

4

summary judgment only, that plaintiff was disabled (although defendants reserve their right to challenge this element of plaintiff's claims at a later stage, if necessary). But beyond being disabled from his bi-polar condition, plaintiff himself concedes that he was not capable of performing the essential functions of his sales job and Haddad by the time he was terminated in February of 2003. Undisputed Facts ¶8. He describes his own work history as "very erratic." Id. ¶9. In going through his employment history, plaintiff *admits* that he has been fired from 8 jobs, out of the 27 jobs that he remembers over the past 20 years (the 8 includes Haddad). Id. Defendants believe that this number is significantly higher, but will adopt plaintiff's figure for the purposes of summary judgment only. He has left several other jobs by "mutual" understanding or agreement. Id. His own psychiatrist, Dr. Perlman, testified that plaintiff has been unable to retain steady employment or has had difficulty in obtaining and retaining steady employment, because of the symptoms of his disabilities.[3]

In summary, the plaintiff was fired for cause, not because of his alleged disability. The Haddad Defendants did what they could to accommodate his tardiness, but plaintiff could not abide by the reasonable accommodation that he himself had requested. Moreover, plaintiff was simply not up to performing the job.

### III. PLAINTIFF CANNOT MEET HIS BURDENS ON SUMMARY JUDGMENT, WITH DEFENDANTS' REQUESTS FOR ADMISSIONS DEEMED ADMITTED.

#### A. The Applicable Summary Judgment Standards

Under F.R.C.P. 56 (c), "the movant [for summary judgment] has the initial responsibility of informing the district court of the basis for its motion, and identifying

---

[3] There were several stalking incidents, relating to other employees and to customers. Plaintiff admits to only one of these. Undisputed Facts ¶19. The remaining incidents present questions of fact at this summary judgment stage, so the Haddad Defendant are not relying on those incidents herein.

00142783.DOC

5

those portions of the record showing the absence of a genuine dispute of material fact." Cicccone v. US Airways, Inc., 144 F.Supp.2d 30, 33 (D. Mass. 2001), *citing* Celotex Corp. v. Catrett, 477 U.S., 323, 317, 105 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the non-moving party must demonstrate "that *every essential element* of its claim or defense is at least trialworthy." Id., *citing* Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991) (emphasis in original; internal quote marks omitted). "A moving party may satisfy his burden [on summary judgment] by demonstrating that proof of an essential element of the plaintiff's case is unlikely to be forthcoming at trial." Glidden v. Maglio, 430 Mass. 694, 696, 722 N.E.2d 971 (2000), *citing* Kourovacilis v. General Motor Corps., 410 Mass. 706, 716, 575 N.E.2d 734 (1991); Mammone v. President & Fellows of Harvard College, 446 Mass. 657, 666, 847 N.E.2d 276 (2006).

The Haddad Defendants will show below that plaintiff cannot show any *genuine* trialworthy issue, because of Plaintiff's Admissions, as well as his testimony. *See* Undisputed Facts ¶¶1-3 and Exhibits 2 & 3. "The evidence relevant of the issue, viewed in a light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Cicccone, 144 F.Supp.2d at 33, *quoting* Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

**B.    Summary Judgment Has Been Granted Based on Admissions Deemed Admitted.**

As described more fully in Undisputed Facts ¶¶1-3 and in the supporting Affidavit of John Barker (¶¶3-4), counsel for the Haddad Defendants sent out a set of Requests for Admissions pursuant to F.R.C.P. 36(a). Responses to these Requests for Admissions were due, at the latest, on 9/10/07. Undisputed Facts ¶3. Plaintiff has not

responded at all to these requests as of the date of this Motion. Id. Therefore, the Admissions are now deemed admitted. F.R.C.P. 36(a); *accord*, Reynolds Aluminum Buildings Product Co. v. Leonard, 395 Mass. 255, 259, 480 N.E.2d 1 (1985); First National Bank of Cape Cod v. North Adams Hoosac Savings Bank, 7 Mass.App.Ct. 790, 791 & n.2, 391 N.E.2d 689 (1979); Aden v. Ludvigsen, 2003 Mass.App.Div. 180, 2003 WL 22417193, n.3. Plaintiff has not sought any extensions for responding to defendants' Requests for Admissions, despite his repeated requests for extensions on other pleadings and discovery matters in this case. Undisputed Facts ¶3. This is not an instance of a complex procedural matter or an instance of *inadequate* response, but rather an instance of no response at all. Id. Because of this, plaintiff's pro se status should not excuse his complete disregard of the Requests for Admissions.

This Summary Judgment Motion is based, in part, on Plaintiff's Admissions. Courts have awarded summary judgment to defendants based on such admissions deemed admitted, "regardless of the importance of the matters thus deemed to be admitted." Reynolds, 395 Mass. at 259, *citing cases including* Equal Employment Opportunity Comm'n v. Baby Prods. Co., 89 F.R.D. 129, 132 (E.D. Mich. 1991); *see also* First National v. North Adams Hoosac, 7 Mass.App.Ct. at 791 n.2; DiCorato v. Procopio Constr. Co., Inc., 15 Mass.L.Rptr. 372, 2002 WL 31677205, *3 (Mass. Super. 2002).

IV.   **PLAINTIFF CANNOT MEET HIS BURDEN TO SHOW THAT HE WAS CAPABLE OF PERFORMING THE ESSENTIAL FUNCTIONS OF HIS JOB AT HADDAD, WITH OR WITHOUT A REASONABLE ACCOMMODATION.**

    A.   **Plaintiff's Disability Discrimination Claims**

Plaintiff brings nine separate counts concerning disability discrimination, as follows: Counts 1, 2, and 3 under the Massachusetts discrimination statute (M.G.L. ch.

151B §4); Counts 6-11 under federal discrimination statutes (the ADA and Title VII).[4]

These state and federal discrimination claims can be analyzed together, as they all contain the same essential element (discussed below) that plaintiff must show that he was a "qualified handicapped person" capable of performing the essential functions of his job. *See, e.g.,* Mulloy v. Acushnet Co., 460 F.3d 141, 154 (1st Cir. 2006) (same analysis for this prima facie element under state and federal statutory analyses); Russell v. Cooley Dickenson & Hosp., Inc., 437 Mass. 443, 451 & n.6, 772 N.E.2d 1054 (2002).

    **B.**    **Plaintiff's Federal Discrimination Claims Should Be Dismissed Because They Are Against the Individual Defendants.**

Unlike the state anti-discrimination statute (151B), the federal statutes (the ADA and Title VII) generally do not permit causes of action against *individual* defendants, as opposed to causes of action against employers. *E.g.,* Fink v. Printed Circuit Corp., 204 F.Supp.2d 119, 129 (D.Mass. 2002); Meara v. Bennett, 27 F.Supp.2d 288, 290-91 & 292 (D.Mass. 1998). Plaintiff brought all six discrimination claims under federal statutes (Counts 6-11) against the individual Haddad Defendants Michael Coggins, James Salvie, and Timothy Cardillo (*see* Amended Complaint). Therefore, these six counts should be dismissed. (These grounds for summary judgment do not apply to plaintiff's state discrimination claims, Counts 1-3).

---

[4] Plaintiff characterizes Counts 9, 10, and 11 in his Amended Complaint as counts "for violations of federal Civil Rights Acts." However his memorandum in support of his Motion to Default the MCAD Defendants [Docket No. 55] seems to characterize these same three counts either as Title VII counts or as claims under 42 U.S.C. §1983.

    If these three counts are intended to be brought under 42 U.S.C. §1983, then they should be dismissed outright, because there is no state action here against these private defendants. A state action is required for claims under §1983 (as opposed to ADA or state statutory discrimination claims). *E.g.,* Sietins v. Joseph, 238 F.Supp.2d 366, 377-78 (D.Mass. 2003).

C.  **Plaintiff's Federal and State Disability Claims Must Fail Because Plaintiff Was Not Capable of Performing the Essential Functions of His Job at Haddad.**

One of the prima facie elements on which plaintiff has the burden of proof at trial, is showing that he was capable of performing the essential functions of the job, with or without a reasonable accommodation, such that he was a "qualified handicapped person." *See, e.g.,* Mulloy, 460 F.3d at 145-54; Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 541-43, 646 N.E.2d 131 (1995); Leach v. Comm'r of Mass. Rehabilitation Comm'n, 63 Mass.App.Ct. 563, 568-70, 827 N.E.2d 745, *rev. denied*, 444 Mass. 1108, 831 N.E.2d 1294 (2005); Dziamba v. Warner & Stackpole LLP, 56 Mass.App.Ct. 397, 404-05, 778 N.E.2d 927 (2002), *rev. denied*, 438 Mass. 1106, 782 N.E.2d 516 (2003); Beane v. Mass. Container Corp., 18 Mass.L.Rptr. 388, 2004 WL 2550470, *4-5 (Mass.Super. 2004). If plaintiff cannot meet his burden to show this capability, he will have no claim for disability discrimination. Id.

First, Stern has expressly admitted that he "was not capable of performing the essential functions of his sales job at Haddad Motor Group, at the time his employment with Haddad was terminated in February 2003." Undisputed Facts ¶8. But beyond his own direct admission, the admissible evidence in this case overwhelmingly supports the same conclusion. His own psychiatrist opined that Stern was not capable of holding a steady job, from before his employment at Haddad. Perlman deposition, pp.13-23.[5] Dr. Perlman summed up what symptoms characterized plaintiff's inability to hold a job:

> He has a mood which is irritable, at times euphoric with racing thoughts, such that he tends to be impulsive. He tends to stay up late at night, often until 4:00 or 5:00 in the morning, and therefore doesn't get enough sleep and therefore doesn't make it in to work. He will readily fly off the handle and get angry and feel angry and express anger toward people he is working with

---

[5] Cited excerpts from the deposition of Dr. Michael Perlman are at Exhibit 6.

00142783.DOC

9

> including superiors, and often in an inappropriate way, and he doesn't have very good judgment as to what's appropriate in those circumstances. And I believe those flaws in judgment and his mood disorder are all connected to his bi-polar disorder.

Id. pp.13-14. Dr. Perlman then testified that Stern exhibited each of these symptoms during the periods immediately before, and during his employment at Haddad (2001-2003). Id. pp.14-21. The prime reason that Stern was incapable of performing the essential functions of his job when he was fired from Haddad, was that he was categorically incapable of punctuality. By his own admission, he was late to work once or twice per week. Undisputed Facts ¶17. Although the Haddad Defendants recall that he was late three or four times per week, they will accept Stern's estimates for the purposes of summary judgment only. Punctuality was (and is) critical to the effective functioning of this car sales business. Haddad Affidavit ¶5. As in the Beane case, 2004 WL 2550470, *4-5, regular attendance at work was an essential aspect of the job.

### D. In Addition, the Haddad Defendants Afforded Plaintiff the Reasonable Accommodation That Plaintiff Asked For.

First, an employee must *request* a particular accommodation for his or her disability, before the employer has any duty to put such an accommodation into effect; the corollary to this principle is that an employer has no notice of the need for reasonable accommodation until the employee requests one (unless such an accommodation is obvious). *See, e.g.,* Reed v. LePage Bakeries, Inc., 244 F.3d 254, 260 (1st Cir. 2001); Leach, 63 Mass.App.Ct. at 567. As discussed, Stern did not inform Haddad of his alleged disability until the end of November 2002. Undisputed Facts ¶7. Thus, the Haddad Defendants had no duty to react to the knowledge of his alleged disability until then, whether by reasonable accommodation or in any other way.

Second, in the November 2002 meeting (or shortly thereafter), Stern requested an accommodation for his alleged mental disability, namely, that he be permitted to arrive up to 15 minutes late each day. Id. ¶10. This is precisely the accommodation that the Haddad Defendants then granted to Stern. Id. ¶11. In his deposition (day 1, p.106), Stern claimed that he asked Haddad for "flex-time" -- that he be allowed to arrive any time he could manage on a given day. However, this was *not* what he requested from Haddad at the time. Undisputed Facts ¶10. Nor is his so-called "flex-time" workable at Haddad, as it is not possible to run a business with employees who can come and go as they please. Nor is an employer required to "make substantial changes in the standards of a job" in order to accommodate an employee's alleged depression. Dziamba, 56 Mass.App.Ct. at 405; *see also* Beal, 419 Mass. at 542.

Third, Stern admits that this accommodation was reasonable. Undisputed Facts ¶10. Provision of a reasonable accommodation (assuming the disabled employee is capable of performing the essential functions of his or her job) can be grounds for summary judgment for the defendant-employer on a disability-discrimination claim. *See, e.g.,* Russell, 437 Mass. at 459 ("summary judgment was appropriate because the plaintiff did not have a reasonable expectation of establishing that the hospital failed to provide a reasonable accommodation for her disability"). On these additional grounds, then, the Haddad Defendants are entitled to summary judgment on all nine employment-discrimination claims.

V. **PLAINTIFF CANNOT MEET HIS BURDEN TO SHOW A PRIMA FACIE CASE ON HIS CLAIMS UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT, AND DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON HIS MCRA CLAIMS.**

   A.   **The Prima Facie Elements of a MCRA Claim**

In order to show a claim under the Massachusetts Civil Rights Act ("MCRA"), a plaintiff must show that his exercise of a constitutional or statutory right has been interfered with by "threats, intimidation, or coercion." M.G.L. ch.12 §11H and §11I; Carvalho v. Town of Westport, 140 F.Supp.2d 95 (D. Mass. 2001); Korb v. Raytheon Corp., 410 Mass. 581, 585, 574 N.E.2d 370 (1991). For the "threats, intimidation, or coercion" element, plaintiff must show "an actual or potential physical confrontation accompanied by a threat of harm." Fletcher v. Szostkiewicz, 190 F.Supp.2d 217, 230 (D. Mass. 2002), *quoting* Carvalho, 140 F.Supp.2d at 101, *which quoted* Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 473 & n.8, 631 N.E.2d 985, *cert. denied*, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 122 (1994).

Some decisions have recognized a possible narrow exception to the "physical confrontation" requirement, in a case of a defendant's alleged interference with a plaintiff's contract. *See discussion in* Carvalho, 140 F.Supp.2d at 100-02; Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 210, 581 N.E.2d 475 (1991). However, courts have recognized that the rights of an at-will employee are not sufficient, without any "physical confrontation," to state a claim under MCRA. *See* Fletcher, 190 F.Supp.2d at 231; Korb, 410 Mass. at 585; Flesner v. Technical Communications Corp., 410 Mass. 805, 818-19, 575 N.E.2d 1107 (1991). Thus, firing an at-will employee will not constitute the threatened breach of contract that is contemplated under such a MCRA analysis. Id.

The following definitions are used for "threat, intimidation, or coercion":

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. . . . "Coercion" means the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

Carvalho, 140 F.Supp.2d at 100, *quoting* Planned Parenthood, 417 Mass. at 474. (internal citations and quote marks omitted.) However, this "rather broad definition" of these terms is circumscribed by the "physical confrontation" requirement described above (id.), such that a plaintiff still must show the "physical confrontation" element.

### B. Plaintiff Has Not Shown These MCRA Elements in the Instant Case.

Plaintiff has not shown interference with any constitutional or statutory right here. Plaintiff was an at-will employee at Haddad. Undisputed Facts ¶5. He had no contractual right or other entitlement to employment, therefore, and was fired for cause. Haddad Affidavit ¶4. "There is no improper interference with secured rights when an employer fires an at-will employee who has become ineffective." Korb, 410 Mass. at 585; *accord*, Flesner, 410 Mass. at 818-19 (plaintiff's allegations of rights "to earn his livelihood in any lawful calling; to pursue any livelihood or avocation" did not sufficiently "identify a secured right" under MCRA, such that defendant was awarded summary judgment on MCRA claim).

Plaintiff has only brought MCRA claims against the individual defendants (Counts 14, 15, 16). The Haddad Defendants note in passing that MCRA claims cannot be recognized on a respondeat superior basis. Britton v. Maloney, 901 F.Supp. 444, 453 (D. Mass. 1995).

The only "physical confrontation" that Plaintiff Stern has alleged involves an

incident in which defendant James Salvie allegedly took Stern by the arm and ushered Stern out of a meeting of salespeople concerning another employee. Plaintiff has not alleged any physical confrontation or contact by any other Defendant. Undisputed Facts ¶18. Therefore, at a minimum, this Court should grant summary judgment on this basis to the Haddad Defendants other than Salvie.

As to Salvie, although Stern claims he did physically touch Stern, it is not clear that ushering Stern out of this meeting infringed on any constitutional or statutory right that Stern had. Stern describes this 8/12/02 meeting as a discussion among the salespeople about an employee named Kaz Smith "regarding whether or not Kaz should work there or not." Stern deposition, day 1, p.165. He concedes that he is not sure what was ultimately discussed in the meeting because he was not present. Stern deposition, day 2, p.24. Plaintiff claims that he had a right to be at the meeting because he was a Haddad employee and the meeting was not a management-only meeting. Id. p.159-162. On the same grounds discussed above as to an at-will employee, Salvie's act of excluding Stern from this 8/12/02 meeting, did not interfere with any cognizable "secured" right of Stern's. Also note that this August 2002 meeting occurred *before* the Haddad Defendants had notice of Stern's disability (which was in November 2002, Undisputed Facts ¶7). Thus, whatever Salvie did, it was not connected to Stern's alleged disability.

Threats, intimidation, and coercion are judged by an *objective* standard, not a subjective standard from the plaintiff's viewpoint. Planned Parenthood, 417 Mass. at 474-4; Kennie v. Natural Resource Dept. of Dennis, 69 Mass.App.Ct. 158, 162 866 N.E.2d 983 (2007) (using "the objective standard of whether a reasonable person would be threatened, intimidated or coerced" by defendant's behavior). Stern's individual

reaction to criticism from Haddad Management may be colored by the symptoms of his purported condition, which include suspicion or paranoia (Perlman deposition, pp. 53-54) and the tendency to overreact to criticism (id. pp. 67-69). What needs to be assessed here, is whether a reasonable person would have felt threatened, intimidated, or coerced by being ushered out of one meeting by a supervisor. The Haddad Defendants submit that one incident of being taken by the arm and pulled out of a meeting (because of Stern's chronic tardiness), should not constitute a violation of a person's civil rights; plaintiff should not be permitted to make "federal case" out of this one incident.

## VI. CONCLUSION

For the foregoing reasons, the Haddad Defendants respectfully request that this Court award them summary judgment on all remaining counts. The nine employment-discrimination claims are not viable because plaintiff cannot show that he was capable of performing the essential functions of the job at the time he was fired. In addition, plaintiff was given precisely the accommodation he asked for, and he has admitted that that accommodation was reasonable. As to the claims under the Massachusetts Civil Rights Act, plaintiff cannot show that any constitutional or statutory right of his was interfered with. Further, as to all defendants other than Salvie, plaintiff has not even alleged the physical contact or confrontation needed to make out a claim under MCRA.

Dated: 12/21/07

THE HADDAD DEFENDANTS,
By Their Attorneys
MICHIENZIE & SAWIN LLC

BY: _John Barker_
Richard A. Sawin, Jr. – BBO NO: 546786
John C. Barker – BBO NO: 637406
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: (617) 227-5660

00142783.DOC

15