UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS          CIVIL ACTION NO. 3/05-CV-30160-KPN

| | |
|---|---|
| SCOTT STERN,<br>    Plaintiff | ) <br> ) <br> ) |
| v. | ) <br> ) <br> ) |
| HADDAD DEALERSHIPS OF THE<br>BERKSHIRES, INC.; JAMES SALVIE,<br>GENERAL SALES MANAGER;<br>TIMOTHY CARDILLO, SALES<br>MANAGER; MICHAEL COGGINS,<br>GENERAL MANAGER, IN THEIR<br>PERSONAL AND OFFICIAL<br>CAPACITIES OF HADDAD<br>DEALERSHIPS OF THE BERKSHIRES,<br>    Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**THE HADDAD DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S OPPOSITION TO THEIR REQUESTS FOR ADMISSIONS**

Now come defendants Haddad Dealerships of the Berkshires, Inc.,[1] James Salvie,

Michael Coggins, and Timothy Cardillo (collectively the "Haddad Defendants"), through

their counsel of record, and hereby move to strike -- pursuant to Rule 12(f) -- the filing by

plaintiff Scott Stern ("plaintiff" or "Stern") at Docket No. 122, entitled "Plaintiff's

Opposition, in Part, to Defendant's Request for Admissions to Plaintiff." In this filing,

plaintiff appears to both respond to the Haddad Defendants' previous Requests for

Admissions, and to object to these same Requests for Admissions.[2] For the following

reasons, the Haddad Defendants move that this pleading [Docket No. 122] be struck

---

[1]   The correct name for this party is Haddad Motor Group, Inc.

[2]  A copy of the Haddad Defendants' original set of Requests for Admissions was filed as Exhibit 2 to the
Haddad Defendants' Concise Statement of Undisputed Facts, in support of their Motion for Summary
Judgment, at Docket No. 116.

00144685.DOC

under Rule 12(f).  As argued below, these Admissions were long ago deemed admitted

such that they are now "redundant" and "immaterial"; further, to the extent that factual

averments contained therein are directly contrary to plaintiff's sworn deposition

testimony, they may also qualify as "scandalous" under Rule 12(f).

## I.  PLAINTIFF IS TOO LATE, BECAUSE THE ADMISSIONS WERE LONG AGO DEEMED ADMITTED.

### A.  The Facts Pertaining to Defendants' Requests for Admissions

On both 8/3/07, and again on 8/8/07, the undersigned defense counsel served the

Haddad Defendants' Requests for Admissions on plaintiff, both times via certified mail

with return receipt requested.  See Affidavit of John Barker in support of the Haddad

Defendants' Motion for Summary Judgment ("Barker Affidavit") ¶3 [at Docket No. 115].

Notwithstanding the zip code or any purported conspiracies involving the U.S. Postal

Service or the North Adams Police, plaintiff undisputedly received both these packages

containing the Requests for Admissions.  Id.[3]  The latest date on which plaintiff signed

for these Requests for Admissions was 8/10/07 (as shown on Exhibit 3, at Docket No.

116).  Plaintiff did not respond at all to this set of Requests for Admissions until his so-

called "Opposition" to them at Docket No. 122, filed on 1/3/08, almost five months later.

See Barker Affidavit ¶4.  Nor has plaintiff sought any extension(s) for responding to

these Requests for Admissions, despite his numerous requests for extensions on other

pleadings and discovery matters in this case.  Id.  Plaintiff simply ignored the Requests

for Admissions to his own peril.

---

[3]  The signed return receipts are at Exhibit 3 to Haddad Defendants' Concise Statements of Undisputed Facts in support of their Motion for Summary Judgment [at Docket No. 116].

00144685.DOC

**B.     Thus, the Requests for Admissions Are Now Deemed Admitted.**

When Requests for Admissions under Rule 36 are not responded to within the 30-day period, they are deemed admitted.  F.R.C.P. 36(a); *accord*, Reynolds Aluminum Buildings Product Co. v. Leonard, 395 Mass. 255, 259, 480 N.E.2d 1 (1985); First National Bank of Cape Cod v. North Adams Hoosac Savings Bank, 7 Mass.App.Ct. 790, 791 & n.2, 391 N.E.2d 689 (1979); Aden v. Ludvigsen, 2003 Mass.App.Div. 180, 2003 WL 22417193, n.3.

This is not an instance of an inadequate response, but rather an instance of no response at all.  Haddad Defendants' Concise Statement of Undisputed Facts ¶3; Barker Affidavit ¶4.  Nor is it a situation in which plaintiff has requested extensions.  Rather, plaintiff simply ignored these Requests for Admissions, until he realized they were being used in the Haddad Defendants' Motion for Summary Judgment.

The Haddad Defendants' Summary Judgment Motion is based, in part but not entirely, on Plaintiff's Admissions.  Courts have awarded summary judgment to defendants based on such admissions deemed admitted, "regardless of the importance of the matters thus deemed to be admitted."  Reynolds, 395 Mass. at 259, *citing cases including* Equal Employment Opportunity Comm'n v. Baby Prods. Co., 89 F.R.D. 129, 132 (E.D. Mich. 1991); *see also* First National v. North Adams Hoosac, 7 Mass.App.Ct. at 791 n.2; DiCorato v. Procopio Constr. Co., Inc., 15 Mass.L.Rptr. 372, 2002 WL 31677205, *3 (Mass. Super. 2002).

II.   **FURTHER, SOME OF PLAINTIFF'S FACTUAL ALLEGATIONS IN HIS "OPPOSITION" DIRECTLY CONFLICT WITH HIS DEPOSITION TESTIMONY, AND HIS DEPOSITION TESTIMONY SHOULD PREVAIL.**

   A.   **Prior Deposition Testimony Generally Trumps Subsequent Averments in Pleadings or Affidavits, When the Averments Are Inconsistent with the Prior Testimony.**

Various cases have addressed situations in which a party tries to create a disputed fact, by contradicting by affidavit or later pleading, statements that he or she previously made under oath at a deposition. The general rule is that the court should credit the previous deposition testimony, as opposed to the later affidavit or pleading averments. *E.g.,* Hanover Ins. Co. v. Leeds, 42 Mass.App.Ct. 54, 58, 674 N.E.2d 1091 (1997); O'Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906, 606 N.E.2d 937 (1993); *accord,* Perma Research & Development Co. v. Singer Co., 410 F.2d 572, 577-78 (2d Cir. 1969). Thus, "A party cannot create a disputed issue of fact… by… contradicting by affidavit statements previously made under oath at a deposition." Hanover, 42 Mass.App.Ct. at 58; O'Brien, 34 Mass.App.Ct. at 906. Not surprisingly, courts generally find the earlier deposition testimony to be more accurate in such situations. Hanover, 42 Mass.App.Ct. at 59; O'Brien, 34 Mass.App.Ct. at 906.

   B.   **Thus, Several of Plaintiffs' Factual Averments In His "Opposition" Should Be Disregarded.**

Even apart from the fact that these Admissions are deemed admitted by plaintiff's gross failure to respond timely, certain of plaintiff's factual averments in his Opposition [Docket No. 122] must be struck as inconsistent with his prior deposition testimony.

For example, plaintiff now claims that he informed the Haddad Defendants of his disability in May of 2002. Plaintiff's Opposition [No. 122] ¶4. But plaintiff testified

00144685.DOC

unequivocally in the first day of his deposition (pp.57-59, 127)[4] that he did not tell the

Haddad Defendants about his disability until the meeting or meetings toward the end of

November (around 11/24/02).  The next Admission deemed admitted follows from this

Admission.  Before November 2002, the Haddad Defendants did not know that plaintiff

suffered from his claimed mental disability or bi-polar condition.  The Haddad

Defendants' Concise Statement of Undisputed Facts ¶7 [at Docket No. 116].  In his

"Opposition," plaintiff denies this assertion concerning defendants' knowledge (¶5),

although he concedes that he has no knowledge of what the defendants know or knew in

their own minds.  Plaintiff went on at some length in his deposition about how he had

explained to the Haddad Defendants about unspecified "issues" or his "synapses," but

had *not* (for privacy reasons) explained to them that he was bi-polar.  Id.

Plaintiff's Opposition (¶6) denies "adamantly" that plaintiff was incapable of

performing the essential functions of his sales job at Haddad Motor Group when he was

terminated from that job in February 2003.  First, as noted, plaintiff has admitted this

fact.  Haddad Defendants' Concise Statement of Undisputed Facts ¶8.  But further,

plaintiff's ¶6 focuses on acts of alleged discrimination and disparate treatment, which are

immaterial to this issue -- whether plaintiff was even capable of performing the essential

functions of the job in the first place.  As part of plaintiff's sales job, he was required to

maintain a certain schedule and to arrive on time to work, until the accommodation after

the November 2002 meetings; even after these November meetings, plaintiff was still

required to arrive within 15 minutes of his starting time at work.  Undisputed Facts ¶11,

---

[4]  The excerpts from plaintiff's deposition that are cited herein are included at Exhibit 4 to Haddad
Defendants' Concise Statement of Undisputed Facts, in support of their Motion for Summary Judgment
[Docket No. 116] for the first day, and at Exhibit 5 to that same pleading for the second day of his
deposition.

00144685.DOC

5

16-17. The plaintiff misses the point with his ramblings about disparate treatment, "weather for golfing," and a "hostile work environment." The point is that plaintiff was incapable of punctuality, which was an essential requirement of his Haddad job. Id. ¶8.

Moreover, his lack of capability is corroborated by plaintiff's psychiatrist, Dr. Perlman (id. ¶8)[5] and also by Stern's own deposition testimony about his "erratic" work history, replete with multiple firings from jobs before and after his job at Haddad Motors" (id. ¶9). The Haddad Defendants' Concise Statement of Undisputed Facts ¶9 lists the details of Stern's employment history, including the eight jobs from which he admits he was fired outright and the several others that he left by "mutual" agreement. The fact that plaintiff sold some cars while he worked at Haddad Motors (which is not disputed) does not in any way mean that he was capable of holding steady employment or of showing up to work on time. He was not. Id. ¶¶8-9.[6]

As to plaintiff's repeated denials in his Opposition that the Haddad Defendants requested any note from him concerning his disability and its connection to his ability to arrive late to work, this too is contradicted by plaintiff's deposition testimony. Plaintiff

---

[5]  Excerpts from the deposition of Dr. Michael Perlman cited herein, or cited in the Haddad Defendants' Concise Statement of Undisputed Facts, in support of their Motion for Summary Judgment, were attached at Exhibit 6 to that concise statement [at Docket No. 116].

[6]  Note in passing, the lack of logic of plaintiff's assertion at the beginning of ¶8 of his Opposition: plaintiff states that the grace period that he himself requested would not have been "reasonable" if "plaintiff would be disciplined for arriving past this grace." If plaintiff could not have been disciplined for tardiness, then what does it mean to have a "grace period"?

   Note also in passing that plaintiff continues his assertions that defense counsel is making false statements. Plaintiff's Opposition ¶8. This time he attributes venal motives to defense counsel, "because it would directly and adversely affect their income and ability to derive a profit from representing defendants… for defendants' wrongful, egregious, intentional, discrimination, of plaintiff" [sic]. First, the *factual* statements or assertions contained in the Haddad Defendants' Summary Judgment papers are all based either on plaintiff's own admissions, plaintiff's own deposition testimony, or on the supporting Affidavit of Haddad's President George Haddad. The undersigned defense counsel obviously has no personal knowledge of the events that took place concerning plaintiff and Haddad in 2002 and 2003. Second, defense counsel will be paid regardless of the outcome of this case, thereby mooting plaintiff's arguments about venal motives.

00144685.DOC

states in his Opposition (¶¶11-13) that the Haddad Defendants did not request a doctor's note concerning his alleged mental disability, his bi-polar condition, or its connection to arriving late to work. However, he testified at his first day of deposition (pp.121-122) that Haddad managers "asked me for a doctor's note. They asked me to get a doctor's note and how it affects my being late"; when asked if the Haddad Defendants requested a doctor's note indicating the connection between his bi-polar condition and his arriving late or flex time, he responded "Yes, they asked me for a doctor's note."[7]

## III.    CONCLUSION

For the reasons stated above, the Haddad Defendants respectfully request that this Court strike plaintiff's Opposition [Docket No. 122] under Rule 12(f). Plaintiff's Admissions have already deemed admitted under Rule 36(a). Additionally, those allegations in his Opposition that are blatantly inconsistent with his own deposition testimony should be struck as "redundant," "immaterial," and/or "scandalous".

THE HADDAD DEFENDANTS,
By Their Attorneys
MICHIENZIE & SAWIN LLC

Dated: 1/15/08

BY: _____
Richard A. Sawin, Jr. – BBO NO: 546786
John C. Barker – BBO NO: 637406
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: (617) 227-5660

---

[7] These deposition excerpts are at Exhibit 5 to the Haddad Defendants' Concise Statement of Undisputed Facts [at Docket No. 116].

00144685.DOC

7

## CERTIFICATE OF SERVICE

I, John C. Barker, attorney for defendant, hereby certify that I have on this 15th day of January 2008, served a copy of the foregoing Motion to Strike Plaintiff's Opposition, by mailing a copy of same, via certified mail, return receipt requested, to the following: Mr. Scott Stern, 400 West Main Street, North Adams, MA 01247.

_John C. Barker_

John C. Barker

00144685.DOC

8