UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS                CIVIL ACTION No.05-30160-MAP

SCOTT STERN,                          )
          Plaintiff,                 )
    vs.                               )
                               )
HADDAD MOTOR GROUP, INC.; JAMES        )
SALVIE, GENERAL SALES MANAGER,         )
TIMOTHY CARDILLO, SALES                )
MANAGER, DAVID MICHAEL COGGINS,        )
GENERAL MANAGER, GEORGE                )
HADDAD, in their Official and Personal )
Capacities of HADDAD MOTOR GROUP,      )
INC.                                   )
                                       )
     Defendants                       )



**AFFIDAVIT OF SCOTT STERN IN OPPOSITION TO DEFENDANT GEORGE
HADDAD'S AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, Scott L. Stern, hereby depose under oath as follows:

    1.  I am Scott Stern of 400 West Main Street in North Adams, Massachusetts.

    2.  On or about January 13, 2006, I, Scott Stern, informed this Honorable Court that

the aforementioned docket  and action relative to the defendants was incorrectly

named.

    3.  On or about January 13, 2006, this Honorable Court correctly changed the name

of one of the defendants to Haddad Motor Group, Inc.

    4.  I was employed at the Haddad Motor Group, Inc between late April of 2002 and

February 3, 2003.  As such, I have personal knowledge of the facts set forth herein, and if

called and sworn to testify, could competently testify thereto.

    5.  I, Scott Stern, do hereby state that the Affidavit of George Haddad does state

that he signed the Affidavit of George Haddad in Support of Motion for Summary Judgment under the pains and penalties of perjury.

6.  I believe that George Haddad, defendant, has averred false statements to this Honorable Court and committed the act of perjury in order to achieve a litigious advantage over his former employee, your movant, an individual with a documented disability.

7.  I, Scott Stern, had very little interaction with George Haddad during my employment with Haddad Motor Group, Inc except on one particular occasion that involved the customer "Phillips" and a Finance Manager, Randy Farmer.

8.  During the incident aforementioned in paragraph seven (7) and plaintiff herein attaches a copy as SLS Exhibit #46) of my personal notes of the "Phillips" incident, to which I was directed to have a personal meeting with George Haddad, regarding the incident, at the North Adams location of Haddad Motor Group, Inc. I hereby attach, for this Honorable Court's judicious review what transpired to warrant a meeting by and between the President of Haddad Motor Group, Inc., George Haddad, and myself.

9.  In support of the fact that management manipulated numbers in order to take advantage of the customers, such as what could have occurred to my customer, "Phillips" herein is another incident that occurred at Haddad Motor Group, Inc, which shows the dishonesty of the management, the dissatisfaction of the customers, and of the finance managers relative to the "Margraves" incident. Attached is a copy of SLS Exhibit #47 "Margraves" document during my employment at Haddad Motor Group, Inc. The purpose of Exhibit #47 is to show this Honorable Court that the management was dishonest towards their customers.

Plaintiff's Affidavit in Opposition to Affidavit of George Haddad with Exhibits                    2

10. On November 27, 2002, James Salvie, defendant, Sales Manager, of the Pittsfield-Lenox Haddad Motor Group, Inc. screamed at me, berated me, and caused me personal anguish, humiliation, embarrassment and degraded my person after the other managers had left.

11. I believe I recall walking out of the meeting, upset and shaken, and seeing George Haddad across the doorway of the office of David Michael Coggins while he was in process of speaking before a luncheon with the employees of the dealership. This incident occurred after the meeting with the managers Timothy Cardillo and David Michael Coggins. The effect of which was to demoralize my ability to sell vehicles after this incident probably in hopes that I would leave the employment at the dealerships by my own accord from the horrific treatment I was receiving at the hands of management.

12. During the incident that James Salvie, defendant, Sales Manager, of the Pittsfield-Lenox Haddad Motor Group, Inc. division, screamed at me, berated me, and caused me personal anguish, humiliation, embarrassment; it may have been on November 27, 2002, directly after the meeting with the Managers. The effect of which was intended, and succeeded in demoralizing my ability to sell vehicles at the same volume after this incident. This incident occurred in the office of Michael Coggins; George Haddad was conducting a luncheon and giving away Christmas turkeys and did nothing to stop the extremely loud, screaming, that was emanating from the office of Michael Coggins by his manager James Salvie against my person.

13. I believe that George Haddad, as President of Haddad Motor Group, Inc. should have attempted to intercede, and stop the abuse that James Salvie was afflicting upon my person during the luncheon at the Haddad Motor Group, Inc.

14. I believe George Haddad was negligent in not preventing the mistreatment from his manager, James Salvie, defendant, and allowed the mistreatment to occur in order to cause my person to be forced to leave the position of Sales and Leasing Consultant.

15. I believe that on or about May of 2006, James Salvie, was either terminated at his employment or willingly left his employment with Haddad Motor Group, Inc.

16. I believe that on or about May of 2006, James Salvie went into business with two other individuals, Anthony Mazzeo, and Patrick Sheehan. The new business is named Signature Series Pre-Owned Vehicles a d/b/a of Berkshire Auto Group, LLC and is conducted at 768 East Street, Pittsfield, Massachusetts. (SLS Exhibit #48)

17. I believe that the incident that George Haddad refers to as "certain stalking incidents" in paragraph four (4) of the Affidavit of George Haddad as grounds for terminating my person from employment refers to an incident that occurred in May of 2002.

18. I believe that the reference George Haddad avers was discussed with management at the time that it occurred in May of 2002. I was not terminated, nor written up, by and because of this incident in May of 2002.

19. After May of 2002 I continued to be employed at Haddad Motor Group, Inc. as a Sales and Leasing Representative and I constantly excelled at selling and leasing new and used vehicles for Haddad Motor Group, Inc.; selling sixteen (16) vehicles in June of 2002, the most for the dealership during that month.

20. I believe that my ability to outsell some of the other salespeople, at times, including, but not limited to, the relative of James Salvie, Pat Cody, and friends of James Salvie, James Acor, and Matt Schilling, was upsetting to these people because I was fairly new,

having only been working at defendants dealership for less than three months.

21.  I believe that James Salvie used his influence and position in management, egregiously, and purposely against my person, in order to cause my person the intentional infliction of emotional distress through various means including, but not limited to, the incidents that occurred before November 27, 2002, November 27, 2002 and other incidents that continued by the purposeful depriving me of sales leads to intentionally interfere and cause me to ultimately lose sales and the right to earn an income.  I believe that David Michael Coggins and Timothy Cardillo participated in various acts, actions and activities to deprive my person to earn a living by denying me commissions on sales, or spiffs, and split commissions at the Haddad Motor Group, Inc. in an effort to further cause my person the loss of income and the right to earn an income.

22.  I believe between April 2002 and February 2003 I sold vehicles to Doctors, Lawyers, Judges, and other, as equally important individuals, for Haddad Motor Group, Inc. as a Sales and Leasing Representative.

23. I believe that  James Salvie, General Sales Manager, had purposely, intentionally, negligently interfered with my ability to sell vehicles for Haddad Motor Group, Inc. on more than one occasion prior to November 27, 2002, and after November 27, 2002.

24. I believe that certain and particular statements of George Haddad, defendant, President of Haddad Motor Group, Inc. are averred and intended to present false, fraudulent and misleading information to this Honorable Court.

25. I believe that the certain and particular statements paragraph twenty three (23) aforementioned makes reference to, include, but are not limited to, paragraph five (5) of the Affidavit of George Haddad, the averment "We asked Stern what period of time he would need to

accommodate his alleged disability, and he told us that he wanted a 15-minute "grace" period."

26. The statement averred by George Haddad in paragraph five (5) of the Affidavit of George Haddad is purposely intended to mislead this Honorable Court by an averment that George Haddad, defendant, was present at the meetings of November 26, 2002, and November 27, 2002. *George Haddad was not present at either meeting on November 26, 2002 and November 27, 2002.*

27. The Affidavit of George Haddad avers "We asked", as if George Haddad was a participant of the meetings, he was not a participant and I positively believe and know that he did not ask of me anything at any time during November 27, 2002.

28. I did not request, as defendant George Haddad avers, in the Affidavit of George Haddad, that I sought a "15-minute"grace" period" but rather, I personally requested "Flex Time" in order to reasonably accommodate my disability, bipolar disorder on November 27, 2002; other documents, including, but not limited to, the original charge filed with the Massachusetts Commission Against Discrimination corroborate this averment. (See Notes of Plaintiff Scott Stern dated between November 25, 2002 and December 3, 2002; See also intake notes by Phyllis Mitchell in regard to suggesting to plaintiff to request "Flex Time.")

29. On November 26, 2002, a meeting took place, at which time I presented a doctor's note from Dr. Michael Perlman which indicated the name of the Doctor, the diagnosis, and, the order for bloodwork which was written on the note.

30. I believe I recall that the Managers were not knowledgeable of the reason for the bloodwork and asked me to explain what the notes writing meant, which I did.

31. I believe that the note I showed the defendants was in my wallet prior to entering the office of David Michael Coggins, defendant.

32. I believe that I had been carrying the note relative to "bloodwork" in my wallet for at least several months and prior to my employment with Haddad Motor Group, Inc. and I believe that the note was dated March 28, 2000, and the note had the words "CBC and diff Liver Profile" on it with Dr. Perlman writing, in parentheses "(includes SGOT, SGPT, Bilerubin)" and at the left bottom corner of the note was written the words "Diagnosis Bipolar Disorder", issued on medical prescription paper by Dr. Michael Perlman, DEA#AP4510827. with Dr. Michael Perlman's name and address at the head of said medical transcription paper, and the designation of M.D. in no less than two places on said document which is herein presented as SLS Exhibit #49 to this Honorable Court.

33. I believe I witnessed each of the defendants read the note that I handed to one of the defendants, which they then passed it around the room, each reviewing it and reading it, and the same note is herein attached as SLS Exhibit #49 to this Affidavit of Scott Stern in Opposition to Affidavit of George Haddad's in Support of Motion for Summary Judgment.

34. On November 26, 2002, the meeting that took place transpired in defendant David Michael Coggins office; defendant David Michael Coggins, defendant James Salvie, and defendant Timothy Cardillo were present; Joseph Scibelli, who was not named as a defendant was also present. Defendant George Haddad, President of Haddad Motor Group, Inc., was not present at this meeting.

35. I declare, aver and believe that on November 26, 2002, George Haddad, defendant President of Haddad Motor Group, Inc., was not present at the meetings aforementioned in paragraphs twenty-five (25) through thirty-three (33).

36. At the November 26, 2002 the managers, defendants David Michael Coggins, James Salvie, and Timothy Cardillo Group, Inc requested that I receive from Dr. Michael Perlman,

a doctor's note. Joseph Scibelli, Used Car Manager, was also present at this meeting.

37. On November 26, 2002, I informed the management at the meeting referred to in paragraphs thirty-two (32) that I, Scott Stern, had a previously scheduled Doctor's appointment with my Dr., Dr. Michael Perlman in Northampton, Massachusetts.

38. On November 26, 2002, David Michael Coggins, James Salvie, Timothy Cardillo, were aware and knowledgeable that I was not going to be arriving, on November 27, 2002 at the scheduled time, by and because of my doctor's appointment. At this meeting, after presenting the note from Dr. Michael Perlman, the management purposely changed my schedule again, to all early shifts, in order to make it even harder to grant me a "reasonable accommodation" and "flex-time" pursuant to the ADA.

39. I believe it was because of the management's attitude and behavior after I presented the note, that I informed them that I would still be seeking my rights under the Americans with Disabilities Act, which, they then tried to make it sound as if I was "threatening" them to invoke my rights. It was then that I reasonably requested for a reasonable accommodation, to which I was "denied" by David Michael Coggins, which I asked if I could submit it in writing, and that too was "denied."

40. I believe that the word in quotes in paragraph thirty nine (39) was the actual word that David Michael Coggins stated to me after my request for a "Reasonable Accomodation."

41. I believe that on November 27, 2002 I attended an appointment with Dr. Michael Perlman and requested a note from him on this same day pursuant to the request of my employer, the defendant Managers of Haddad Motor Group, Inc.

42. I believe I would not have asked for a doctor's note from my doctor if the defendants at the meeting of November 26, 2002 had not requested that I obtain a

note from my doctor, Doctor Michael Perlman, on November 27, 2002.

43. I believe that I personally handed the note from Dr. Michael Perlman, to defendant James Salvie, whom proceeded to walk away with the note, prior to the meeting with defendant James Salvie and the other defendants. I believe that defendant James Salvie may have made a copy of the note, as he walked in the direction of the copy center room, away from me. I had handed defendant James Salvie the note outside of defendant David Michael Coggins office window, and James Salvie turned right, down the corridor to the back offices. In the corridor he walked down there is a copier/fax machine in a room for the staff to use. In the back offices there may have been another copier as well.

44. I believe that a meeting took place on November 27, 2002 in the office of defendant David Michael Coggins; Present was defendant David Michael Coggins, defendant James Salvie, defendant Timothy Cardillo and Joseph Scibelli.

45. I believe that the note that Counsel John C. Barker has submitted for an Exhibit, marked as Exhibit "1" is the note that I had received from my Doctor, Doctor Michael Perlman on November 27, 2002.

46. I believe that the defendants were unclear of what I was requesting as a "Reasonable Accommodation" and the term "Flex Time" at the meeting of November 27, 2002. Furthermore, I had to explain what was meant by the term "Flex Time" and "Reasonable Accommodation" to the defendants. I believe the "Reasonable Accommodation" and "Flex Time" I sought would have cost the defendant Haddad Motor Group, Inc zero (0) dollars to institute and maintain on my behalf. Contrary to the Affidavit of George Haddad, I firmly believe that it would not have had any demonstrable effect on the "morale" of the other sales people at defendants place of employment.

47. I believe that George Haddad was not present at the meeting in the office of David Michael Coggins, with defendants Timothy Cardillo and James Salvie, on November 27, 2002.

48. I believe that I requested the opportunity to submit, orally, and in writing, a "Reasonable Accommodation" request, as I was instructed to, by the Massachusetts Office on Disability of which, David Michael Coggins, "denied" my request. (See page one of Client notes from Phyllis Mitchell, whom was plaintiff's advocate on two separate hearings at the Massachusetts Commission Against Discrimination (Exhibit #50). I believe that George Haddad was not in the office of David Michael Coggins, at any time, on November 27, 2002 to hear what I requested from the defendants.

49. I, Scott Stern, believe that the counsel John C. Barker, had averred false statements and filed materially false responses to the tribunal known as the MCAD in order to achieve a litigious advantage over this plaintiff in the Massachusetts Commission Against Discrimination proceedings.

50. I, Scott Stern, plaintiff in the above captioned matter, hereby state that Counsel John C. Barker has once again, averred and filed false, fraudulent, and misleading statements that are not only contemptuous, but are insulting to the integrity of this Honorable Court, and, defense counsels act and actions should be considered grounds for sanctions and this Honorable Court should take judicial notice thereof.

51. I believe that the statements averred by George Haddad in his Affidavit are misleading, false and are an act of perjury in order to obtain a litigious advantage over plaintiff, an individual with a documented disability, contrary to the policies of the Haddad Motor Group, Inc as stipulated on page six (6), seven (7) and eight (8) of the Haddad Motors employee

handbook (SLS Exhibit #51)

52. I believe that Counsel John C. Barker has caused and averred false pleadings on behalf of the defendants in order to achieve a litigious advantage over plaintiff, an individual with a documented disability.

53. I believe that had I not sued the Massachusetts Commission Against Discrimination, and the Equal Employment Opportunity Commission, I would have the likelihood of counsel by and for these proceedings.

54. I believe that I have been in contact with the Commissioner of the Massachusetts Commission Against Discrimination, Martin Ebel, of Springfield on or about December 21, 2007 and on several other occasions during 2007, within the last three or four months and during January of 2008.

55. I believe that I have new documentary evidence that was not presented to the Massachusetts Commission Against Discrimination during the hearings and Commissioner Ebel personally requested that your movant mail this new evidence to his attention, for his review.

56. I believe that Commissioner Ebel has stated that he cannot make any promises of reopening the MCAD case, but will certainly endeavor to review the new documentation in an unbiased and objective viewpoint in this matter considering the new documentary evidence I have suggested he review.

57. I believe that the Americans with Disabilities Act was intended to protect individuals such as myself from the discrimination I suffered at the hands, literally, of the defendants, (Defendant James Salvie pushed, pulled and forced me out of a meeting).

58. I believe the Americans with Disabilities Act was enacted in order to assist,

advocate, and protect this person, whom has a documented disability, that are denied legal

protection and legal advocacy, in legal proceedings, to protect their rights, liberties, privileges and

immunities and this Court has the power to make right, what the defendants did wrong.

59. I believe that the defendants violated my constitutional and civil rights of the United

States and Massachusetts and the laws of the United States and Massachusetts, by their egregious,

malicious, and wrongful termination of my employment, including, but not limited to, the ADA and

other statutory laws and regulations of the United States and Massachusetts.

I have stated all the above based upon my own knowledge, information and belief;

and so far as my information and belief, I believe this information to be true.

Sworn to this 18 day of ~~December~~ January, 2008 under the pains and penalties of perjury.

Scott Stern
Sui Juris
All Rights Reserved without Prejudice
400 West Main Street
North Adams, Massachusetts 01247

## ACKNOWLEDGEMENT CERTIFICATE

On this _18th_ day of _January_, 2008, before me, the undersigned Notary Public,

personally appeared _Scott Stern_ proved to me through satisfactory evidence of

identification, which were Massachusetts Operators License, to be the person whose name is

signed on the preceding or attached document and acknowledged to me that he signed it

voluntarily for its stated purpose.

My Commission Expires:

Signature of Notary Public

Kathleen R. Kulig
Notary Public
My Commission Expires January 24, 2014
Commonwealth of Massachusetts

Plaintiff's Affidavit in Opposition to Affidavit of George Haddad with Exhibits       12