UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS                CIVIL ACTION No.05-30160-MAP

SCOTT STERN,                              )
      Plaintiff,                          )
  vs.                                     )
                                          )
HADDAD MOTOR GROUP, INC.; JAMES           )
SALVIE, GENERAL SALES MANAGER,            )
TIMOTHY CARDILLO, SALES                   )
MANAGER, DAVID MICHAEL COGGINS,           )
GENERAL MANAGER, GEORGE                   )
HADDAD, in their Official and Personal    )
Capacities of HADDAD MOTOR GROUP,         )
INC.                                      )
                                          )
      Defendants                          )



## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the plaintiff, Scott Stern, submits this memorandum of law in support of his motion for summary judgment on his claim for an order to proceed to trial by jury, by and because there are material facts that are in dispute and there are genuine issues relative to the defendants actions against your movant during movants employment with the defendant Haddad Motor Group, Inc. in this matter before this Honorable Court.

The proper office of summary judgment "is to pierce the boilerplate of pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Likewise, a summary judgment motion cannot be defeated by conclusory allegations, harsh invective, empty rhetoric, strained inferences, or unsupported conjecture. See Medina-Munoz v.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). When properly invoked, Rule 56(f) allows a party opposing summary judgment additional time to conduct discovery on matters related to the motion. See Resolution Trust Corp. v. North Bridge Associates, Inc., 22 F.3d 1198, 1203 (1st Cir. 1994). To benefit from the rule, however, a party must meet several requirements. First, although a request for Rule 56(f) relief need not be expressly labeled as such, the party invoking the rule at a minimum must ask the court to refrain from acting on the summary judgment request until additional discovery can be conducted. See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996); Dow v. United Bhd. of Carpenters, 1 F.3d 56, 61 (1st Cir. 1993). In other words, a party ordinarily may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful. Second, a party relying on Rule 56(f) must demonstrate that it was diligent in pursuing discovery before the summary judgment initiative surfaced. See Ayala-Gerena, 95 F.3d at 92 ("Rule 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights."). Finally, the party must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist" and "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Resolution Trust Corp., 22 F.3d at 1203.

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court has pointed out that in response to a properly supported summary judgment motion this rule requires the nonmoving party to respond by submitting evidentiary materials that designate

"specific facts showing that there is a *genuine issue* for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requirement, however, "do[es] not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Additionally, "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968), quoted in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In other words, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In determining whether summary judgment is warranted, the "evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Therefore, [w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case that properly may be considered on a motion for judgment as a matter of law. *Id.* at 148-49. Thus, *Reeves* clearly established that while the plaintiff's ultimate burden at trial is to prove her case by the preponderance of the evidence, this standard is not applicable to either judgment as a matter of law or summary judgment. Moreover, the Supreme Court in *Reeves* took great

care to correct any misconceptions that may have arisen from *Hicks* by painstakingly explaining that the *McDonnell Douglas/Burdine/Hicks* proof scheme had not imposed a heightened proof standard for judgment as a matter of law [or summary judgment], *i.e.*, that while *McDonnell Douglas permits* a finding for plaintiff, such a finding is not *compelled.*

The Supreme Court further explained that "[t]o hold otherwise would be effectively to insulate an entire category of employment discrimination cases" from judgment as a matter of law. *Id.* at 148. To emphasize that its decision in *Reeves* had not altered this standard, this Court admonished "that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Id.*, quoting *Hicks*, 509 U.S. at 524. Therefore, while the trial court must evaluate the evidence in accordance with the *McDonnell Douglas/Burdine/Hicks/Reeves* quartet of cases, the summary judgment standard established by the Court in the *Matsushita/Catrett/Anderson* trilogy remains unchanged. This conclusion is bolstered by the Supreme Court's language in *Anderson*, 477 U.S. at 252, stating thirteen years after *McDonnell Douglas* that on a motion for summary judgment, the trial judge's function is *not* to weigh the evidence and make credibility determinations to decide if the plaintiff has *proved* his case by a preponderance of the evidence, but to determine "whether reasonable jurors *could find* by a preponderance of the evidence that the plaintiff is entitled to a verdict - 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it." [emphasis supplied]. Indeed, in *Ryther v. KARE-11*, 108 F.3d 832, 838 (8th Cir. 1997) (*en banc*) the court concluded that after *Hicks*, "in all discrimination cases, the plaintiff must produce sufficient evidence of the elements of the prima facie case and

where necessary, adduce sufficient proof of pretext to meet the *traditional tests* of summary judgment and judgment as a matter of law." [emphasis supplied].

Other Circuits have reached the same conclusion. *See, e.g., Memberu v Allright Parking Systems, Inc.*, 93 Fed. Appx. 603, 606 (5th Cir. 2004) ("To survive summary judgment… the employee need only present sufficient evidence for a reasonable factfinder to infer discrimination."); *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) ("[T]he standard for determining whether the evidence was sufficient to sustain the submission of the plaintiff's case to the jury was simply whether on the basis of that evidence, a factfinder could reasonably find the essential elements of a case of discrimination."); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 61 (1st Cir. 1999) ("But the question at summary judgment is not which of the possible explanations is most convincing, it is whether the plaintiff has produced enough evidence to raise a genuine issue of material fact regarding *her* explanation."); *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812-13 (9th Cir. 2004) ("When [the] evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason. The existence of this question of material fact will ordinarily preclude the granting of summary judgment.")

In both *McDonnell Douglas* and *Burdine* the issues resolved by the Supreme Court arose in the context of a full bench trial, not on a motion for summary judgment. Thus, the proof paradigm prescribed in those cases describes the burdens required of the parties to prevail at trial, not their burdens at summary judgment, which are addressed by the Court's "summary judgment trilogy" of *Matsushita*, *Catrett*, and *Anderson* as

described above. Indeed, in *Burdine*, the Court concluded that the burden placed on the plaintiff by the third step of *McDonnell Douglas* "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination," *Burdine*, 450 U.S. at 253, "now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. Thus, the preponderance of the evidence standard generally required for plaintiffs to prevail at trial in other kinds of civil cases applies only to the plaintiff's "ultimate burden" under *McDonnel Douglas*.

In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), another intentional discrimination case arising from "full bench trial," *id.* at 505, the issue involved, not summary judgment standard, but standard of proof at trial, *i.* "whether [under the *McDonnell Douglas* framework]...trier of fact's rejection of the employer's asserted reasons the [employer's challenged] actions mandates a finding for plaintiff." *Id.* at 504. The Court held that, rather than *compelling* a finding for plaintiff, "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer ultimate fact of intentional discrimination." *Id.* at 511.

The argument that defendants aver to this Honorable Court are meritless. The defendants attempt, albeit poorly, that plaintiff was terminated for incidents that occur six (6) to eight (8) months prior to the egregious termination of plaintiff's employment by defendant James Salvie. Likewise, on other grounds for wrongfully terminating plaintiff, defendant George Haddad uses as an affirmative defense that "morale" would be sacrificed if plaintiff were not to be terminated. This argument too, holds very little weight against the documentation that plaintiff provides this Honorable Court in order for

this matter to be adjudicated by a jury trial since there are genuine issues of material fact and a "reasonable factfinder can find the essential elements of discrimination"

In *Smith v. City of Jackson, Mississippi*, 544 U.S. 228 (2005), the Supreme Court held that the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, authorizes disparate impact claims. *Smith* also established that the standard for determining the lawfulness of a practice that disproportionately affects older workers is the "reasonable factor other than age" provision found in § 4(f)(1) of the ADEA, 29 U.S.C. § 623(f)(1).

In *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 807 (8th Cir. 2003), the court below stated that once the defendant has met this burden of producing a legitimate, non-discriminatory reason for the challenged action, pursuant to the second step of the *McDonnell Douglas* proof paradigm, [ t]he presumption of discrimination [that arises from the plaintiff's prima facie case] disappears and [plaintiff] "can avoid summary judgment only if the evidence considered *in its entirety* (1) creates a fact issue as to whether the employer's proffered reasons are pretextual *and* (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." (Quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996) (emphasis supplied); *see Kohrt*, 364 F.3d at 897 (same). Additionally, in evaluating the evidence to determine whether it satisfies this standard, the court must view it in the light most favorable to the plaintiff and must give the plaintiff the benefit of all reasonable inferences. *Mayer*, 318 F.3d at 806. Further, the court must be "mindful 'that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.'" *Id.* quoting *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996), the Supreme Court concluded as a matter of law that the trier of fact is not permitted to draw an inference of age discrimination from the replacement of an older worker with one who is "insignificantly younger." Although the Court said that the fact that a replacement is "substantially younger than the plaintiff" can be a "reliable indicator of age discrimination," id., the Court did not establish a minimum age difference, which would preclude the factfinder from drawing the inference.

Further discovery will show that not only did the defendants replace plaintiff with a younger worker, in addition to the wrongful, egregious treatment that plaintiff was subjected to, but that the younger worker was significantly younger, in as much as ten years younger, and, had the same name as plaintiff, Scott! They also placed this "new employee' on the day that plaintiff was terminated at the same desk that plaintiff had maintained at the dealership. Plaintiff recalls being directly telephoned by this new younger employee "Scott" several days after the termination on February 3, 2003.

"The dominant purpose" of Title VII "is to root out discrimination in employment." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). Congress sought the elimination of discrimination not only through force of private litigation but also through encouragement of voluntary compliance and remediation "without resort to the courts." *Id.* at 77-78. Consequently, the lower courts agree that Section 704(a) of Title VII protects against retaliation in the absence of an actual underlying violation..

Unfortunately, overtly discriminatory expressions based on disability—including pervasive use of such terms as "cripple" or "retard"—have also permeated some workplaces. *See, e.g., Luttrell v. Certified Grocers Midwest, Inc.*, 2003 WL 22844239, at

*3 (N.D. Ill. Dec. 1, 2003); *EEOC v. Luby's Inc.*, 2005 WL 3560616, at *5 (D. Ariz. Dec. 29, 2005); *Fa-rington v. Bath Iron Works Corp.*, 2003 WL 278172 (D. Me. Feb. 7, 2003).

May the Court recall defendant David Michael Coggins utilizing the term "crazy" in front of plaintiff and other employees, contradicting defendant George Haddad's concern about "morale." In addition, defense counsel to further subject plaintiff to further humiliation by claiming his behavior was "not entirely unfounded" through false and misleading statements to the MCAD and this Honorable Court.

Whether an employee who plays a role in a decisionmaking process acts as an agent of the employer is governed by traditional agency law principles. The conduct of an official is properly imputed to his or her employer when the official "exercises the authority actually delegated to him by his employer." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 70 (1986). Employer liability is not limited to the conduct of the last decisionmaker in a chain of decisionmaking, the so called "ultimate decisionmaker." In the case of a termination, that last decisionmaker – in this case the one who selected termination as the sanction – is not the only, or necessarily the most important, decisionmaking agent. "Agency principles [impose] vicarious liability for harm caused by misuse of supervisory authority." *Burlington Industries v. Ellerth*, 524 U.S. 742, 764 (1998). That principle is equally applicable regardless of when in the decisionmaking process the misuse of authority occurs. The far different "ultimate decisionmaker" standard proposed by petitioner, and adopted by the Fourth Circuit, has – as a district judge in that circuit recently observed –"the unfortunate potential to create a safe harbor for workplace discrimination." A plaintiff must demonstrate that an improperly motivated official, acting as an agent of his or her employer, took some act that caused the dismissal or other injury complained of. That improperly motivated act must be a but-for cause; it must have had "a determinative influence on the outcome" of the decisionmaking process. *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 131, 141 (2000).

Neither a showing that the ultimate decisionmaker made an "independent judgment" about the facts presented by other officials, nor evidence that that decisionmaker undertook an "independent investigation" of the facts, will necessarily preclude in every case a finding that the invidiously motivated act caused the injury complained of. The exculpatory evidence proffered by an employer to show that a disputed adverse action was not caused by an earlier discriminatory act must specifically address the particular type of discriminatory act taken, and the manner in which that act assertedly brought about the adverse action. "[T]he courts have consistently held employers liable for the discriminatory discharges of employees by supervisory personnel." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 77 (1986).
"[T]here is nothing remarkable in the fact that claims against employers for discriminatory actions . . . like . . . firing . . . have resulted in employer liability once the discrimination is shown." *Faragher v. City of Boca Raton*, 524 U.S. 775, 790 (1998). Employer liability for a discriminatory discharge is an unremarkable application of the established agency principle that an employer is liable when its employee uses, or abuses, his or her authority. "[T]he supervisor acts within the scope of this authority when he makes discriminatory decisions in . . . firing. . . ." *Faragher*, 524 U.S. at 791. "[A] supervisory employee who fires a subordinate is doing the kind of thing that he is authorized to do, and the wrongful intent with which he does it does not carry his behavior so beyond the orbit of his responsibilities as to excuse the employer." *Shager v. Upjohn Co.*, 913 F.3d 398, 405 (7th Cir. 1990). That principle is not limited to dismissals or any other particular type of official act. Regardless of the type of authority wielded by an official, "[i]t is well established that traditional vicarious liability rules make principals or employers vicariously liable for the acts of their agents or employee in the scope of their authority." *Meyer v. Holley*, 537 U.S. 250, 285 (2003); see *Karibian v. Columbia University*, 14 F.3d 773, 777 (2d Cir.) (employer liable where supervisor "wields the employer's authority"), *cert. denied*, 512 U.S. 1213 (1994); 2 F. Harper, F. James & O. Gray, The

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Law of Torts 24 (2d ed. 1956) (employer liable when "the servant is engaged in performing what he is hired to do").

"[W]here a supervisor exercises the authority actually delegated to him by his employer, by making decisions . . .affecting the employment status of his subordinates, such actions are properly imputed to the employer whose delegation of authority empowered the supervisor to make them." *Meritor*, 477 U.S. at 70. "[T]he employer is vicariously liable for . . . company acts that can be performed only by the exercise of specific authority granted by the employer." *Burlington Industries v. Ellerth*, 524 U.S. 742, 768 (1998) (Thomas, J., dissenting). Such authority or power, "once granted, does not disappear like a magic gift when it is wrongfully used." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971).

Where a company official, acting with an unlawful purpose, uses his or her authority to dismiss an employee or take some other official action, the courts have held the employer liable without regard to *why* the official chose to discriminate on the basis of race, gender, national origin, age, disability, or other prohibited characteristic. Specifically, a plaintiff who has been the victim of a discriminatory official action is not required to prove that the official involved believed that that discrimination was somehow in the interests of the employer. Doubtless it is frequently the case that a biased official believes that employees of a particular race, gender, or age are inferior workers, but proof of such a belief is *not* necessary to establish employer liability for the exercise of official authority. Under *Faragher* and *Ellerth*, for example, an employer is strictly liable if a supervisor dismisses a subordinate because she spurned his sexual advances, even though the supervisor in doing so would be acting for "personal motives, motives unrelated and even antithetical to the objectives of the employer." *Ellerth*, 524 U.S. at 776.

The application of this principle is easy in a case in which a disputed employment action, such as a dismissal, was solely the result of a single decision. But, except for very small employers, employment actions are more often the result of a number of discrete decisions that may

involve two or more different officials, each authorized to play a distinct role. This Court has repeatedly recognized that employers, rather than leaving decisions (particularly important decisions such as promotions and dismissals) to the exercise of ad hoc discretion, frequently utilize instead some sort of structured "decisionmaking process." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 137, 141 (2000) (plaintiff dismissed by company president based on recommendations of and information from three supervisors); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 236, 248 (1989) (partnership denied by Policy Board after comments by numerous partners and recommendation by Admissions Committee); see *Delaware State College v. Ricks*, 449 U.S. 250, 252 (1980) (tenure denied by Board of Trustees based on recommendation of tenure committee and Faculty Senate).

Wherefore, movant, an individual with a documented disability, does hereby pray for, respectfully, from this Honorable Court, an ORDER granting MOTION FOR SUMMARY JUDGMENT, and, in the alternative, a trial by jury as is demanded by plaintiff's complaint at the initiation of these proceedings. Plaintiff prays that this Honorable Court will also grant plaintiff the right to supplement this memorandum of law, in order to further protect plaintiff's rights, liberties and privileges and to further grant plaintiff's request pursuant to F.R.C.P. 56(f) to allow plaintiff additional discovery in this litigation for the good reasons herein cited.

Most respectfully submitted this 18 day of January 2008.

_____
Scott Stern
Sui Juris
All Rights Reserved without Prejudice
400 West Main Street
North Adams, Massachusetts 01247

## CERTIFICATE OF SERVICE

I, Scott Stern, Pro-Se Plaintiff, in this action of Scott Stern v. Haddad Motor Group, Inc., et. al., in the United States District Court, Case Number 05-30160-MAP, certify that I have caused a copy of the foregoing documents:

Copy of "MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT"

Copy of "CERTIFICATE OF SERVICE"

to be delivered, postage prepaid, first class mailing, United States Postal Service, to the defendants, at their respective counsel's address this 16 day of January 2008.

Michenzie & Sewin, LLC
Richard Sawin, Resident Agent and Manager
John Barker
745 Boylston Street
Boston, Massachusetts 02116-2636

to be delivered, by hand to:

United States District Court
1550 Main Street
Springfield, Massachusetts 01103
Attn: Clerk of Courts

_____          January 18, 2008
Scott Stern                         Date
Sui Juris
All Rights Reserved without Prejudice
400 West Main Street
North Adams, Massachusetts 01247