UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

SPRINGFIELD, MASSACHUSETTS    CIVIL ACTION NO. 3/05-CV-30160-KPN

| | |
|---|---|
| SCOTT STERN,<br>    Plaintiff<br><br>v.<br><br>HADDAD DEALERSHIPS OF THE<br>BERKSHIRES, INC.; JAMES SALVIE,<br>GENERAL SALES MANAGER;<br>TIMOTHY CARDILLO, SALES<br>MANAGER; MICHAEL COGGINS,<br>GENERAL MANAGER, IN THEIR<br>PERSONAL AND OFFICIAL<br>CAPACITIES OF HADDAD<br>DEALERSHIPS OF THE BERKSHIRES,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THE HADDAD DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now come defendants Haddad Dealerships of the Berkshires, Inc.,[1] James Salvie, Michael Coggins, and Timothy Cardillo (collectively the "Haddad Defendants"), through their counsel of record, and hereby file and serve the following Opposition to plaintiff's untimely Motion for Summary Judgment [Docket No. 133]. In support of the Haddad Defendants' Opposition herein, the Haddad Defendants incorporate by reference their own Summary Judgment Memorandum [Docket No. 113] and their own supporting Concise Statement of Undisputed Facts [Docket No. 116]. The Haddad Defendants are also submitting herewith a separate Concise Statement of Undisputed Facts, pursuant to U.S. District Court Local Rule 56.1, in support of their Opposition to plaintiff's Summary

---

[1] The correct name for this party is Haddad Motor Group, Inc.

00147722.DOC

1

Judgment Motion.[2]

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The plaintiff filed his Summary Judgment Motion substantially past the litigation deadline, and has failed to comply with Local Rule 56.1 in including a Concise Statement of Undisputed Facts. For these procedural reasons alone, his Motion for Summary Judgment should be denied.

Substantively, plaintiff has not created any questions of fact in this case that get him past his own admissions in this case, on which admissions the Haddad Defendants' Summary Judgment Motion are partly based. Plaintiff has already admitted that he was not capable of performing the essential functions of his sales job at Haddad, and that he was chronically tardy to that job. Undisputed Facts ¶8, 17. These are the primary reasons he was fired. See id.; Affidavit of George Haddad [Docket No. 114] ¶4. In addition, plaintiff had difficulties getting along with other employees and customers, and he has admitted to at least one stalking incident. Undisputed Facts ¶19; see Haddad Affidavit ¶4. That plaintiff disputes one of the stalking incidents, involving co-worker Angela Torre, is immaterial to the pending Summary Judgment Motions; the main reason plaintiff was fired was tardiness and inability to perform the job; the stalking incidents contributed to this, but the Haddad Defendants have never characterized the stalking incidents as the sole or even primary reason for plaintiff's termination. Nor is it relevant that plaintiff did sell cars and can show that certain customers were happy with his services, or that Haddad Motors had complaints from other customers unrelated to the

---

[2] The Concise Statement of Undisputed Facts submitted with this Opposition is largely identical to the Concise Statement of Undisputed Facts submitted with Haddad Defendants own Summary Judgment Motion. As in the Memorandum of Law supporting the Haddad Defendants' own Summary Judgment Motion, references herein to the paragraphs from the Concise Statement of Undisputed Facts are in the form "Undisputed Facts ¶___."

00147722.DOC

2

plaintiff, at the time. These tangents are simply red herrings.

Finally, plaintiff attempts to add various claims and theories in his Summary Judgment Motion that he has not made previously and that are not contained in his various Amended Complaints. Plaintiff has not attempted to amend his complaint with these additional claims, such that they are procedurally improper. Moreover, they are also substantively insufficient for the plaintiff's request for summary judgment, on their own merits.

Nothing in plaintiff's affidavits, briefs, or other documents is sufficient to prevent summary judgment for the Haddad Defendants herein. If the Court disagrees that the Haddad Defendants are entitled to summary judgment themselves, it is at least true that questions at fact preclude summary judgment for plaintiff herein.

## II. PROCEDURAL IMPEDIMENTS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Plaintiff's Motion Is Not Timely.

Under this Court's 9/24/07 Order [Docket No. 108], *defendants'* summary judgment motion was due to be filed by 12/21/07. No mention was made authorizing any Summary Judgment Motion by *plaintiff*. Further, plaintiff did not file *his* summary judgment motion until 1/18/08, almost a month after the summary judgment deadline.

### B. Plaintiff Has Not Included any Concise Statement, in Violation of Local Rule 56.1.

U.S. District Court Local Rule 56.1 requires any Summary Judgment Motion to:

> …include a concise statement of material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion.

Local Rule 56.1; *accord*, National Football League v. Insight Telecommunications Corp.,

158 F.Supp.2d 124, 127 & n.6 & 131 (D.Mass. 2001); Engler v. C.R. Bard, Inc., 1997 WL 136249, *1-2 (D.Mass. 1997); *see also* Schubert v. Nissan Motor Corp. In. U.S.A., 148 F.3d 25, 28 n.1 (1st Cir. 1998). Failure to file and serve the required concise statement is itself grounds for an adverse ruling on the Summary Judgment Motion at issue. *See, e.g.,* National Football League, 158 F.Supp.2d at 127 & 131; Engler, 1997 WL 136249, *2.

Plaintiff's submissions of documentary evidence also do not comply with Local Rule 56.1. *See* Change the Climate, Inc. v. Mass. Bay Transp. Auth., 202 F.R.D. 43, 53 (D.Mass. 2001). As explored further below, the plaintiff's affidavits [Docket Nos. 130, 131] are conclusory and state conclusions of law, which conclusions should be disregarded. Id. Plaintiff's 57 Exhibits are also improper as untimely and as violative of many evidentiary principles, as argued more fully in the Haddad Defendants' Motion to Strike Plaintiff's 57 Exhibits (filed separately). Suffice it to say here, that plaintiff did not comply with the deadlines for providing his automatic disclosure documents and responses to defendants' Requests for Production of Documents, by 10/12/07, as ordered by the Court on 9/24/07 [Docket No. 108], such that he is barred from producing or relying on these documents in support of his Motion for Summary Judgment or in Opposition to Defendants' Motion for Summary Judgment. For all of these procedural reasons, plaintiff's Summary Judgment Motion should be denied.

### III. NOR HAS PLAINTIFF MET HIS BURDENS SUBSTANTIVELY, ON HIS MOTION FOR SUMMARY FOR DEFENDANTS JUDGMENT.

#### A. Plaintiff Has Already Admitted Sufficient Undisputed Facts to Justify Summary Judgment for Defendants Herein.

As argued in the Haddad Defendants' Motion for Summary Judgment and

Supporting Memorandum, Plaintiff has already admitted, by failing to respond at all to the Haddad Defendants' Requests for Admissions, that he cannot show certain essential elements of his discrimination claims against the Haddad Defendants. Undisputed Facts ¶¶3, 8. Moreover, plaintiff has now failed to respond to the Haddad Defendants' Concise Statement of Undisputed Facts submitted with their Motion for Summary Judgment, such that pursuant to Local Rule 56.1, the undisputed facts stated therein are now considered admitted. Change the Climate, 202 F.R.D. at 53; Engler, 1997 WL 136249, *2. Therefore, plaintiff's newly controverted factual arguments in his summary judgment papers are untimely and moot.

### B. Plaintiff Does Not Understand the Main Reasons That He Was Fired from Haddad.

Even putting aside the procedural impediments and plaintiff's admissions deemed admitted, plaintiff does not appear to understand why he was fired from Haddad Motors in February 2003. Plaintiff essentially argues that he was a good car salesman at Haddad and received several compliments from customers when he worked there [see pp. 1-2 of motion, Docket No. 133]. The Haddad Defendants do not dispute that plaintiff sold cars and received some customer compliments when he worked at Haddad Motors, but this is immaterial to this case. Plaintiff was fired for chronic tardiness, after repeated warnings concerning his tardiness and after he proved unable to abide by the reasonable accommodation granted him by Haddad Motors, an accommodation that he himself has admitted was reasonable. Undisputed Facts ¶¶8, 10, 17; Haddad Affidavit ¶4 [Docket No. 114]. Plaintiff was not fired because he was not selling cars, and the Haddad Defendants have never claimed that. Plaintiff has admitted that he was not capable of performing the essential functions of his sales job at Haddad Motors. Undisputed Facts

¶8. Timeliness was an essential aspect of his job there. *See* id. ¶17; Haddad Affidavit ¶¶4-5.

Plaintiff alludes to "George Haddad's concern about 'morale'", apparently in connection with Haddad's concern about his employees' punctuality (*see* Haddad Affidavit ¶5, at Docket No. 114). Haddad does not use the word "morale," but does state: "Punctuality of the sales force is very important to the smooth and effective running of my business. The accommodation we allowed Stern was a significant concession." Stern then goes far afield to suggest that Haddad was not concerned about morale because his employee, defendant Coggins, used the term "crazy" to describe plaintiff in front of other employees [p. 9, Docket No. 137]. We dispute that Coggins did this in the first place, but even if this is something plaintiff can show (and its surely raises factual questions), George Haddad had legitimate concerns about both punctuality and morale among his sales staff. Stern at the time was an employee who claimed that he had a bi-polar condition and claimed that arriving late to work would accommodate his disability; Haddad Motors had legitimate questions about his disability -- especially considering the timing of his announcement when he was being disciplined for chronic tardiness -- and Haddad Motors requested note(s) from Stern's doctor(s) confirming both his condition and also its connection to his being able to arrive late. Undisputed Facts ¶¶12, 14; Stern Affidavit [Docket No. 131] ¶¶36, 42. George Haddad was probably concerned about permitting one of his salesperson to arrive 15 minutes late every workday, an accommodation not granted to any other salesperson, when he had not been given any doctor's note confirming the connection between this accommodation and Stern's alleged disability. More importantly, however, Stern has admitted that he was given a reasonable

accommodation, even though he failed to provide the doctor's note about such an accommodation to Haddad management, and that he still arrived late (even later than the accommodation allowed). Undisputed Facts ¶17. These facts are undisputed, and are not in any way undercut by plaintiff's red herrings about customer compliments or management's concerns about employee morale.

### C. Stern's Factual and Legal Arguments Over a Particular Stalking Incident Are Immaterial Here.

Plaintiff spends much time in his affidavit [Docket No. 136] and his Summary Judgment Motion [Docket No. 133] trying to create questions of fact concerning a particular incident with his co-employee Angie Torre. Clearly the parties view this incident differently, although plaintiff's supporting affidavit by his friend Andrea Peters [Docket No. 135] is not by an eyewitness: Ms. Peters was by her own admission, not present at the time of the incident (Peters Affidavit ¶¶5-7) and only attests to hearsay from plaintiff Stern concerning the incident (id. ¶¶7&9). For the purposes of summary judgment, the Haddad Defendants will concede that questions of fact exist as to this one incident.

George Haddad states in his affidavit [¶4, Docket No. 114] as follows:

> 4. Stern was terminated for cause, from Haddad on February 3, 2003. He was terminated because of chronic and flagrant tardiness. Additionally, he had problems cooperating with Haddad management, and he had been involved in certain stalking incidents.

This Affidavit does not specify which "stalking incidents." Plaintiff's motion [Docket No. 133, p.3] also focuses on another stalking incident, and states that defendants have "no documentary proof of this incident." However, plaintiff admitted that this incident occurred on the first day of his deposition. Undisputed Facts ¶19. What better proof than

00147722.DOC

7

such an admission? More importantly, as discussed, plaintiff was fired for chronic tardiness; the alleged stalking incidents were another factor, but not the primary reason he was terminated from Haddad. Contrary to Stern's arguments, just because the stalking incidents mentioned so far occurred well before plaintiff's termination from Haddad Motors, does not mean that these incidents did not cumatively contribute to the reasons for his termination [*see* Stern's Affidavit, Docket No. 136, ¶22]. But plaintiff was primarily fired because he was incapable of performing the essential functions of his job at Haddad, as he has himself admitted. Undisputed Facts ¶8.

## IV.   PLAINTIFF SHOULD NOT BE ALLOWED TO ADD ADDITIONAL CLAIMS AND THEORIES, NEVER BEFORE RAISED.

### A.   No Age Discrimination

Plaintiff has not made any claim in any of his Amended Complaints for age discrimination. Yet on pp. 7-8 of his summary judgment Memorandum [Docket No. 137], he discusses allegations concerning age discrimination. Further, his charge before the MCAD was solely for disability discrimination.[3] Plaintiff has not sought leave to amend his Amended Complaint in order to add any such claim.

More importantly, plaintiff has no evidence whatsoever of age discrimination. Plaintiff was 40 was he was hired at Haddad, by his own reckoning: Stern states that he was hired in April of 2002, and his date of birth is 3/12/62 [Stern Affidavit, Docket No. 131, ¶4]. Thus, Stern was aged 40 when he was hired *and* when he was fired from Haddad Motors. Id.

---

[3] Where a plaintiff has not included or implied a particular claim or theory of recovery (such as age discrimination), or a particular named individual defendant (such as George Haddad), at the MCAD stage of his discrimination claim in Massachusetts, that plaintiff is generally barred from adding such a new claim or such a new defendant in subsequent litigation, because defendants did not have sufficient notice at an earlier stage to defend against the particular claim(s) at issue. *See, e.g.*, Fink v. Printed Circuit Corp., 204 F.Supp.2d 119, 129 (D.Mass. 2002).

00147722.DOC

8

### B.  George Haddad Is Not an Individual Defendant.

Stern refers to "defendant[] George Haddad" at p.2 of his motion [Docket No. 133]. George Haddad is not, and has never been a named defendant (although his company is a named defendant). Plaintiff's reference to him as a defendant should be struck.

### C.  The Alleged "Abuse" by Defendant Salvie

Plaintiff states in his Motion that "Defendants substantiate that abuse did occur by Defendant James Salvie in their summary judgment papers…" [Docket No. 133, p.4]. Nothing could be further from the truth, as even a cursory reading of defendants' papers would show. We deny that Salvie did what plaintiff claims he did. However, we concede, for the purposes of summary judgment only, that plaintiff does make an *allegation* as to physical contact with Salvie, unlike the other individual defendants. *See* Undisputed Facts ¶18. Defendants made this concession in their summary judgment motion [*see* Docket No. 113, pp. 13-14] in order to assert that if this Court decides that questions of fact exist as to the "physical confrontation" element of plaintiff's MCRA claim against defendant Salvie, summary judgment is still appropriate as to the *other* individual defendants. Defendants also argued for summary judgment as to plaintiff's MCRA claim against Salvie, on the grounds that even as to Salvie, plaintiff cannot show a contractual or constitutional right or other entitlement to employment, as an at-will employee at Haddad Motors (Undisputed Facts ¶5), such that he cannot make a MCRA claim against Salvie. "There is no improper interference was secured rights when an employer fires an at-will employee who has become ineffective." Korb v. Raytheon Corp., 410 Mass. 581, 585, 574 N.E.2d 370 (1991); *accord,* Flesner v. Technical

Communications Corp., 410 Mass. 805, 818-19, 575 N.E.2d 1107 (1991).[4]

### D.   Plaintiff's Agency and Respondeat Superior Arguments

The plaintiff argues general principles of respondeat superior at pp. 9-10 of his brief [Docket No. 137], stating that "the Courts have consistently held employers liable for the discriminatory discharges of employees by supervisory personal." *Quoting* Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 77 (1986). Further, "claims against employers for discriminatory actions…like…firing…have resulted in employer liability once the discrimination is shown." *Quoting* Faragher v. City of Boca Raton, 524 U.S. 775, 790 (1998). The Haddad Defendants do not disagree with these general principles.

However, the Haddad Defendants note two specific elements: that the actions must be by a *supervisory* employee, and that the actions must be otherwise *discriminatory*. First, the Haddad Defendants would not be liable for alleged threats made to plaintiff by non-supervisory employees such as James Acor (even if such threats could be said to have been made within the scope of Acor's employment).

Second, plaintiff still has to show discrimination. For the reasons argued above and also in the Haddad Defendant's Memorandum in support of their Motion for Summary Judgment [Docket No. 113], this is not a showing on which plaintiff can meet his burden, because he has already admitted that he was not capable of performing then essential functions of the job and that the Haddad Defendants provided him with a reasonable accommodation when he requested one. Undisputed Facts ¶¶8, 10, 11.

---

[4] In his summary judgment papers, plaintiff now claims that defendants Coggins and Cardillo did not directly "abuse" or wrong plaintiff; rather they "failed to intercede and stop the abuse" of plaintiff by defendant Salvie. *See* p.2 of plaintiff's motion at Docket No. 133. However, failure to intercede would not be sufficient to satisfy the "physical confrontation" requirement under MCRA. Fletcher v. Szostkiewicz, 190 F.Supp.2d 217, 230-31 (D.Mass. 2002); Korb, 410 Mass. at 585; Flesner, 410 Mass. at 818-19.

00147722.DOC

### E. The Haddad Employee Handbook Does Not Give Rise to Any Separate Liability in This Case.

Stern discusses the employee handbook that he received while he worked at Haddad Motors [Plaintiff's Motion, Docket No. 133, p.5]. As plaintiff acknowledged at the first day of his deposition (p. 10), he signed an acknowledgement sheet indicating his receipt of the Employee Policy Manual, which sheet was Exhibit G to his deposition.[5] This form, which Stern signed, states: "I understand that the employee manual is not contractual and may be revoked, modified, or amended at the discretion of management...." Therefore, even if plaintiff had brought a claim for breach of contract, it would not lie as to any representations in this Employee Policy Manual. Nor has plaintiff brought any claim for breach of contract or attempted to amend his Amended Complaint to add such a claim. As to the excerpt from the manual that plaintiff flags [Docket No. 133, p.5], the Haddad Defendants do not dispute that they were required to follow the federal Americans with Disabilities Act -- contract or no contract. Inclusion of this provision does not mean that the Haddad Defendants did *not* follow the ADA, and the Haddad Defendants have shown in their Motion for Summary Judgment brief [Docket No. 113] that they did follow it.

### F. Plaintiff's Continuing Claims About Defense Counsel's Statement(s) at the MCAD Hearing

Stern continues to make accusations against the undersigned defense counsel, stating that "Counsel John Barker averred [at the MCAD hearing] that 'no such note' occurred" at the November 2002 meetings between Stern and Haddad management.

---

[5] Pages 1 and 10 of Stern's deposition, along with Exhibit G, are attached at Exhibit 7 to the Concise Statement of Undisputed Facts, served and filed herewith. Stern acknowledged that he signed this form, at his deposition (p. 10).

00147722.DOC

11

Docket No. 133, p.4; Stern's Affidavit at Docket No. 131, ¶49-50.  As set forth in the Barker Affidavit ¶7 [Docket No. 58], plaintiff's statements about this are false.

Even if true, statements by counsel at an MCAD hearing are absolutely privileged and cannot form a basis for liability for counsel or his clients.  *See, e.g.*, Sietins v. Joseph, 238 F.Supp.2d 366, 378-79 (D.Mass. 2003); Sriberg v. Raymond, 370 Mass. 105, 108, 345 N.E.2d 882 (1976); Hartford v. Hartford, 60 Mass.App.Ct. 446, 803 N.E.2d 334 (2004).  The absolute litigation privilege protects the person making such a statement from "any civil liability based thereon," not just from defamation liability.  Doe v. Nutter McClennen & Fish, 41 Mass.App.Ct. 137, 140-41, 668 N.E.2d 1329, *rev. denied*, 423 Mass. 1111, 672 N.E.2d 539 (1996), *citing* Correllas v. Viveiros, 410 Mass. 314, 324, 572 N.E.2d 7 (1991).  These legal arguments were briefed extensively in the Haddad Defendants' Opposition to Plaintiff's Motion to Amend [Docket No. 56].

The issue of the alleged false statement(s) at the MCAD hearing was previously and definitively decided when the Court denied plaintiff's Motion to Amend on this topic, for the reasons set forth in defendants' Memorandum [Docket No. 56].  Plaintiff's reiteration of these false accusations at this time, after the Court has already ruled on these issues, is in bad faith and should be sanctionable.  At the very least, the accusations against the undersigned defense counsel should be struck.

More importantly, as to the pending Summary Judgment Motions, it is not what the *lawyer* has said, but what the parties have said.  Here, plaintiff has admitted in his own admissions and deposition testimony, that he cannot meet his burden of showing the essential elements of his discrimination claims.  He has admitted that he was not capable of performing the essential functions of the Haddad job, and that he was afforded the

reasonable accommodation that he asked for by Haddad management. Undisputed Facts ¶8-11. Plaintiff can disagree with George Haddad's Affidavit or with something a lawyer said, but he cannot deny his own admissions.

## V.   PLAINTIFF IS NOT ENTITLED TO NEW DISCOVERY.

Plaintiff's brief [Docket No. 137, p.2] discusses allowance of further discovery under FRCP 56(f), without directly requesting leave to conduct such further discovery. Assuming that the plaintiff is requesting further discovery under Rule 56(f), he is not entitled to it, and the Haddad Defendants adamantly oppose the allowance of any further discovery. Plaintiff has disregarded deadline after deadline, culminating with his disregard of the 9/24/07 Schedule Order [Docket No. 108]. Plaintiff was scheduled to provide his initial disclosures on 5/18/07, then on 9/6/07, then on 9/18/07, then on 10/12/07. Plaintiff complied with none of these deadlines. Plaintiff has still not produced any documents or written responses to the Haddad Defendants' Requests for Production of Documents, served on plaintiff on 5/18/07. Plaintiff did not comply with the Court's orders granting defendants' Motion to Compel either. Nor did plaintiff timely respond to defendants' Requests for Admissions. Plaintiff's own brief states that "a party relying on Rule 56(f) must demonstrate that it was diligent in pursuing discovery before the summary judgment initiative surfaced." Plaintiff's Memorandum [Docket No. 137], p.2, *citing* Ayala-Gerena v. Bristol Myers-Squibb Co., Inc., 95 F.3d 86, 92 (1st Cir. 1996); *see* National Football League v. Insight Telecommunications Corp., 158 F.Supp.2d 124, 128 (D.Mass. 2001). In the case plaintiff cites, the First Circuit stated as follows:

> [Rule 56(f)]... also requires due diligence *both* in pursuing discovery *before* the summary judgment initiative surfaces *and* in pursuing an extension of time thereafter. In other words, 56(f) is designed to minister to the vigilant, not to those who slumber upon perceptible rights. We have also held that a party

must evoke Rule 56(f) within a reasonable term following the receipt of a motion for summary judgment.

Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996), *quoting* Resolution Trust Corp. v. North Bridge Assoc., Inc., 22 F.3d 1198, 1203-04 (1st Cir. 1994). Therefore, plaintiff is not entitled to any further discovery under Rule 56(f).

## VI. CONCLUSION

For the foregoing reasons, plaintiff is not entitled to summary judgment. Plaintiff has expressly admitted that he was not capable of performing the essential functions of his Haddad job and that the Haddad Defendants provided him with the reasonable accommodation that he requested. The collateral issues that plaintiff raises in his summary judgment papers are either immaterial or insufficient to defeat these admissions. Further, plaintiff cannot be allowed to raise new claims in the middle of a summary judgment motion without having previously sought to amend his pleadings (such as an age discrimination claim). Finally, plaintiff has failed to comply with litigation deadlines and procedural requirements, such as those set forth in Local Rule 56.1, and his Motion for Summary Judgment should be denied on these procedural grounds as well.

THE HADDAD DEFENDANTS,
By Their Attorneys
MICHIENZIE & SAWIN LLC

Dated: 2/1/08    BY: /s/ John Barker
Richard A. Sawin, Jr. – BBO NO: 546786
John C. Barker – BBO NO: 637406
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: (617) 227-5660